# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BILLY HURSH, and )<br>(2) LACY HURSH, )<br> )<br>       Plaintiffs, )<br> )<br>  v. )<br>(1) STATE FARM FIRE AND CASUALTY )<br>    COMPANY, )<br>(2) MARK D. WELTY, and )<br>(3) MARK D. WELTY INSURANCE )<br>    AGENCY, INC., )<br> )<br>      Defendants. ) | Case No.<br><br>(Oklahoma County District Court<br>Case No. CJ-2025-2626) |

## <u>NOTICE OF REMOVAL</u>

Respectfully Submitted:

Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
PH:  405-235-5500; Fax: 405-235-2875
lleffel@gablelaw.com

-and-

Carrie B. McNeer, OBA No. 22235
Lacy B. Williamson, OBA No. 34004
GABLEGOTWALS
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
PH:  (918) 595-4800; Fax: (918) 595-4990
cmcneer@gablelaw.com
lwilliamson@gablelaw.com

***Attorneys for State Farm Fire
and Casualty Company***

# TABLE OF AUTHORITIES

**Cases**

*Albert v. Smith's Food & Drug Ctrs., Inc.*,
   356 F.3d 1242 (10th Cir. 2004) ............................................................................. 21

*Baltasar v. State Farm Fire & Cas. Co.*,
   No. CIV-22-0928-HE, 2023 WL 11883978 (W.D. Okla. Aug. 8, 2023) ............................. 4, 20

*Barlow v. State Farm Fire & Cas. Co.*,
   No. CIV-25-44-R, 2025 WL 1139489 (W.D. Okla. Apr. 17, 2025)........................................ 20

*Briggs v. State Farm Fire & Cas. Co.*,
   No. 3:14CV16-DPJ-FKB, 2014 WL 1355627 ........................................................................ 18

*Castens v. Conseco Life Ins. Co.*,
   No. 11-CV-628-TCK-FHM, 2012 WL 610001 (N.D. Okla. Feb. 24, 2012) ............................. 7

*Cf. Daily v. USAA Casualty Ins. Co.*,
   No. CIV-14-0550-HE, 2014 WL 12729172 (W.D. Okla. Nov. 19, 2014) .............................. 21

*Cisneros v. State Farm Fire & Cas. Co.*,
   No. CIV-25-42-R, 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025) ....................................... 20

*Citation Co. Realtors, Inc. v. Lyon*,
   610 P.2d 788, 790 (Okla. 1980) ................................................................................. 17, 18

*CMI Roadbuilding, Inc. v. SpecSys, Inc.*,
   No. CIV-18-1245-G, 2021 WL 2189190 (W.D. Okla. May 28, 2021) .................................... 17

*Country Gold, Inc. v. State Auto Prop. & Cas. Ins. Co.*,
   No. CIV-14-1398-D, 2015 WL 431638 .......................................................................... 17, 19

*Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*,
   No. CIV-21-357-PRW, 2022 WL 16856111 (W.D. Okla. Nov. 10, 2022) .............................. 5

*Gellner v. Progressive N. Ins. Co.*,
   No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146 (N.D. Okla. Dec. 7, 2021) ........................... 3

*Goebel v. State Farm Fire & Cas. Co.*,
   No. CIV-22-0882-HE, 2023 WL 11883977 (W.D. Okla. Aug. 7, 2023) ................ 4, 13, 14, 20

*Goebel v. State Farm Fire & Cas. Co.*,
    No. CIV-22-0882-HE, 2023 WL 11883985 (W.D. Okla. Jan. 26, 2023) ............................ 3, 20

*Graves v. Am. Fam. Mut. Ins. Co.*,
    686 F. App'x 536 (10th Cir. 2017) ............................................................................................ 5

*Gray v. Derderian*,
    464 F. Supp. 2d 105 (D. R.I. 2006) ....................................................................................... 14

*Hall v. Edge*,
    782 P.2d 122 (Okla. 1989) ...................................................................................................... 19

*Hardison*,
    4 F. App'x at 673) .................................................................................................................... 4

*Hicks v. FG Mins. LLC*,
    No. CIV-19-203-TDD, 2020 WL 2104928 (E.D. Okla. May 1, 2020) .................................. 21

*Jennings v. Globe Life & Acc. Ins. Co. of Oklahoma*,
    922 P.2d 622 (Okla. 1996) ...................................................................................................... 11

*Jonnada v. Liberty Ins. Corp.*,
    No. CIV-19-456-D, 2019 WL 6119233 (W.D. Okla. Nov. 18, 2019) ..................................... 21

*Lillard*,
    267 F. Supp. 2d ........................................................................................................... 14,15,17

*Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*,
    1902 OK 7, 69 P. 936 .............................................................................................................. 19

*Marino v. State Farm Fire & Cas. Co.*,
    No. CIV-22-0885-HE, 2023 WL 11915691 (W.D. Okla. Aug. 7, 2023).................... 4,13,14,20

*Nerad v. AstraZeneca Pharms., Inc.*,
    203 F. App'x 911 (10th Cir. 2006) ...................................................................................... 3,4

*Pardue v. Humble Ins. Agency*,
    No. CIV-14-1049-D, 2016 WL 4275816 (W.D. Okla. Aug. 12, 2016)................................ 4, 5

*Peerless Ins. Co. v. M.A.S.S. Servs., Inc.*,
    No. 806-CV-250T-27TGW, 2007 WL 2916386 (M.D. Fla. Oct. 5, 2007)............................... 8

*Pine Tel. Co. v. Alcatel-Lucent USA, Inc.*,
No. CIV–11–353–JHP, 2014 WL 318331 (E.D. Okla. Jan. 29, 2014*),
rev'd on other grounds*, 617 F. App'x 846 (10th Cir. 2015) ................................ 19

*Public Service Co. of Oklahoma v. Norris Sucker Rods*,
917 P.2d 992 (Okla. Civ. App. 1995) ................................................................ 12

*Roberts v. Wells Fargo AG Credit Corp.*,
990 F.2d 1169 (10th Cir. 1993) ........................................................................ 18

*Shebester v. Triple Crown Insurers*,
826 P.2d 603 (Okla. 1992) .................................................................................. 9

*Siddique v. W. Heritage Ins. Co.*,
No. CIV-14-456-SPS, 2015 WL 2451734 (E.D. Okla. May 21, 2015) ............ 17, 20

*Slover v. Equitable Variable Life Ins. Co.*,
443 F. Supp. 2d 1272 (N.D. Okla. 2006)) ........................................................... 3

*Smith v. Allstate Vehicle & Ptrop. Ins. Co.*,
No. CIV-14-0018-HE, 2014 WL 1382488 (W.D. Okla. Apr. 8 2014) .............. 3, 16

*Steinkamp v. State Farm Fire & Cas. Co.*,
No. CIV-22-00047-PRW, 2023 WL 11920886 (W.D. Okla. Sept. 29, 2023) .......... 8

*Thomas v. Shelter Mut. Ins. Co.*,
No. 5:21-cv-01146-HE, 2022 WL 20689574 (W.D. Okla. Feb. 7, 2022) ............... 6

*Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*,
341 P.3d 75 (Okla. 2014) .................................................................................... 8

*Walker v. Grp. Health Servs., Inc.*,
37 P.3d 749 (Okla. 2001), *as corrected on denial of reh'g* (Apr. 23, 2001) .......... 12

*West v. Chaparral Energy, LLC*,
No. CIV-16-264-F, 2018 WL 8264627 (W.D. Okla. Aug. 13, 2018) ..................... 7

*Wilson v. Republic Iron & Steel Co.*,
257 U.S. 92 (1921) .............................................................................................. 3

*Woodward v. New York Life Ins. Co.*,
No. CIV-07-1067-HE, 2008 WL 11337956 (W.D. Okla. Jan. 28, 2008) ............... 9

4900-2073-9135, v. 1

**Statutes**

28 U.S.C. § 116(c) ............................................................................................... 1
28 U.S.C. § 1332 ........................................................................................... 1, 21
28 U.S.C. § 1332(a) ............................................................................................ 2
28 U.S.C. § 1441 ................................................................................................ 1
28 U.S.C. § 1441(a) ............................................................................................ 2
28 U.S.C. § 1441(b)(2) ........................................................................................ 2
28 U.S.C. § 1446 ................................................................................................ 1
28 U.S.C. § 1446(b). .......................................................................................... 22
28 U.S.C. § 1446(b)(2)(a) ............................................................................. 2, 21

Okla. Stat. tit. 36, § 307 ..................................................................................11
Okla. Stat. tit. 36, § 3610(A) ..........................................................................11
Okla. Stat. tit. 36, §§ 1203-1205 ....................................................................11

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................... 15
Fed. R. Civ. P. 81 .............................................................................................. 1
LCvR 81.2 .......................................................................................................... 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (3) BILLY HURSH, and<br>(4) LACY HURSH,<br><br>          Plaintiffs,<br><br>   v.<br><br>(4) STATE FARM FIRE AND CASUALTY<br>     COMPANY,<br>(5) MARK D. WELTY, and<br>(6) MARK D. WELTY INSURANCE<br>     AGENCY, INC.,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.<br><br>   (Oklahoma County District Court<br>   Case No. CJ-2025-2626) |

## NOTICE OF REMOVAL

1.     State Farm Fire and Casualty Company ("State Farm") is Defendant in a civil action brought against it in the District Court of Oklahoma County, State of Oklahoma, on April 17, 2025, and titled *Billy & Lacy Hursh v. State Farm Fire and Casualty Company, Mark D. Welty, and Mark D. Welty Insurance Agency, Inc.*, Case No. CJ-2025-2626. Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Fed. R. Civ. P. 81, and LCvR 81.2, State Farm, a foreign corporation, removes this action to the United States District Court for the Western District of Oklahoma, which is the judicial district in which the action is pending. *See* 28 U.S.C. § 116(c).

2.     Plaintiffs allege damages in excess of Seventy-Five Thousand Dollars ($75,000.00) – the amount required for diversity jurisdiction under 28 U.S.C. § 1332.  *See* Pet. at p. 34, "WHEREFORE" paragraph.

1

3.    Upon information and belief, at the time of the filing of this action and at the present time, Plaintiffs Billy and Lacy Hursh were and are residents and citizens of the State of Oklahoma.

4.    At the time of the filing of this action and at the present time, State Farm was and is a foreign corporation, duly organized and existing under the laws of the State of Illinois and no other state, with its principal place of business in Illinois; it is not a citizen of Oklahoma.

5.    Defendant Mark D. Welty ("Welty") was and is a resident and citizen of the State of Oklahoma.

6.    Defendant Mark D. Welty Insurance Agency, Inc. (the "Welty Agency") is a corporation organized under the laws of the State of Oklahoma.

7.    Even though Welty is a resident and citizen of the State of Oklahoma and the Welty Agency is incorporated in the State of Oklahoma, and thus a resident and citizen of Oklahoma, their citizenship is immaterial because they are fraudulently joined parties against whom Plaintiffs do not have "any possibility of recovery." *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *1 (W.D. Okla. Apr. 8, 2014) (internal quotation marks omitted). Only ***properly joined*** defendants are material for diversity analysis. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest ***properly joined*** and served as defendants is a citizen of the State in which such action is brought." (emphasis added)); 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have

2

been ***properly joined*** and served must join in or consent to the removal of the action." (emphasis added)). Therefore, as set forth below and apparent from the Petition, this Court should disregard the alleged citizenship of Welty and the Welty Agency for purposes of diversity. *Smith*, 2014 WL 1382488 at *4.

8.     As the United States Supreme Court has recognized for well over a century, the right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. *Gellner v. Progressive N. Ins. Co.*, No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146, at *2 (N.D. Okla. Dec. 7, 2021) (citing *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). Both grounds exist here.

9.     Welty and the Welty Agency are not properly joined because there is no "reasonable basis to believe the plaintiff might succeed in at least one claim against [them]." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). Plaintiffs have also shown fraudulent joinder in the pleading of jurisdictional facts by using a form petition, relied upon by their counsel in many other cases against State Farm, that contain allegations that have no application to the actual facts and were thus "manufactured simply in an effort to avoid removal to federal court." *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883985, at *2 (W.D. Okla. Jan. 26, 2023) (granting jurisdictional discovery prior to resolution of motion to remand noting that allegations in

3

petitions filed by Plaintiffs' counsel were "identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"); *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883977, at **1-3 (W.D. Okla. Aug. 7, 2023) (denying motion to remand finding actual fraud in the pleading of jurisdictional facts); *Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at **1-3 (W.D. Okla. Aug. 7, 2023) (same); *Baltasar v. State Farm Fire & Cas. Co.*, No. CIV-22-0928-HE, 2023 WL 11883978, at *1-2 (W.D. Okla. Aug. 8, 2023) (same).

10.    Plaintiffs purport to sue Welty and the Welty Agency for negligent procurement of insurance and constructive fraud and negligent misrepresentation based on representations allegedly made during the sale and renewal of their policy. However, neither claim has a "basis in the alleged facts." *Nerad*, 203 F. App'x at 913.

11.    Plaintiffs' claim against Welty and the Welty Agency for negligent procurement fails because they received the policy they allege they requested and no act by Welty and the Welty Agency caused the damages for which they complain. To prevail on a claim for negligent procurement, "'a plaintiff must show that the insurance agent agreed to procure insurance coverage effective as of a certain date and time, or of a certain breadth, and then failed to do so.'" *Pardue v. Humble Ins. Agency*, No. CIV-14-1049-D, 2016 WL 4275816, at *2 (W.D. Okla. Aug. 12, 2016) (quoting *Hardison*, 4 F. App'x at 673).

12.    According to the Petition, Plaintiffs requested a homeowners' policy that would cover hail damage and "[r]egardless of whether an inspection occurred, neither

4

Agent nor State Farm ever disclosed to Plaintiffs that the Insured Property was ineligible under State Farm's underwriting rules for the requested replacement cost coverage for any reason." Pet., ¶¶ 25-26. They contend that the "Agent" did not deliver on their promise because the Policy procured provided "illusory coverage (in that all fortuitous losses are not covered under the Policy)." *Id.* at ¶ 63. But the Petition makes clear that it is not the Policy or any of its terms about which Plaintiffs complain; rather, Plaintiffs complain of State Farm's claim decision for a storm damage claim submitted years after the Policy issued. Their failure to plead facts to show the "Agent" did not procure "coverage … of a certain breadth" is further fatal to their claim. *Pardue*, 2016 WL 4275816 at *2.

13.     Indeed, there is no doubt that Plaintiffs received the Policy they say they wanted—a replacement cost value policy that covers hail damage. "Replacement cost insurance provides greater coverage than an actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted). "Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash value…. The reason for this requirement is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss." *Id.* (citation and internal quotations omitted). *See also Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*, No. CIV-21-357-PRW, 2022 WL 16856111, at *3-4 (W.D. Okla. Nov. 10, 2022) (explaining RCV policy in same manner).

14.     The Declarations to Plaintiffs' Policy show that their dwelling coverage was "A1 Replacement Cost – Similar Construction." Renewal Declarations, Ex. 1. This section of the Policy provides that "until actual repair or replacement is completed, [State Farm] will pay only the ***actual cash value*** of the damaged part of the property, up to the applicable limit of liability shown in the ***Declarations***, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Ex. 2. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiffs] actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the ***Declarations***, whichever is less." Policy, § 1.a.(2), p. 18, Ex. 2.

15.     In addition, Plaintiffs admit the Policy covers hail damage to the dwelling. The Petition states that the Policy "functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford coverage for the loss pursuant to the loss clause. Thus, State Farm's form policy affords coverage for the property in question for damage resulting from hail because hail damage is not expressly excluded from coverage." Pet., ¶ 31. Accordingly, State Farm estimated to repair or replace soft metals on Plaintiffs' roof it found resulted from hail damage. *Id.* at ¶ 40. The fact that Plaintiffs received exactly the policy they requested, as shown by the face of the Policy, also negates their negligent procurement claim. *See Thomas v. Shelter Mut. Ins. Co*., No. 5:21-cv-01146-HE, 2022 WL 20689574, at *2 (W.D. Okla. Feb. 7, 2022) (finding insurer "made a sufficient showing [] to preclude plaintiff relying on negligent procurement claim

6

as a basis for avoiding a fraudulent joinder determination" where plaintiff received RCV policy requested).

16.     Even if the Policy were different than requested (and it is not), that is not what led to State Farm's claim decision that a total roof replacement was not warranted and thus is not what caused the alleged injury to Plaintiffs. According to their Petition, on October 4, 2023 and May 21, 2024, Plaintiffs' property sustained "wind and hail damage." Pet., ¶ 40(a),(h). They submitted claims to State Farm, and an adjuster inspected the property each time and prepared an estimate to repair damage to the property. *Id.* at ¶ 40(b)-(e). The total amount of the damage identified did not exceed Plaintiffs' deductible, so no amount was owed to Plaintiffs on the claims. *Id.* at ¶ 40(e),(l). Plaintiffs allege the adjuster "conducted an inadequate inspection and failed to recognize the vast majority of damage to the Insured Property." *Id.* at ¶ 40(c).

17.     As with all negligence claims, a required element of a negligent procurement claim is ***causation***. Plaintiffs must show they "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, No. 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). The injury alleged by Plaintiffs from the conduct of the agent and of State Farm in this case is the same—failure to pay to replace Plaintiffs' roof. The cause of that alleged injury is State Farm's findings that the damage did not warrant a full roof replacement. Pet., ¶ 40. For this reason, too, the negligent procurement claim fails. *See West v. Chaparral Energy, LLC*, No. CIV-16-264-F, 2018 WL 8264627, at *4 (W.D. Okla. Aug. 13, 2018) (dismissing negligence claim for plaintiffs' failure to sufficiently allege facts to establish causation); *Steinkamp v. State Farm Fire &*

7

*Cas. Co.*, No. CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) (finding plaintiff could not state a claim for negligent procurement, reasoning "State Farm denied the claim not because of the type of policy [the agent] procured, but because it determined that her roof did not sustain a covered loss…. In short, Plaintiff's claim against State Farm depends upon what damage her roof sustained, not the terms of her policy.").

18.    Plaintiffs' Petition uses the term "binding" a lot when referring to the "Agent" in a way that attempts to enlarge the agent's role and entirely conflate an agent's limited role in policy issuance and the insurer's subsequent carrying out of the policy terms. "Binding authority" does not mean the agent had authority to bind State Farm to carry out the Policy in any particular way. "'[B]inding authority' [] refer[s] to the insurance industry concept of an insurance agent's ability to temporarily 'bind' coverage, which occurs prior to the insurer's issuance of a policy." *Peerless Ins. Co. v. M.A.S.S. Servs., Inc.*, No. 806-CV-250T-27TGW, 2007 WL 2916386, at *7 n.11 (M.D. Fla. Oct. 5, 2007). This "binding" authority is not the same as, and does not overlap with, the exclusive authority and responsibility of the insurer to *perform* the policy on behalf of the carrier, *e.g.,* by deciding and paying a claim for coverage. The insurer has exclusive authority on policy performance because the contract of insurance is only between the insurer and the insured, and the insurer has a non-delegable duty to interpret and apply the policy and investigate, evaluate, and pay claims thereunder. *Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*, 341 P.3d 75, 86 (Okla. 2014). Because "this duty is non-delegable," only the "insurer can be held liable for breach of the duty due to the actions of its … agents." *Id*.

19.    Nor is there a cognizable tort theory under Oklahoma law imposing liability on an agent for the insurer's performance of the policy. *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 609 (Okla. 1992) (we "remain unpersuaded that a new tort should be fashioned to hold an insurer's agent liable *ex delicto* for failure to pay proceeds"). A plaintiff cannot create agent liability that does not otherwise exist under the guise of negligent procurement or other tort theory. *Woodward v. New York Life Ins. Co*., No. CIV-07-1067-HE, 2008 WL 11337956, at **2-3 (W.D. Okla. Jan. 28, 2008) (rejecting plaintiff's request to amend to state negligent procurement theory against agent who allegedly failed to disclose information relevant to disposition of the policy because "Oklahoma case law indicates that an agent cannot be sued in tort under these circumstances"). There is no actionable duty on the part of Welty or the Welty Agency to ensure State Farm pays a claim pursuant to the coverage procured. Thus, Welty and the Welty Agency's alleged actions with regard to the Policy are not relevant to this lawsuit, which is premised entirely upon an alleged "scheme" of State Farm to underpay Plaintiffs' claim for full roof replacement *that they insist was covered under the Policy as issued.*

20.    Plaintiffs further tie their disagreement with State Farm's claim handling practices to Welty and the Welty Agency by arguing "State Farm employs a narrow and limited definition (as well as restrictive claims handling protocols) for hail damage," which "allows State Farm adjusters to deny claims even when their loss inspection clearly shows hail damage to the insured roof." Pet., ¶ 35. They allege "State Farm's captive agents (including Agent here) are fully aware of the narrow and limited definition, this critical disclosure is concealed and State Farm's insureds are wholly unaware of coverage

9

limitation until they suffer a loss, file a claim, and receive a denial." *Id.* This complaint appears to have its genesis in Welty and the Welty Agency's alleged sale of a "form insurance policy" (Pet., ¶ 13)—an unremarkable and innocuous fact given that all policies sold in this State must be filed with and approved by the Oklahoma Department of Insurance ("DOI"), and thus, all insurers sell form policies, examples of which are available on the DOI website. *See* Home Insurance Policies, Oklahoma Insurance Department,    https://www.oid.ok.gov/consumers/insurance-basics/home-insurance-policies/ (last visited Jan. 10, 2025).

21.    Plaintiffs allege "State Farm's scheme begins with its captive agents (including Agent), who sell a State Farm form insurance policy to the insured," (Pet., ¶ 13), that "functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford coverage for the loss pursuant to the loss clause. Thus, State Farm's form policy affords coverage for the property in question for damage resulting from hail because hail damage is not expressly excluded from coverage." *Id.* at ¶ 31. They urge that "[t]he form policy speaks only to 'accidental direct physical loss' therefrom" and complains that the "policy does not define, limit, or otherwise mitigate coverage for tornado, wind and/or hail-storm damage outside of 'accidental direct physical loss,'" and "does not specify, condition, define, or limit that coverage in any way, *e.g.*, minimum windspeeds, the type of roof damage, a minimum number of hail strikes per square foot, a minimum size of hail, etc." *Id.* at ¶ 31-32.

22.    Any complaint as to the lawfulness or permissibility of the policy and the marketing of it is not properly before the court. Instead, the DOI is entrusted with the

obligation of authorizing the provision of insurance by insurers and of reviewing and approving insurance contracts for sale in Oklahoma—a responsibility that Plaintiffs effectively challenge in complaining about the form policy and its absence of a definition of hail. Okla. Stat. tit. 36, § 3610(A) ("No insurance policy form or application form, where written application is required and is to be made a part of the policy, rider or endorsement form other than surety bond forms and such other insurance policy forms as are hereinafter specifically otherwise provided for shall be issued, delivered, or used unless filed with and approved by the Insurance Commissioner."). The Insurance Commissioner is "charged with the duty of administration and enforcement of the provisions of the Oklahoma Insurance Code[] [and] of any requirements placed on an insurance company pursuant to the Oklahoma Statutes." Okla. Stat. tit. 36, § 307. The Commissioner has "jurisdiction over complaints against all persons engaged in the business of insurance" and must "hear all matters." *Id.* And importantly for this case, the Commissioner is granted specific authority to regulate and "investigate into the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any … unfair or deceptive act or practice prohibited by Section 1203 of this article," including "[m]isrepresentations and false advertising of policy contracts." Okla. Stat. tit. 36, §§ 1203-1205. Therefore, to the extent Plaintiffs' claims against Welty and the Welty Agency are grounded in their role in selling the State Farm form policy authorized by the DOI, they are further subject to dismissal because the DOI has jurisdiction over them. *See Jennings v. Globe Life & Acc. Ins. Co. of Oklahoma*, 922 P.2d 622, 625-26 (Okla. 1996) (finding that the district court did not err in dismissing lawsuit alleging insurance company

11

violated Oklahoma law by paying commissions to its agents in excess of the maximum rate allowed by state regulations because the statute did not allow for private right of action but granted the Commissioner the authority to hear such complaints); *Public Service Co. of Oklahoma v. Norris Sucker Rods*, 917 P.2d 992, 996 (Okla. Civ. App. 1995) (concluding the Corporation Commission was the only forum in which a utility customer could seek relief for a rate dispute); *Walker v. Grp. Health Servs., Inc.*, 37 P.3d 749, 761 (Okla. 2001), *as corrected on denial of reh'g* (Apr. 23, 2001) (observing that the doctrine of primary jurisdiction "comes into play whenever adjudication of the claim calls for resolution of issues which, under a regulatory scheme, are placed within the special competence of an administrative agency" and "[w]hen applicable, the doctrine results in judicial process being suspended pending disposition of the issues referred to an administrative body").

23.    Plaintiffs' Petition is also replete with confusing and irrelevant allegations regarding the agent's alleged calculation of the replacement cost value of their property. *See, e.g.*, Pet., ¶¶ 25, 62-63. They allege their "Policy … did not accurately reflect the replacement cost of the Insured Property" and suggest they were underinsured due to the "Agent's" negligence in calculating the value of the house because the Policy "did not provide coverage to fully restore the Insured Property back to its pre-loss condition." *Id.* at ¶ 63. The Policy makes plain it ***was up to Plaintiffs*** to choose their coverages and limits. Renewal Declarations at 4, Ex. 1 ("It is up to you to choose the coverages and limits that meet your needs."). And State Farm "agree[d] to provide the insurance described in [the Policy] … ***based on the information [Plaintiffs gave it]***." Policy at 1, Ex. 2 (emphasis added). Regardless of who selected the amount of insurance, there can be no dispute

12

Plaintiffs had sufficient coverage to replace their roof. The Declarations show they had $363,700.00 in coverage at the time of the loss—far more than enough to install a new roof. Renewal Declarations at 2, Ex. 1. "So, any issue as to coverage amounts did not lead to any of the damages that plaintiffs assert via their claim for damage to the roof." *Goebel*, 2023 WL 11883977 at *4; *see also Marino*, 2023 WL 11915691 at *4.

24.    Plaintiffs' Petition further attempts to impose upon an insurance agent underwriting type duties, arguing an obligation to inform insureds of the condition of their property. They allege that State Farm agents "should … perform[] an in-person inspection of the Insured Property prior to the inception of coverage and routinely thereafter to verify the condition and attributes of the Insured Property," but "[r]emarkably State Farm's agents almost never perform or acquire an in-person inspection of the property to be insured," which "means they represent the property's eligibility to both State Farm and the insured recklessly and blindly." Pet., ¶¶ 18-23. They try to tie this duty to inspect to their negligent procurement claim, by alleging that because the "Agent" did not inspect the property, it could not "confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool," "disclose pre-existing damage to the Insured Property," or verify that the property met State Farm's underwriting guidelines and qualified for the Policy. Pet., ¶ 63. This argument fails because an insurance policy was issued, under which Plaintiffs sue State Farm for benefits. Thus, the house did satisfy State Farm's underwriting requirements. Regardless, this theory presupposes a duty to the insured with regard to underwriting which does not exist. The Policy expressly states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide

13

insureds with "reports on conditions," or "recommend changes." Policy at 32, Ex. 2. The courts who address the issue, moreover, are in agreement that an agent owes no underwriting duty to the insured. *Marino*, 2023 WL 11915691 at *3 ("[P]laintiff has not identified any Oklahoma case suggesting that whatever role an agent plays in the underwriting process results in a duty owed to the insured."); *Goebel*, 2023 WL 11883977 at *4 ("[T]here is no basis shown for concluding that [State Farm Agent] Garetson undertook or otherwise had a duty beyond securing the issuance of the initial and renewal policies for full replacement coverage."). This makes sense, as the Policy reflects, insurance companies conduct underwriting for their own benefit—to recognize and reduce risk—and not as a service to inform prospective (or existing) insureds of the condition of their house. *Gray v. Derderian*, 464 F. Supp. 2d 105, 109 (D. R.I. 2006).

25.     Plaintiffs' negligent misrepresentation/constructive fraud claim, premised on the same erroneous facts, is implausible for the same and similar reasons. To state a claim for constructive fraud, a plaintiff must allege facts to show (1) defendant owed plaintiff a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to plaintiff; (3) defendant's misstatement or omission was material; (4) plaintiff relied on defendant's material misstatement or omission; and (5) plaintiff suffered damages as a result. *Lillard*, 267 F. Supp. 2d at 1113. None of these elements exist.

26.     In their Petition, Plaintiffs allege "Defendants"—defined as "both State Farm and Agent" (Pet., ¶ 1 n.1)—made multiple misrepresentations and/or omissions that fall into four categories: (1) representations regarding Plaintiffs' eligibility for replacement cost value coverage, including those relating to the completion of inspections, compliance

14

with underwriting guidelines, and good condition of Plaintiffs' house (*id.* at ¶ 73(a)-(b)); (2) representations regarding the calculation of the replacement cost value of Plaintiffs' house (*id.* at ¶ 73(a)); (3) representations regarding the coverage provided by Plaintiffs' Policy (*id.* at ¶ 73(d)-(e)); and (4) representations regarding State Farm's bad-faith claim handling (*id.* at ¶ 73(f)). They appear to attribute at least some of these statements to Welty and the Welty Agency by lumping both Defendants together and treating them as one in the same, but does not say when or where they were allegedly made, who made them, the context in which they were made, or what was said. Many, if not all, of these alleged representations included in an effort to plead a scheme, were not actually made, as evidenced by Plaintiffs' inability to plead them with particularity as required by Fed. R. Civ. P. 9(b). "Where fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth." *Lillard*, 267 F. Supp. 2d at 1112.

27.     Further fatal to the claim is that none of these alleged misrepresentations ***caused*** the damages of which Plaintiffs complain. The only injury alleged by Plaintiffs for any claim is that "[a]s a result of the ***Defendants'*** [conduct]"—not Welty and the Welty Agency alone—"Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, [and] physical and emotional suffering." Pet., ¶ 78. *See also id.* at ¶ 57 (bad faith claim); *id.* at ¶ 65 (negligent procurement claim). ***Plaintiffs suffered no damage from the alleged misrepresentations because none are the reason for the claim decision.*** The only

15

"deprivation of monies" identified (or even plausible) was State Farm's refusal to pay to replace Plaintiffs' roof because it found it was not totaled by wind or hail. That decision had nothing to do with inspections being completed, whether the roof met all "underwriting guidelines," or whether Plaintiffs had sufficient coverage to replace their property. *Cf. Smith*, 2014 WL 1382488 at *4 n.7 ("[P]laintiffs cannot recover for alleged misrepresentations made regarding coverage for a total loss when their home was not totally destroyed").

28.     The allegations in the Petition also make clear that the alleged statements were true. Plaintiffs' house ***did*** satisfy underwriting and qualified for replacement cost coverage. The Policy State Farm issued, and under which Plaintiffs sue and seek benefits, is an RCV policy. *See Smith*, 2014 WL 1382488 at *2 (rejecting claim agent misrepresented property would be replaced without any deduction for depreciation where policy provided for replacement without depreciation if the insured repaired or replaced the property). Plaintiffs' Policy covers hail damage as well. *See* Pet., ¶ 31 ("State Farm's form policy affords coverage for … hail"); Policy, § 1, ¶ 2, p.12, Ex. 2. Plaintiffs admit State Farm found hail damage to soft metal vents. Pet., ¶ 40(c).

29.     Plaintiffs also cannot establish the existence of a "legal or equitable duty" on the part of Welty and the Welty Agency that must exist to state a claim for constructive fraud. They suggest the agent's duty is two-fold: (1) "to exercise reasonable diligence and skill in obtaining and accurately notifying of the nature and character of the insurance procured" and (2) "to speak accurately and truthfully" and "disclose all material facts relating to the Scheme." Pet., ¶ 72. The first duty alleged is the same as that underlying a

16

negligent procurement theory, which does not automatically establish the duty required for a constructive fraud claim. *See Country Gold, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. CIV-14-1398-D, 2015 WL 431638, at *4 (W.D. Okla. Feb. 2, 2015); *Siddique v. W. Heritage Ins. Co.*, No. CIV-14-456-SPS, 2015 WL 2451734, at *3 (E.D. Okla. May 21, 2015). As to the second alleged duty, Oklahoma law does provide that a legal duty could arise, "even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter." *Lillard*, 267 F. Supp. 2d at 1113. But Plaintiffs do not allege Welty and the Welty Agency "voluntarily [chose] to speak to [them] about a particular subject matter" or set forth facts that once they spoke, they did so dishonestly. For example, while Plaintiffs allege an agent has a duty to inspect, they stop short of alleging Welty and/or the Welty Agency told them they were going to inspect their house. Similarly, while they allege Welty and the Welty Agency had a duty to disclose the Scheme, they do not (and cannot in good faith) allege they had knowledge of it.

30.     Similarly, and independently, the fraud-based claims against Welty and the Welty Agency are non-cognizable because they are premised upon an alleged promise by the "Agent" of future performance, and by another entity—State Farm. "For a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); *see also CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2189190, at *3 (W.D. Okla. May 28, 2021), reconsideration denied, No. 5:18-CV-01245-G, 2021 WL 2404354 (W.D. Okla. June 11,

2021) (providing same requirement for constructive fraud). Promises of future performance cannot constitute constructive fraud because they cannot be shown to be true or false at the time made. *Citation Co. Realtors*, 610 P.2d at 790. *See also Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1172 (10th Cir. 1993); *Briggs v. State Farm Fire & Cas. Co.*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at \*3-4 (S.D. Miss. Apr. 7, 2014) (finding no arguably reasonable basis to predict success against agent on claim for fraudulent and/or negligent misrepresentation where complaint accused him of promising—at least seventeen years before the loss—that the insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have during the term of the contract of insurance and pay to the Plaintiffs the cost to repair or replace the Plaintiffs' home up to the limits of the policy of insurance, even if it was a total loss"; such statements were not representations of existing facts and thus could not form the basis of a misrepresentation claim). Here, the claims depend upon the "Agent" promising State Farm would pay to replace Plaintiffs' roof in the event of a hail loss, which promise Plaintiffs allege was not fulfilled because State Farm denied their claim for full roof replacement. Plaintiffs do not, and cannot, allege the "Agent" intended not to perform this promise; the promise that could only be kept by State Farm.

31.     Plaintiffs generally allege, "Agent assured Plaintiffs that the Policy provided the broadest form of coverage available and was an outstanding value for his insurance dollars." *See* Pet., ¶ 25(b). The only other statements Plaintiffs attribute to Welty and the Welty Agency are copied and pasted from their website and do not speak to representations regarding inspections or State Farm's claim handling. Nor do Plaintiffs allege they read the

statement on the website and relied on it in purchasing their Policy. Once Plaintiffs recite the statement in ¶ 17 they make no further mention of it, suggesting it is not the basis of their constructive fraud claim. To the extent these statements are the basis for Plaintiffs' fraud claim, they are, at most, an expression of opinion or "puffing" and not constructive fraud as a matter of law. *Hall v. Edge*, 782 P.2d 122, 126 (Okla. 1989) ("[A] seller's opinion which is nothing more than 'puffing' will not give rise to an action based on misrepresentation."); *Pine Tel. Co. v. Alcatel-Lucent USA, Inc.*, No. CIV–11–353–JHP, 2014 WL 318331, at *8 (E.D. Okla. Jan. 29, 2014*), rev'd on other grounds*, 617 F. App'x 846 (10th Cir. 2015) (finding allegations in complaint that defendant promised its telecommunications equipment and technology would "'outperform offerings' by competitors, 'provide [plaintiff] the advantage of offering better service to [its] customers' and 'allow [plaintiff] to gain significant operational expense savings' and 'capture a large share of the wireless data market'" were statements of opinions or promises of future performance and could not sustain a claim of fraudulent inducement).

32.    The element of reliance is likewise absent. Plaintiffs could not have reasonably relied upon any alleged misrepresentations about their Policy because they received a copy—evidenced by the screenshot of the Policy included in their Petition. *See, e.g.*, Pet., ¶¶ 31, 33. It has long been the law that insureds have a duty "to read and know the contents of the polic[y]" before they accept it and an applicant "who accepts [a policy] the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of the terms and legal effect." *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 1902 OK 7, ¶ 5, 69 P. 936, 937; *see also Country Gold*, 2015 WL 431638 at

19

*4 (dismissing constructive fraud claim in part because there was no dispute plaintiff received policy and thus could not have reasonably relied upon any misrepresentations about it); *Siddique*, 2015 WL 2451734 at *4-5 (same). There were no misrepresentations, no duty, and no injury.

33.    As the chart attached as Exhibit 3 reflects, this is one of numerous cases filed by Plaintiffs' attorneys, alleging insurance agents (Oklahoma residents) from several insurers (not Oklahoma residents) made substantially similar misrepresentations and committed substantially similar underwriting failures, each of whom are then sued when the insurer denies or partially denies an insurance claim. The allegations are factually implausible and legally wrong. Recently, Judge Joe Heaton expressly recognized that fraud in substantively identical pleadings and dismissed fraudulently joined agents.[1] The same outcome is warranted here. While Plaintiffs' counsel has revised and rearranged their form petition and attempted to "water down" the very specific language that every agent

---

[1] *Goebel*, 2023 WL 11883985 at *2 (granting jurisdictional discovery prior to resolution of motion to remand noting that allegations in petitions filed by Plaintiff's counsel were "identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"); *Goebel*, 2023 WL 11883977 at **1-3 (denying motion to remand finding actual fraud in the pleading of jurisdictional facts); *Marino*, 2023 WL 11915691 at **1-3 (same); *Baltasar v. State Farm Fire & Cas. Co.*, No. CIV-22-0928-HE, 2023 WL 11883978, at **1-2 (W.D. Okla. Aug. 8, 2023) (same). In *Baltasar*, the Court "cautioned plaintiff's counsel that the filing of a pleading in this court containing false and/or inaccurate statements like those discussed above is likely to result in significant sanctions." 2023 WL 11883978 at *2; *Cisneros v. State Farm Fire & Cas. Co.*, No. CIV-25-42-R, 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025) (holding the agency was a fraudulently joined defendant, denying the plaintiffs' motion to remand, and dismissing the agency as a party defendant without prejudice); *Barlow v. State Farm Fire & Cas. Co.*, No. CIV-25-44-R, 2025 WL 1139489 W.D. Okla. Apr. 17, 2025) (same).

purportedly used as stated in their many other filings, the substantive duplication, implausibility and import remains unchanged. Plaintiffs have no plausible claim against Welty and the Welty Agency. *Cf. Daily v. USAA Casualty Ins. Co.*, No. CIV-14-0550-HE, 2014 WL 12729172, at *2 (W.D. Okla. Nov. 19, 2014) (reasoning plaintiff's counsel's "use of identical pleadings in multiple similar cases" alone cast doubt on their ability to state a claim against the defendants). Plaintiffs' counsel have chosen to baselessly accuse Welty and the Welty Agency—along with dozens of other hard-working Oklahoma agents, whose careers and livelihoods depend on their good name—of negligence and fraud, solely so they can destroy diversity and litigate against State Farm in what they view as a more favorable forum. This is not how the legal system is supposed to work, nor will the law or facts permit it.

34.     Consent to removal is only required from "defendants who have been properly joined and served." 28 U.S.C. § 1446(b)(2)(a). Thus, consent by Welty and the Welty Agency is not required.[2] However, to the extent consent is required, Welty and the Welty Agency consent to removal.

35.     Plaintiffs claim to be entitled to recover "[a]ctual damages in an amount in excess of $75,000.00." *See* Pet. at 34. Therefore, the amount in controversy requirement imposed by 28 U.S.C. § 1332 is met.

---

[2] Indeed, as improperly joined parties, Welty and the Welty Agency are not subject to this Court's jurisdiction and Plaintiffs' claims against them must be dismissed. *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004); *Hicks v. FG Mins. LLC*, No. CIV-19-203-TDD, 2020 WL 2104928, at *6 (E.D. Okla. May 1, 2020); *Jonnada v. Liberty Ins. Corp.*, No. CIV-19-456-D, 2019 WL 6119233, at *5 (W.D. Okla. Nov. 18, 2019).

36.     Because the properly joined parties are diverse and the amount in controversy exceeds $75,000, this is the kind of action of which the United States District Courts have original jurisdiction because of diversity of citizenship and sufficiency of amount in controversy.

37.     The Summons and Petition from the Oklahoma Insurance Department was sent on May 6, 2025. This Notice of Removal is, therefore, timely under the provisions of 28 U.S.C. § 1446(b). Ex. 4, May 6, 2025 OID Letter and Service.

38.     A copy of the docket sheet and copies of all process, pleadings and orders filed or served upon State Farm in the aforementioned state action are attached hereto, marked as Exhibits 5-11 (Docket Sheet, Ex. 5; Petition, Ex. 6; Plaintiffs' EOA, Ex. 7; Return of Service for Defendant Mark D. Welty, Ex. 8; Return of Service for Defendant State Farm, Ex. 9; Return of Service for Defendant Mark D. Welty Insurance Agency, Inc., Ex. 10; Collogan EOA for Plaintiffs, Ex. 11);  and made a part hereof.

4900-2073-9135, v. 1

Respectfully submitted,

*s/Lacy B. Williamson*

Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
lleffel@gablelaw.com
Telephone:  405.235.5500
Facsimile:   405.235.2875

-and-

Carrie B. McNeer, OBA No. 22235
Lacy B. Williamson, OBA No. 34004
GABLEGOTWALS
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
PH:  (918) 595-4800; Fax: (918) 595-4990
cmcneer@gablelaw.com
lwilliamson@gablelaw.com

**Attorneys for State Farm Fire
and Casualty Company**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Phone: 405-516-7800
Fax: 405-516-7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

Patrick F. Collogan, OBA No. 30529
BIBY LAW FIRM
6305 E. 120th Ct., Suite F
Tulsa, OK 74137
Phone: 918-874-8458
Fax: 888-572-8263
pat@bibylaw.com

***Attorneys for Plaintiffs***

*s/Lacy B. Williamson*
Lacy B. Williamson

4900-2073-9135, v. 1