## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) BILLY HURSH, and       )
(2) LACY HURSH,       )
         )
       Plaintiffs,    )
         )    Case No. 5:25-cv-00529-J
   v.       )
(1) STATE FARM FIRE AND CASUALTY   )    (Oklahoma County District Court
   COMPANY,      )    Case No. CJ-2025-2626)
(2) MARK D. WELTY, and    )
(3) MARK D. WELTY INSURANCE   )
   AGENCY, INC.,     )
         )
       Defendants.   )

## DEFENDANTS MARK D. WELTY AND
## MARK D. WELTY INSURANCE AGENCY, INC.'S MOTION TO DISMISS

Respectfully Submitted,

Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
lleffel@gablelaw.com
Telephone:  405.235.5500
Facsimile:   405.235.2875

Carrie B. McNeer, OBA No. 22235
Lacy B. Williamson, OBA No. 34004
GABLEGOTWALS
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
PH:  (918) 595-4800; Fax: (918) 595-4990
cmcneer@gablelaw.com
lwilliamson@gablelaw.com
***Attorneys for Defendants***

# TABLE OF CONTENTS

BACKGROUND ................................................................................................... 2

ARGUMENTS AND AUTHORITIES ................................................................. 5

I.    PLAINTIFFS CANNOT STATE A CLAIM FOR NEGLIGENT
      PROCUREMENT AGAINST AGENT ............................................... 5

      A.  Plaintiffs were issued a replacement cost policy that covered
          wind and hail ............................................................................ 6

      B.  The alleged conduct of Agent did not injur Plaintiffs ................... 9

      C.  Plaintiffs were responsible for choosing coverage limits ........... 12

      D.  Agent owed no underwriting duty to Plaintiffs .......................... 13

II.   PLAINTIFFS CANNOT STATE A CLAIM AGAINST AGENT
      FOR CONSTRUCTIVE FRAUD AND NEGLIGENT
      MISREPRESENTATION ................................................................ 14

      A.  Plaintiffs' Petition does not satisfy Fed. R. Civ. P. 9 ................. 15

      B.  The element of causation is absent ............................................ 16

      C.  Agent owed no duty to Plaintiffs on which a claim for constructive fraud
          can be based ............................................................................ 16

      D.  The alleged representations were true, and the Property qualified
          for an insurance policy with a replacement cost provision ......... 17

      E.  Representations as to State Farm's future performance cannot be
          the basis for constructive fraud ............................................... 18

      F.  Alleged Statements by Agent may be puffery but not fraud ....... 19

      G.  The element of reliance is also absent ...................................... 20

III.   PLAINTIFFS' PETITION FAILS TO SATISFY THE APPLICABLE
       STANDARD ............................................................................................... 21

CONCLUSION ....................................................................................................... 22

4922-4202-3487, v. 1

# TABLE OF AUTHORITIES

**Cases**

*Barlow v. State Farm Fire & Cas. Co.*,
No. CIV-25-44-R 2025 WL 1139489 W.D. Okla. Apr. 17, 2025) ........................ 5, 8, 9

*Beatriz and Rodrigo Cisneros v. State Farm*,
Case No. CIV-25-42-R 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025) ...................... 5

*Briggs v. State Farm Fire & Cas. Co.*,
No. 3:14CV16-DPJ-FKB, 2014 WL 1355627 (S.D. Miss. Apr. 7, 2014) .................. 19

*Castens v. Conseco Life Ins. Co.*,
No. 11-CV-628-TCK-FHM, 2012 WL 610001 (N.D. Okla. Feb. 24, 2012) ................ 9

*Cherokee Nation v. Lexington Ins. Co.*,
2022 OK 71, 521 P.3d 1261. .................................................................................. 8

*Citation Co. Realtors, Inc. v. Lyon*,
1980 OK 68, 610 P.2d 788, 790 ............................................................................ 18

*CMI Roadbuilding, Inc. v. SpecSys, Inc.*,
No. CIV-18-1245-G, 2021 WL 2189190 (W.D. Okla. May 28, 2021),
reconsideration denied, No. 5:18-CV-01245-G, 2021 WL 2404354
(W.D. Okla. June 11, 2021) ................................................................................... 18

*Country Gold, Inc. v. State Auto Prop. & Co. Ins. Co.*,
No. CIV-14-1398-D, 2015 WL 431638 (W.D. Okla. Feb. 2, 2015) ..................... 17, 21

*Daily v. USAA Cas. Ins. Co.*,
No. CIV-14-0550-HE, 2014 WL 12729172 (W.D. Okla. Nov. 19, 2014) .................. 21

*Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*,
No. CIV-21-357-PRW, 2022 WL 16856111 (W.D. Okla. Nov. 10, 2022) .................... 7

*Goebel v. State Farm Fire & Cas. Co.*,
No. CIV-22-0882-HE, 2023 WL 11883977 (W.D. Okla. Aug. 7, 2023). ........ 13, 14, 21

*Graves v. Am. Fam. Mut. Ins. Co.*,
686 F. App'x 536 (10th Cir. 2017) ......................................................................... 7

*Gray v. Derderian*,
    464 F. Supp. 2d 105 (D. R.I. 2006) ............................................................................ 14

*Hall v. Edge*,
    1989 OK 143, 782 P.2d 122, 126 ................................................................................ 20

*Hardison v. Balboa Ins. Co.*,
    4 F. App'x 663 (10th Cir. 2001)) .................................................................................. 6

*Lillard v. Stockton*,
    267 F. Supp. 2d 1081 (N.D. Okla. 2003). ......................................................... 15, 17

*Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*,
    1902 OK 7, 69 P. 936 ................................................................................................. 21

*Lockhart v. Loosen*,
    1997 OK 103, 943 P.2d 1074 ..................................................................................... 21

*Marino v. State Farm Fire & Cas. Co.*,
    No. CIV-22-0885-HE, 2023 WL 11915691 (W.D. Okla. Aug. 7, 2023) ..................... 14

*Pardue v. Humble Ins. Agency*,
    No. CIV-14-1049-D, 2016 WL 4275816 (W.D. Okla. Aug. 12, 2016 ..................... 6, 7

*Patel v. OHM Med. Ctr., Inc.*,
    1999 OK 33, 987 P.2d 1185 ....................................................................................... 21

*Peerless Ins. Co. v. MASS. Servs., Inc.*,
    No. 806-CV-250T-27TGW, 2007 WL 2916386 (M.D. Fla. Oct. 5, 2007) .................. 10

*Pine Tel. Co. v. Alcatel-Lucent USA, Inc.*,
    No. CIV-11-353-JHP, 2014 WL 318331 (E.D. Okla. Jan. 29, 2014),
    rev'd on other grounds, 617 F. App'x 846 (10th Cir. 2015) ....................................... 20

*Porter v. State Farm*;
    Case No. CIV-25-187-R, 2025 WL 1151682 (W.D. Okla. Apr. 18, 2025) ................... 5

*Roberts v. Wells Fargo AG Credit Corp.*,
    990 F.2d 1169 (10th Cir. 1993) ........................................................................... 18, 19

*Shebester v. Triple Crown Insurers*,
    1992 OK 20, 826 P.2d 603 .................................................................................. 11, 12

iv

*Siddique v. W. Heritage Ins. Co.*,
    No. CIV-14-456-SPS, 2015 WL 2451734 (ED. Okla. May 21, 2015) ...................... 17

*Smith v. Allstate Vehicle & Prop. Ins. Co.*,
    No. CIV-14-0018-HE, 2014 WL 1382488 (W.D. Okla. Apr. 8, 2014) ................. 16, 17

*Steed v. Bain-Holloway*,
    2015 OK CIV APP 68, 356 P.3d 62, ............................................................. 9

*Steinkamp v. State Farm*,
    No. CIV-22-00047-PRW (W.D. Okla. Sept. 29, 202 ................................... 10

*Swickey v. Silvey Cos.*,
    1999 OK CIV APP 48, 979 P.2d 266. ................................................... 5, 6, 9

*Thomas v. Shelter Mut. Ins. Co.*,
    No. 5:21-cv-01146-HE, 2022 WL 20689574 (W.D. Okla. Feb. 7, 2022)..................... 8

*Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*,
    2014 OK 106, 341 P.3d 75. ........................................................... 11

*West v. Chaparral Energy, LLC*,
    No. CIV-16-264-F, 2018 WL 8264627 (W.D. Okla. Aug. 13, 2018)..................... 9, 10

*Woodward v. New York Life Ins. Co.*,
    No. CIV-07-1067-HE, 2008 WL 11337956 (W.D. Okla. Jan. 28, 2008).............. 11, 12

*Wyrick v. Campbell*,
    1918 OK 1, 170 P. 267 ................................................................. 20

**Rules**

Fed.R.Civ.P. 9 ....................................................................... 1, 15
Fed. R. Civ. P. 12 .................................................................... 22
Fed. R. Civ. P.12(b)(6) ......................................................... 1, 8, 21, 22

Pursuant to FED. R. CIV. P. 12(b)(6), Defendants Mark D. Welty ("Welty") and Mark D. Welty Insurance Agency, Inc. (the "Welty Agency") (collectively, "Agent") move to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted. This is a dispute that has nothing to do with Agent, except that the agent's citizenship and the agency's principal place of business are in Oklahoma and thus destroys diversity jurisdiction.

This case is a dispute between Plaintiffs, Billy and Lacy Hursh ("Plaintiffs"), and Defendant, State Farm Fire and Casualty Company ("State Farm"), about whether there was hail damage to the shingles on the roof and the extent of that damage, if any, and whether it warranted replacement. Because a claim inspection did not reveal hail damage occurred to shingles, State Farm determined a total roof replacement was unnecessary. None of that has anything to do with Agent, who in his role as an agent has no involvement in claim decisions. State Farm is the only proper Defendant.

Nonetheless, Plaintiffs allege repetitive, obscure and confusing facts and irrelevant legal argument to sue Agent despite the fact Plaintiffs cannot possibly state a claim against the Agent arising from State Farm's claim decision. Specifically, Plaintiffs sue Agent for negligent procurement of insurance and negligent misrepresentation/constructive fraud based on representations allegedly made when selling the policy (and each renewal thereafter). Notably, Plaintiffs' Petition is devoid of any facts with respect to *when* the alleged fraud occurred, despite the pleading requirements of Fed. R. Civ. P. 9. Many, if not all, of these alleged representations included in an effort to plead a scheme, were not

actually made, as evidenced by Plaintiffs' inability to plead them with particularity. But, even if Agent made these representations (which they did not), Plaintiffs did not state a claim against Agent or any other agent. Agent is instead another in a long line of agents (in a long line of other cases) sued for the sole purpose of preventing State Farm's removal of cases to federal court. Agent cannot be liable for fraud or negligent procurement based upon the asserted theory that Plaintiffs requested a replacement cost policy but did not receive the requested coverage because State Farm did not agree to pay to replace their entire roof when they later filed two claims under the Policy. The dispute, apparent even from the vague facts pleaded by Plaintiffs, has everything to do with State Farm's claim determination and nothing to do with the coverage procured. Plaintiffs have the very policy they claim they were promised—an RCV Policy that covers hail damage—and nothing the Agent did or did not do resulted in State Farm's determination that Plaintiffs' whole roof did not need to be replaced based on the amount of covered damage actually present when they presented their claims.

In short, the policy procured is not what caused the injury alleged. Nor do the duties presumed by Plaintiffs and on which their claims are premised exist. For these and other reasons, set forth more fully below, Plaintiffs' Petition against the Agent should be dismissed.

## BACKGROUND

In 2020, Plaintiffs purchased a State Farm homeowner's policy, Policy No. 36-CL-H107-4 ("Policy") through Agent to insure their house located at 1901 S. Dogwood Pl., Broken Arrow, Oklahoma 74012. Pet., ¶ 5; Policy Application at 1, Ex. 1 hereto. The Policy

automatically renewed every year thereafter on June 26th for a 12-month period. Renewal Declarations at 1, Ex. 2 ("If the POLICY PERIOD is shown as 12 MONTHS, this policy will be renewed automatically subject to the premiums, rules, and forms in effect for each succeeding policy period.").

According to their Petition, on or about October 4, 2023, Plaintiffs' property was damaged by a "significant wind and hailstorm" and sustained "substantial wind and hail damage across the entirety of the roof, and to the gutters, and to its exterior windows and walls" Pet., ¶ 40(a). They submitted a claim to State Farm and State Farm's adjuster inspected the property around March 12, 2024. *Id.* at ¶ 40(c). State Farm wrote an estimate for $1,446.87 to repair the damages to the property. *Id.* at ¶ 40(d). Then, on or about May 21, 2024, Plaintiffs' property was damaged by "another significant wind and hailstorm." *Id.* at ¶ 40(h). They submitted a new claim to State Farm and State Farm's adjuster inspected the property finding minor storm damage. *Id.* at ¶ 40(i)-(k). The amount of damage found by State Farm for either claim did not exceed Plaintiffs' deductible of $3,637. *Id.* at ¶ 40(d),(l); *see* Renewal Declarations, Ex. 2, p.2.

Plaintiffs sue State Farm for breach of contract and breach of the duty of good faith and fair dealing and sue the Agent for negligent procurement of insurance and constructive fraud/negligent misrepresentation. Most of the allegations in the Petition are devoted to painting a picture of State Farm's so-called "scheme" to defraud customers, dedicating pages to what State Farm has allegedly done to other insureds. The allegations against the Agent boil down to alleged failures and misrepresentations associated with the sale and/or renewal of the Policy before the loss occurred and the claims existed, *see* Pet. at ¶¶ 1-4,

10-39, all based on State Farm's later finding that hail did not damage the shingles on Plaintiffs' roof.

Plaintiffs contend that State Farm's agents are part of this "scheme." Plaintiffs' negligent procurement claim asserts that the Agent breached a duty owed to them by procuring and renewing "illusory coverage" and procuring a policy that did not accurately reflect the replacement cost value of the insured property. *Id*. at ¶ 63. They do not say whether the "replacement cost value" the Agent allegedly calculated was too high or too low. They further suggest that the Agent is liable for negligent procurement because they did not inspect the property to verify its condition and otherwise allegedly failed to abide by unidentified underwriting guidelines. *Id*.

Plaintiffs' constructive fraud/negligent misrepresentation claim is based on the same and similar allegations. They contend that the Agent represented that all inspections occurred, the property was in good condition and met all underwriting guidelines, and the property was eligible for replacement cost coverage. *Id*. at ¶ 73. The Petition admits though, that the Agent did not actually make these representations. Rather, Plaintiffs assert they were "at the very least" implied by State Farm's issuance of the Policy. *Id*. at ¶¶ 19, 27. As with the negligent procurement claim, Plaintiffs allege the Agent further engaged in constructive fraud by representing the replacement cost value calculated would fully restore Plaintiffs' property in the event of a loss and the Policy procured covered all fortuitous losses. *Id*. at ¶ 73.

The strained allegations of the Petition make plain that Plaintiffs cannot possibly state a claim against the Agent. The terms of the Policy incorporated in the Petition prove

Plaintiffs received the coverage requested, and the only damages alleged stem from State Farm's conclusion that the absence of hail damage to their shingles did not warrant replacement of the roof. The parties agree that, had hail damage to Plaintiffs' shingles actually existed, Plaintiffs would be entitled to the amount necessary to repair or replace the roof. Thus, Plaintiffs had the very policy they claim they were promised and nothing that the Agent did or did not do resulted in State Farm's finding that the covered damage was limited to what State Farm included in its estimate. Thus, causation by Agent for the alleged injury is entirely absent and requires its dismissal.

Significantly, the Honorable Judge David L. Russell recently denied Plaintiffs' Motion to Remand, dismissed the claims against the Agent in three (3) substantially similar cases, and acknowledged "implied" representations do not give rise to a duty to speak. *See Heidi and Doug Barlow v. State Farm*, Case No. CIV-25-00044-R, 2025 WL 1139489 W.D. Okla. Apr. 17, 2025); *Beatriz and Rodrigo Cisneros v. State Farm*, Case No. CIV-25-42-R 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025); and *Wilma and Terry Porter v. State Farm*; Case No. CIV-25-187-R, 2025 WL 1151682 (W.D. Okla. Apr. 18, 2025).

## ARGUMENTS AND AUTHORITIES

### I.   PLAINTIFFS CANNOT STATE A CLAIM FOR NEGLIGENT PROCUREMENT AGAINST AGENT.

Oklahoma law recognizes a cause of action for negligent procurement against an insurance agent under limited circumstances. *See Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶ 8, 979 P.2d 266, 268. "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." 1999 OK CIV APP

48, ¶ 13, 979 P.2d at 269. Only if "by the agent's fault, insurance is not procured as promised and the insured suffers a loss" as a result can an agent be liable in tort for breaching this duty of care. *Id*. (emphasis added). To prevail on a claim for negligent procurement, "a Plaintiff must show that the insurance agent agreed to procure insurance coverage effective as of a certain date and time, or of a certain breadth, and then failed to do so." *Pardue v. Humble Ins. Agency,* No. CIV-14-1049-D, 2016 WL 4275816, at *2 (W.D. Okla. Aug. 12, 2016) (quoting *Hardison v. Balboa Ins. Co.*, 4 F. App'x 663, 673 (10th Cir. 2001)). Plaintiffs cannot possibly state a claim for negligent procurement here because (a) the policy requested was procured, (b) Plaintiffs had sufficient coverage to restore their house to its pre-loss condition in the event it had incurred a covered loss, (c) the policy type/coverage did not cause Plaintiffs' alleged injury, and (d) Agent owes no underwriting duty to the insured.

**A.** **<u>Plaintiffs were issued a replacement cost policy that covered wind and hail.</u>**

Plaintiffs' negligent procurement claim is facially unsustainable. Plaintiffs allege they requested a homeowners' policy that would cover their property "in the event of a loss" and "neither Agent nor State Farm ever disclosed to Plaintiffs that the Insured Property was ineligible under State Farm's underwriting rules for the requested replacement cost coverage for any reason." Pet., ¶¶ 25-26. They contend that Agent did not deliver on this promise because the Policy procured provided "illusory coverage (in that all fortuitous losses are not covered under the Policy)." *Id*. at ¶ 63. But the Petition makes clear that it is not the Policy or any of its terms about which Plaintiffs complain; rather, Plaintiffs complain of State Farm's claim decisions for storm damage claims submitted

years after the Policy issued. The Plaintiffs' failure to plead facts to show Agent did not procure "coverage ... of a certain breadth" is fatal to their claim. *Pardue*, 2016 WL 4275816 at \*2. Indeed, there is no doubt that Plaintiffs received the Policy they said they wanted—a replacement cost value policy that covers hail and wind damage. "Replacement cost insurance provides greater coverage than an actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted).

"Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash value.... The reason for this requirement 'is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss.'" *Id*. (citation and internal quotations omitted); *see also Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*, No. CIV-21-357-PRW, 2022 WL 16856111, at \*3-4 (W.D. Okla. Nov. 10, 2022). The Declarations to Plaintiffs' Policy shows that their dwelling coverage was "Replacement Cost Similar Construction." Renewal Declarations at 2, Ex. 2. This section of the Policy provides that "until actual repair or replacement is completed, [State Farm] will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Ex. 3. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiffs] actually and necessarily spend to repair or replace the damaged part of

the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less." Policy, § 1.a.(2), p. 18, Ex. 3.

Plaintiffs admit the Policy covers hail and wind damage to the dwelling. The Petition states the Policy "functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford coverage for the loss pursuant to the loss clause. Thus, State Farm's form policy affords coverage for the property in question for damage resulting from hail because hail damage is not expressly excluded from coverage." Pet., ¶ 31. Accordingly, State Farm, as Plaintiffs admit, estimated to replace certain materials it determined were damaged by wind or hail. *Id.* at ¶ 40. This is consistent with the loss payment provision of the Policy which provides State Farm will pay the cost to repair with similar construction … the damaged *part* of the property.  Ex. 3, Policy at p. 18, Section I- Loss Settlement, 1(a) (Emphasis supplied.[1]) "The interpretation of an insurance policy is a question of law." *Cherokee Nation v. Lexington Ins. Co.*, 2022 OK 71, ¶ 9, 521 P.3d 1261, 1266. The fact Plaintiffs received exactly the policy they requested, as shown by the face of the Policy, is grounds for dismissal under Fed. R. Civ. P. 12(B)(6). *See Thomas v. Shelter Mut. Ins. Co.*, No. 5:21-cv-01146-HE, 2022 WL 20689574, at *2 (W.D. Okla. Feb. 7, 2022) (finding insurer "made a sufficient showing [] to preclude plaintiff relying on negligent procurement claim as a basis for avoiding a fraudulent joinder determination" where plaintiff received RCV policy requested); *Barlow v. State Farm Fire*

---

[1] This demonstrates another fallacy in Plaintiffs' contention that their Policy was illusory simply because coverage was not afforded for a full roof replacement.  The Policy provides coverage for only the damaged *part* of the property.  Sustaining damage to some parts of a property ordinarily does not require replacement to the entire roof.

& *Cas. Co.*, No. CIV-25-44-R 2025 WL 1139489 W.D. Okla. Apr. 17, 2025) (finding "Plaintiffs indisputably received the replacement cost value policy they requested. Plaintiffs cannot show that, 'by the agent's fault, insurance [was] not procured as promised,' *Swickey*, 979 P.2d at 269, and they therefore do not have a potentially viable claim for negligent procurement of insurance against the Hagar Defendants.").

### B. <u>The alleged conduct of Agent did not injure Plaintiffs.</u>

Apparently cognizant of the fatal flaw in their negligent procurement theory, Plaintiffs allege the replacement coverage procured was illusory (Pet., ¶ 63(a)(i)), without any explanation of how any conduct by Agent made it illusory. It seems plain that "illusory" is simply another way of saying Plaintiffs' request for a total roof replacement was rejected. That had nothing to do with Agent or the Policy. Instead, the determination that a roof replacement was not warranted was made by State Farm in the handling of Plaintiffs' claims. Put simply, it was State Farm and not Agent that caused the alleged injury.

As with all negligence claims, a required element of a negligent procurement claim is causation. Plaintiffs must show they "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, No. 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). That is, "there must be 'some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.'" *West v. Chaparral Energy, LLC*, No. CIV-16-264-F, 2018 WL 8264627, at *4 (W.D. Okla. Aug. 13, 2018) (quoting *Steed v. Bain-Holloway*, 2015 OK CIV APP 68, ¶ 21, 356 P.3d 62, 68). It is entirely absent here. The injury alleged by Plaintiffs from the conduct of Agent and of State Farm in this case is the same—failure to pay to replace

Plaintiffs' roof. The cause of that alleged injury is State Farm's finding that no hail damage to the shingles existed. Pet., ¶ 40. For this reason, too, Plaintiffs' negligent procurement claim should be dismissed. *See West*, 2018 WL 8264627 at *4 (dismissing negligence claim for the plaintiffs' failure to sufficiently allege facts to establish causation); *Steinkamp v. State Farm*, No. CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) (finding the plaintiffs could not state a claim against agent for negligent procurement and reasoning that "State Farm denied the claim not because of the type of policy [the agent] procured, but because it determined that her roof did not sustain a covered loss.... In short, Plaintiffs' claim against State Farm depends upon what damage her roof sustained, not the terms of her policy.").

Plaintiffs' Petition uses the term "binding" a lot when referring to Agent, in a way that attempts to enlarge the agent's role and entirely conflate an agent's limited role in policy issuance and the insurer's subsequent carrying out of the policy terms. "Binding authority" does not mean Agent had authority to bind State Farm to carry out the Policy in any particular way. "'[B]inding authority' [] refer[s] to the insurance industry concept of an insurance agent's ability to temporarily 'bind' coverage, which occurs prior to the insurer's issuance of a policy." *Peerless Ins. Co. v. MASS. Servs., Inc.*, No. 806-CV-250T-27TGW, 2007 WL 2916386, at *7 n.11 (M.D. Fla. Oct. 5, 2007). This "binding" authority is not the same as, and does not overlap with, the exclusive authority and responsibility of the insurer to perform the policy on behalf of the carrier, e.g., by deciding and paying a claim for damage covered under the Policy. The insurer has exclusive authority on policy performance because the contract of insurance is only between the insurer and the insured,

and the insurer has a non-delegable duty to interpret and apply the policy and investigate, evaluate, and pay claims thereunder. *Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*, 2014 OK 106, ¶ 29, 341 P.3d 75, 86. Because "this duty is non-delegable," only the "insurer can be held liable for breach of the duty due to the actions of its ... agents." *Id.*

Accordingly, as the Oklahoma Supreme Court made clear in *Shebester v. Triple Crown Insurers*, 1992 OK 20, ¶¶ 15-16, 826 P.2d 603, 608, claims against the agent—whether based in contract or tort-arising from the insurer's alleged failure to perform its duties under the insurance contract are not actionable. In *Shebester*, the court was faced with a certified question from the Tenth Circuit as to whether "an insurer's agent would have individual liability" for the insurer's wrongful payment of proceeds under the policy. 1992 OK 20, ¶ 16, 826 P.2d at 609. The court answered the question in the negative: "When liability for an ex contractu breach is sought to be imposed upon an agent, a familiar common-law principle must govern. One who deals as an agent on behalf of a disclosed principal is not liable for the latter's ex contractu breach. The doctrine's rationale is that an agreement made with a known agent for a disclosed principal is a contract with the principal alone. The very same rule applies to insurance contracts." *Id.*; *see also, e.g., Woodward v. New York Life Ins. Co.*, No. CIV-07-1067-HE, 2008 WL 11337956, at *2 (W.D. Okla. Jan. 28, 2008) ("Under Oklahoma law, an insurance agent who acts on behalf of a disclosed principal is not liable for the principal's breach of contract.") (relying upon *Shebester*).

Nor is there a cognizable tort theory under Oklahoma law imposing liability on an agent for the insurer's performance of the policy. *See Shebester*, 1992 OK 20, ¶ 15, 826

11

P.2d at 609 (we remain unpersuaded that a new tort should be fashioned to hold an insurer's agent liable ex delicto for failure to pay proceeds"). To be clear, Plaintiffs cannot create liability of an agent that does not otherwise exist under the guise of a negligent procurement or other tort theory. *See, e.g., Woodward*, 2008 WL 11337956, at *2-3 (rejecting Plaintiffs' request to amend to state negligent procurement theory against agent who allegedly failed to disclose information relevant to disposition of the policy because "Oklahoma case law indicates that an agent cannot be sued in tort under these circumstances"). There is no actionable duty on the part of Agent to ensure that State Farm pays a claim pursuant to the coverage procured. Thus, the actions of any agent in procuring the Policy are not relevant to this lawsuit, which is premised entirely upon an alleged "scheme" of State Farm to underpay Plaintiffs' claim for full roof replacement that they insist was covered under the Policy as issued.

### C. **Plaintiffs were responsible for choosing coverage limits.**

Plaintiffs' Petition contains confusing and irrelevant allegations regarding calculation of the replacement cost value of the house. *See, e.g.*, Pet., ¶¶ 25, 62-63. They allege the "Policy ... did not accurately reflect the replacement cost of the Insured Property" and suggest they were underinsured due to Agent's alleged negligence in calculating the value of the house because the Policy "did not provide coverage to fully restore the Insured Property back to its pre-loss condition." *Id*. at ¶ 63. The Policy makes plain it was up to Plaintiffs to choose their coverages and limits. Renewal Declarations at 4, Ex. 2 ("It is up to you to choose the coverages and limits that meet your needs.... State Farm does not guarantee that any estimate will be the actual future cost to rebuild your home."). And State

Farm "agree[d] to provide the insurance described in [the Policy] ... based on the information [Plaintiffs gave it]." Policy at 1, Ex. 3 (emphasis added). Regardless of who selected the amount of insurance, there is no dispute Plaintiffs had sufficient coverage to repair the damage. Plaintiffs had $363,700.00 in coverage at the time of the loss. Declarations at 2, Ex. 2. "So, any issue as to coverage amounts did not lead to any of the damages that plaintiffs assert via their claim for damage to the roof." *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883977, at *4 (W.D. Okla. Aug. 7, 2023).

### D. Agent owed no underwriting duty to Plaintiffs.

In addition to Plaintiffs' attempt to impose on the agent a duty to ensure State Farm's performance under the Policy, Plaintiffs' Petition further twists the role of an insurance agent by making it an underwriter with duties to inform insureds of the condition of their property. They allege that State Farm agents "should ... perform[] an in-person inspection of the Insured Property prior to the inception of coverage and routinely thereafter to verify the condition and attributes of the Insured Property," but "[r]emarkably State Farm's agents almost never perform or acquire an in-person inspection of the property to be insured," which "means they represent the property's eligibility to both State Farm and the insured recklessly and blindly." Pet., ¶¶ 18-23. They try to tie this duty to inspect to their negligent procurement claim, by alleging that because Agent did not inspect the property, he could not "confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool," "disclose pre-existing damage to the Insured Property," or verify that the property met State Farm's underwriting guidelines and qualified for the

13

Policy. Pet., ¶ 63. This argument is impossible because an insurance policy was issued, under which Plaintiffs sued State Farm for benefits. Therefore, the house did satisfy State Farm's underwriting requirements.

Regardless, this theory presupposes a duty to the insured with regard to underwriting which does not exist. The Policy expressly states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide insureds with "reports on conditions," or "recommend changes." Policy at 32, Ex. 3. The courts addressing the issue, moreover, are in agreement that an agent owes no underwriting duty to the insured. *Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at *3 (W.D. Okla. Aug. 7, 2023) ("[P]laintiff has not identified any Oklahoma case suggesting that whatever role an agent plays in the underwriting process results in a duty owed to the insured."); *Goebel*, 2023 WL 11883977, at *4 ("[T]here is no basis shown for concluding that [State Farm Agent] Garetson undertook or otherwise had a duty beyond securing the issuance of the initial and renewal policies for full replacement coverage."). This makes sense, for as the Policy reflects, insurance companies conduct underwriting for their own benefit—to recognize and reduce risk—and not as a service to inform prospective (or existing) insureds of the condition of their house. *Gray v. Derderian*, 464 F. Supp. 2d 105, 109 (D. R.I. 2006).

## II.   PLAINTIFFS CANNOT STATE A CLAIM AGAINST AGENT FOR CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION.

Plaintiffs' claim for "constructive fraud and negligent misrepresentation" is simply an effort at establishing a different legal theory on the same erroneous facts, and it fails for

the same reasons and more. To state a claim for constructive fraud, Plaintiffs must allege facts to show (1) defendant owed Plaintiffs a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to Plaintiffs; (3) defendant's misstatement or omission was material; (4) Plaintiffs relied on defendant's material misstatement or omission; and (5) Plaintiffs suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. To do so, "[a]n allegation of time or place is material when testing the sufficiency of a pleading. *Id.* Plaintiffs' Petition does not set forth facts to establish each element of their claim, let alone with the particularity required by Rule 9. The claim, therefore, should be dismissed.

### A. **Plaintiffs' Petition does not satisfy Fed. R. Civ. P. 9.**

In their Petition, Plaintiffs allege Agent made multiple misrepresentations and/or omissions that fall into four categories: (1) representations regarding Plaintiffs' eligibility for replacement cost value coverage, including those relating to the completion of inspections, compliance with underwriting guidelines, and good condition of Plaintiffs' house (Pet., ¶ 73(a)-(b); (2) representations regarding the calculation of the replacement cost value of Plaintiffs' house (*id.* at ¶ 73(a)); (3) representations regarding the coverage provided by Plaintiffs' Policy (*id.* at ¶73(d)-(e)); and (4) representations regarding State Farm's bad faith claim handling (*id.* at ¶ 73(f)). They appear to attribute these statements to Agent, but they do not say when or where they were allegedly made, the context in which they were made, or what was said. Plainly then, the Petition falls short of satisfying Rule 9.

**B.  <u>The element of causation is absent.</u>**

Further fatal to the claim is that none of these alleged misrepresentations caused the damages of which Plaintiffs complain. The only injury alleged by Plaintiffs for any claim is that "[a]s a result of the Defendants' [conduct]"--not Agent alone—"Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, [and] physical and emotional suffering." Pet., ¶78. *See also id*. at ¶ 57 (bad faith claim); *id*. at ¶ 65 (negligent procurement claim). Plaintiffs suffered no damage from the alleged misrepresentations because none are the reason for the claim denial. The only "deprivation of monies" identified (or even plausible) was State Farm's refusal to pay to replace Plaintiffs' roof because it found it was not totaled by wind or hail. That decision had nothing to do with inspections being completed, whether the roof met all "underwriting guidelines," or whether Plaintiffs had sufficient coverage to replace their property. *Cf. Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *4 n.7 (W.D. Okla. Apr. 8, 2014) ("[P]laintiffs cannot recover for alleged misrepresentations made regarding coverage for a total loss when their home was not totally destroyed").

**C.  <u>Agent owed no duty to Plaintiffs on which a claim for constructive fraud can be based.</u>**

Plaintiffs also cannot establish the existence of a "legal or equitable duty" on the part of Agent as must exist to state a claim for negligent misrepresentation/constructive fraud. They suggest that the agent's duty is two-fold: (1) "duty to exercise reasonable diligence and skill in obtaining and accurately notifying of the nature and character of the

insurance procured" and (2) "duty to speak accurately and truthfully" and "disclose all material facts relating to the Scheme." Pet., ¶ 72. The first duty alleged is the same as the duty underlying a negligent procurement theory, which does not automatically establish the legal or equitable duty required for a constructive fraud claim. *See Country Gold, Inc. v. State Auto Prop. & Co. Ins. Co.*, No. CIV-14-1398-D, 2015 WL 431638, at *4 (W.D. Okla. Feb. 2, 2015); *Siddique v. W. Heritage Ins. Co.*, No. CIV-14-456-SPS, 2015 WL 2451734, at *3 (ED. Okla. May 21, 2015). As to the second alleged duty, Oklahoma law does provide that a legal duty could arise, "even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to Plaintiffs about a particular subject matter." *Lillard*, 267 F. Supp. 2d at 1113. But Plaintiffs do not allege that Agent "voluntarily [chose] to speak to [them] about a particular subject matter" or set forth facts that once he spoke, he did so dishonestly. For example, while Plaintiffs allege that an agent has a duty to inspect, they stop short of alleging that Agent told them he was going to inspect their house. Similarly, while they allege Agent had a duty to disclose the Scheme, they only blanketly allege that Agents "know about [it]." Pet., ¶ 4(b).

D. **The alleged representations were true, and the Property qualified for an insurance policy with a replacement cost provision.**

The allegations in the Petition also make clear the alleged statements were not misstatements at all but spoke the truth. Plaintiffs' house did satisfy underwriting and qualified for replacement cost coverage. The Policy that State Farm issued, and under which Plaintiffs sue and seek benefits, is policy with a replacement cost provision. *See §* I(A), supra. *See also Smith*, 2014 WL 1382488 at *2 (rejecting claim agent misrepresented

17

property would be replaced without any deduction for depreciation where policy provided for replacement without depreciation if the insured repaired or replaced the property). Plaintiffs' Policy covers hail and wind damage, as well. *See* Pet., ¶ 31 ("State Farm's replacement cost policy functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford coverage for the loss pursuant to the loss clause. Thus, State Farm's form policy affords coverage for ... hail"); Policy, § 1, ¶ 2, p.12, Ex. 3. Here, Plaintiffs admit State Farm prepared "a damage estimate of $1,446.87 for the cost to repair the alleged damages to the Insured Property," and that "the cost of the damages remained below the Policy deductible." Pet., ¶ 40(e), (l). As established above, Plaintiffs had more than sufficient coverage to make any repairs.

### E. Representations as to State Farm's future performance cannot be the basis for constructive fraud.

Similarly, and independently, the fraud-based claim against Agent is noncognizable because it is premised upon an alleged promise by Agent of future performance, and by another entity—State Farm. Pet., ¶ 40. "For a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors, Inc. v. Lyon*, 1980 OK 68, ¶ 8, 610 P.2d 788, 790; *see also CMI Roadbuilding, Inc. v. SpecSys, Inc.*, No. CIV-18-1245-G, 2021 WL 2189190, at *3 (W.D. Okla. May 28, 2021), reconsideration denied, No. 5:18-CV-01245-G, 2021 WL 2404354 (W.D. Okla. June 11, 2021) (providing same requirement for constructive fraud). Promises of future performance cannot constitute constructive fraud because they cannot be shown to be true or false at the time made. *Id. See also Roberts*

*v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1172 (10th Cir. 1993); *Briggs v. State Farm Fire & Cas. Co.*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (finding no arguably reasonable basis to predict success against agent on claim for fraudulent and/or negligent misrepresentation where complaint accused him of promising—at least seventeen years before the loss—that the insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have during the term of the contract of insurance and pay to the Plaintiffs the cost to repair or replace the Plaintiffs' home up to the limits of the policy of insurance, even if it was a total loss"; such statements were not representations of existing facts and thus could not form the basis of a misrepresentation claim).

Here, the claim depends upon Agent promising that State Farm would pay to fully replace Plaintiffs' roof in the event of any and all loss caused by wind/hail, which promise Plaintiffs allege was not fulfilled because State Farm denied their claims for full roof replacement. Plaintiffs do not, and cannot, allege that Agent intended not to perform this promise; the promise could only be kept by State Farm.

**F.**  **Alleged Statements by Agent may be puffery but not fraud.**

Plaintiffs generally allege, "Agent assured Plaintiffs that the Policy provided the broadest form of coverage available and was an outstanding value for his insurance dollars." Pet., ¶ 25(b). The only other statements Plaintiffs attribute to Agent is copied and pasted from Agent's website and does not speak to representations regarding inspections or State Farm's claim handling. Nor do Plaintiffs allege they read the statement on the website

19

and relied on it in purchasing their Policy. Once Plaintiffs recite the statement in ¶ 17 they make no further mention of it, suggesting it is not the basis of their constructive fraud claim.

To the extent these statements are the basis for Plaintiffs' fraud claim, they are, at most, an expression of opinion or "puffing" and not constructive fraud as a matter of law. *Hall v. Edge*, 1989 OK 143, ¶ 11, 782 P.2d 122, 126 ("[A] seller's opinion which is nothing more than 'puffing' will not give rise to an action based on misrepresentation."); *Wyrick v. Campbell*, 1918 OK 1, ¶ 7, 170 P. 267, 268 (concluding trial court erred in overruling demurrer where allegations in petition to support claim of fraud amounted to nothing more than opinions); *Pine Tel. Co. v. Alcatel-Lucent USA, Inc.*, No. CIV-11-353-JHP, 2014 WL 318331, at *8 (E.D. Okla. Jan. 29, 2014), rev'd on other grounds, 617 F. App'x 846 (10th Cir. 2015) (finding allegations in complaint that defendant promised its telecommunications equipment and technology would "'outperform offerings' by competitors, 'provide [Plaintiff] the advantage of offering better service to [its] customers' and 'allow [Plaintiff] to gain significant operational expense savings' and 'capture a large share of the wireless data market' were statements of opinions or promises of future performance and could not sustain a claim of fraudulent inducement).

## G. <u>The element of reliance is also absent.</u>

Plaintiffs could not have reasonably relied upon any alleged misrepresentations about the Policy, anyhow, because they received a copy—evidenced by the screenshot of the Policy included in their Petition. *See, e.g.*, Pet., ¶¶ 31, 33. It has long been the law that insureds have a duty "to read and know the contents of the polic[y]" before they accept it and an applicant "who accepts [a policy] the provisions of which are plain, clear, and free

from all ambiguity, is chargeable with knowledge of the terms and legal effect." *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 1902 OK 7, ¶ 5, 69 P. 936, 937; *see also Country Gold*, 2015 WL 431638 at *4 (dismissing constructive fraud claim in part because there was no dispute the plaintiffs received policy and thus could not have reasonably relied upon any misrepresentations about it); *Siddique*, 2015 WL 2451734 at *4-5 (same). There were no misrepresentations, no duty, and no injury.

### III.    PLAINTIFFS' PETITION FAILS TO SATISFY THE APPLICABLE STANDARD.

"The purpose of a motion to dismiss is to test the legal sufficiency of the pleadings." *Patel v. OHM Med. Ctr., Inc.*, 1999 OK 33, ¶ 43, 987 P.2d 1185, 1202. Dismissal is proper under Fed. R. Civ. P. 12 (B)(6) where, as here, the petition fails to set forth (1) a cognizable legal theory of liability or (2) facts to support any cognizable legal theory. *Lockhart v. Loosen*, 1997 OK 103,114, 943 P.2d 1074, 1078. As demonstrated above, Plaintiffs cannot possibly set forth facts to support a cognizable legal theory of liability against Agent. Plaintiffs' use of a parroted Petition filed by their attorneys against dozens of other agents, including agents of different insurers, alleging identical underwriting failures and misrepresentations is further proof. It is not possible that all of the agents sued committed the exact same wrongs. *Cf. Goebel*, 2023 WL 11883977, at *3 (reasoning the form petitions contained "cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"); *Daily v. USAA Cas. Ins. Co.*, No. CIV-14-0550-HE, 2014 WL 12729172, at *2 (W.D. Okla. Nov. 19, 2014) (observing that counsel's "use of identical pleadings in multiple similar cases" alone cast doubt on their ability to state a

21

claim against the defendants). There is no avenue through which Plaintiffs can establish a claim against Welty and the Welty Agency and they should be dismissed pursuant to Fed. R. Civ. P. 12(B)(6). Leave to amend should not be granted because the defects identified herein are fatal and cannot be remedied. *See* Fed. R. Civ. P. 12.

## CONCLUSION

WHEREFORE, pursuant to FED. R. CIV. P. 12 (b)(6), Defendants Mark D. Welty and Mark D. Welty Insurance Agency, Inc. move to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted.

4922-4202-3487, v. 1

Respectfully submitted,

*s/Lacy B. Williamson*
Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
lleffel@gablelaw.com
Telephone:  405.235.5500
Facsimile:  405.235.2875

-and-

Carrie B. McNeer, OBA No. 22235
Lacy B. Williamson, OBA No. 34004
GABLEGOTWALS
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
PH:  (918) 595-4800; Fax: (918) 595-4990
cmcneer@gablelaw.com
lwilliamson@gablelaw.com

***Attorneys for Defendants***

4922-4202-3487, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Phone: 405-516-7800
Fax: 405-516-7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

Patrick F. Collogan, OBA No. 30529
BIBY LAW FIRM
6305 E. 120th Ct., Suite F
Tulsa, OK 74137
Phone: 918-874-8458
Fax: 888-572-8263
pat@bibylaw.com

***Attorneys for Plaintiffs***

*s/Lacy B. Williamson*
Lacy B. Williamson

24