```
 1              IN THE DISTRICT COURT OF OKLAHOMA COUNTY

 2                        STATE OF OKLAHOMA

 3   GARY HOSIER and
     TRACY HOSIER,
 4
          Plaintiffs,
 5
     VS.                                    Case Number
 6                                          CJ-2021-1741
     STATE FARM FIRE AND CASUALTY
 7   COMPANY and DAVID HOFFINES,

 8        Defendant.

 9                      CERTIFIED COPY

10                        * * * * *

11
            VIDEO DEPOSITION OF KELLY WIENSTROER
12           TAKEN ON BEHALF OF THE PLAINTIFFS
                IN OKLAHOMA CITY, OKLAHOMA
13                  ON APRIL 26, 2023
               COMMENCING AT 9:46 A.M.
14
                         * * * * *
15

16

17

18

19

20

21
                        INSTASCRIPT, LLC
22              125 PARK AVENUE, SUITE LL
             OKLAHOMA CITY, OKLAHOMA  73102
23                    405.605.6880
                schedule@instascript.net
24

25       Reported by: _____, CSR, RPR
```

PLAINTIFF'S EXHIBIT 5

EXHIBIT 5

```
1    I saw no, I guess, criticisms of your
2    performance, for what it's worth.
3            A.   That's my recollection --
4            Q.   Okay.
5            A.   -- as well.
6            Q.   So, do what you want, but I might
7    take it with a grain of salt and consider the
8    source.
9            MR. MARR:  No, that wasn't a
10   question.  That was just a statement, based on
11   my observation.
12           Q.   (By Mr. Marr)  But the situation
13   that Ms. Draper put you in, you were qualified to
14   deny totaling roofs; correct?  You could -- it
15   was okay, you could deny that the roof was
16   totaled and you didn't need her approval;
17   correct?
18           A.   That is correct.
19           Q.   But, conversely, you were not
20   qualified to total a roof without obtaining her
21   blessing to do so; correct?
22           A.   That would be correct.
23           Q.   Okay.  Now, I'm going to give you
24   what was marked to Ms. Draper's deposition as
25   Exhibit 19, which is your personnel file.
```

```
 1   appropriate quality.
 2          Q.  One of the things Jacqueline Draper
 3   wanted to -- or stressed upon you was to make
 4   sure that you identified wear and tear; right?
 5          A.  Based upon my recollection of my
 6   conversations with Jacqueline Draper, she wanted
 7   to ensure that I was appropriately identifying
 8   damage that was covered under the policy and not
 9   paying for damage that was a loss not insured.
10          Q.  Okay.  Well, maybe so.  But that's
11   not what it said.
12          I mean, what was said was you need to stop
13   identifying things as hail damage and call them
14   what they are, and that's wear and tear.
15          Do you recall that or do we need to get it
16   out again?
17          MR. LEFFEL:  Objection, form.
18          You can go ahead.
19          A.  What I recall in my personnel file
20   is she had some concerns about review of some
21   claims that I had identified damage as -- as
22   hail, and she felt they were -- it was not
23   hail damage, it was wear/tear.
24          Q.  (By Mr. Marr)  Okay.  And here,
25   although the roofer went out and said the roof
```

Kelly Wienstroer
4/26/2023

Page: 293

```
 1    was a total loss from hail damage, you
 2    characterized the damage to the shingles as what?
 3              A.   Based upon my inspection of the
 4    risk, the damage to the shingles was wear/tear.
 5              Q.   There you go.
 6              A.   And deterioration.
 7              Q.   And deterioration?  When did that
 8    happen?
 9              A.   That's a process that happens over
10    time.
11              Q.   Okay.  Well, when?  When did it
12    cross the line to be a deteriorated roof which,
13    miraculously, even was able to be renewed on a
14    replacement cost basis?  How does a deteriorated
15    roof meet the underwriting requirements so as to
16    qualify for the best - absolute best - roofing
17    coverage there is, and that's replacement cost?
18              MR. LEFFEL:  Objection, form.
19         You can go ahead.
20              Q.   (By Mr. Marr)  Can you explain that
21    anomaly?
22              A.   I can't because I've never sold
23    insurance, and I'm not an underwriter, I'm not
24    involved in the renewal process.
25              Q.   Did you know that it doesn't
```