I have worked as a licensed insurance adjuster for nearly six years, holding licenses in six states. During this time, I have inspected property damage and prepared repair estimates on behalf of over 17 insurance carriers, including Allstate and State Farm.

While handling claims for Allstate following Hurricane Helene, I was assigned to investigate a property damage claim submitted by Mrs. Natalia Migal. My inspection revealed significant structural damage, including a slate roof impacted by a fallen oak tree, compromised framing in the breezeway, damage to the underground sprinkler system, and broken terracotta tile. Although I was initially directed to attribute floor tile cracks to settling and to recommend repair rather than replacement of the breezeway roof, I concluded that full replacement was necessary due to split rafters and a cracked concrete underlayment. Shortly before I finished my estimate, however, I was taken off the case and the claim was reassigned to a different adjuster.

In general, my experience handling Allstate claims was marked by repeated frustration. My estimates were frequently rejected or returned with requests for modifications that often reduced coverage. These changes typically involved reclassifying line items to minimize costs, such as coding a job for an electrician to a roofer when other roof work is present as in replacing an electrically powered roof vent, to prevent the estimating software from prompting a labor minimum charge for an electrician to safely disconnect and reconnect the hard-wired vent. More commonly, these changes were simply excluding hail-damaged shingles due to age or wear. In one case involving policyholders Susan and Dennis Carter, I was instructed to deny shingle damage as wear and tear despite visible hail impact marks consistent with adjacent dented metal. Although I provided a hail report confirming activity near the property on the reported date of loss, the claim was reassigned after I refused to amend the estimate to exclude hail damage.

In another case involving Nicolette Little, I was able to finalize an estimate only after arranging for my team lead to personally review and approve it. At one point, an Allstate staff adjuster—assigned to assist in getting claims approved—advised me to remove coverage for wind-damaged shingles based on a misunderstanding of standard damage indicators. He claimed a creased shingle was not wind-damaged because it was not torn. However, industry-standard indicators of wind damage, recognized across all carriers I have worked with, include torn shingles, blown-off tabs, and creasing—making this directive contrary to basic industry training.

In my professional opinion, the claims handling process I observed at Allstate prioritized minimizing payouts, often at the expense of accurately addressing documented storm damage.

**EXHIBIT 7**

# Non-exhaustive list of related work experience

List of States held License: 6

1. Florida
2. Alabama
3. Louisiana
4. Oklahoma
5. Texas
6. Utah

List of Insurance companies: 17+

1. **Nationwide** - Allcat
2. Farmers
3. Hartford
4. Markel
5. **USAA –** Pilot and Alacrity
6. Zurich
7. ASI
8. Florida Family Insurance
9. Horace Mann
10. Spinnaker
11. Stillwater
12. MSI
13. Sentry
14. National General
15. **Allstate –** Crawford and pilot
16. Assurant
17. **State Farm** - Pilot

List of firms worked for: 5+

1. Alacrity
2. Pilot
3. Crawford and Company
4. Erberl
5. Allcat