# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) BILLY HURSH, and | ) | |
| (2) LACY HURSH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:25-cv-00529-SLP |
| (1) STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | (Oklahoma County District Court |
| (2) MARK D. WELTY, and | ) | Case No. CJ-2025-2626) |
| (3) MARK D. WELTY INSURANCE | ) | |
| AGENCY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND

Respectfully Submitted by:
Carrie B. McNeer, OBA No. 22235
Lacy B. Williamson, OBA No. 34004
**GABLEGOTWALS**
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
(918) 595-4800
(918) 595-4990 (fax)
*cmcneer@gablelaw.com*
*lwilliamson@gablelaw.com*

*-and-*

Lance E. Leffel, OBA No. 19511
**GABLEGOTWALS**
BOK PARK PLAZA
499 W. Sheridan Ave., Suite 2200
Oklahoma City, Oklahoma 73102-7101
(405) 235-5500
(405) 235-2875 (fax)
*lleffel@gablelaw.com*
***Attorneys for Defendants***

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT AND AUTHORITIES ....................................................................... 2

I.     PLAINTIFFS CANNOT AVOID FEDERAL JURISDICTION WITH FALSE
       ALLEGATIONS. .......................................................................................... 6

II.    PLAINTIFFS HAVE NO POSSIBLE CLAIM AGAINST THE AGENT. .......... 13

       A.     Plaintiffs have no possible claim for negligent misrepresentation. ................... 13

              1.     Plaintiffs do not allege facts to establish a duty of disclosure. ....................... 14

              2.     The element of reasonable reliance is missing. ................................................ 15

              3.     Plaintiffs do not allege facts showing the alleged omission was material
                     or they suffered damages as a result. ...................................................... 16

              4.     The alleged misrepresentations were indisputably true. ................................ 17

              5.     Any alleged misrepresentations regarding State Farm's claim handling and
                     application of the policy were promises of future performance and not fraud. ..... 18

              6.     Plaintiffs have not pled fraud with particularity. ........................................... 20

       B.     Plaintiffs have no possible claim for negligent procurement. ........................... 21

              1.     Plaintiffs received the policy allegedly requested. ......................................... 21

              2.     The element of causation is absent. ............................................................... 22

              3.     The Agent had no duty to inspect. ................................................................. 23

              4.     Plaintiffs had sufficient coverage to replace his roof. .................................... 24

5.    Complaints about the sale of a "form" policy fall under the purview of the Oklahoma Insurance Department ("OID"), not the court. ........................ 24, 25

CONCLUSION ................................................................................................... 25

4899-7406-3183, v. 1

# TABLE OF AUTHORITIES

## Cases

*Austin v. Allstate*,
No. CJ-2-24-524 (Cleveland Cnty) ................................................................. 7

*Baltasar v. State Farm*,
No. CIV-22-0928-HE, 2023 WL 11883978 (W.D. Okla. Aug. 8, 2023) ............. 4, 8, 10

*Barlow v. State Farm*,
No. CIV-25-00044-R, 2025 WL 1139489 (W.D. Okla. Apr. 17, 2025) ................. 1, 2, 3

*Bass v. Salco Prods.*,
No. 14-CV-288, WL 12618687  (E.D. Tex. Sept. 19, 2014) ......................... 12

*Bates v. State Farm*,
No. 21-CV-705-JD (W.D. Okla.) ................................................................. 8

*Boyer v. Snap-On Tools Corp.*,
913 F.2d 108 (3d Cir. 1990) ..................................................................... 11

*Briggs v. State Farm*,
No. 14-CV-16-DPJ-FKB, 2014 WL 1355627 (S.D. Miss. Apr. 7, 2014) ..................... 19

*Castens v. Conseco Life Ins.*,
No. 11-CV-628-TCK-FHM, 2012 WL 610001 (N.D. Okla. Feb. 24, 2012) ............... 22

*Cisneros v. State Farm*,
No. CIV-25-42-R (W.D. Okla.) ................................................................. 1, 2, 3

*Citation Co. Realtors v. Lyon*,
610 P.2d 788 (Okla. 1980) ..................................................................... 19

*CMI Roadbuilding v. SpecSys*,
No. CIV-18-1245-G, 2021 WL 2189190 (W.D. Okla. May 28, 2021) ........................ 19

*Crawford v. Charles Schwab*,
No. 09-CV-0666-G, 2009 WL 3573658 (N.D. Tex. Oct. 30, 2009) ............................ 12

*Cupit v. Dancu Chem. Co.*,
1957 OK 193, 316 P.2d 593 ..................................................................... 19

*Dutcher v. Matheson,*
   733 F.3d 980 (10th Cir. 13) .................................................................................. 11, 12

*Earley v. Allstate Indem. Co.,*
   No. 13-CV-02203-JEO, 2014 WL 2214518 ................................................................ 11

*Ervin v. Herb Weaver Ins. Agency*, Inc.,
   No. CIV-22-935-SLP, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022).............. 13, 14

*Ferrell v. BGF Glob., LLC*,
   No. CIV-15-404-D, 2015 WL 6438988 (W.D. Okla. Oct. 21, 2015) .......................... 11

*Gay v. Akin*,
   766 P.2d 985 (Okla. 1988). ................................................................................. 20, 21

*Goebel v. State Farm,*
   No. CIV-22-0882-HE ........................................................... 4, 9, 11, 16, 18, 22

*Gray v. Derderian*,
   464 F. Supp. 2d 105 (D. R.I. 2006) ...................................................................... 23, 24

*Green v. Amerada Hess Corp.,*
   707 F.2d 201 (5th Cir. 1983) ....................................................................................... 11

*Harris v. State Farm,*
   No. 5:13-CV-61-BO, 2013 WL 3356582 (E.D.N.C. July 3, 2013)............................ 23

*Hartford Steam Boiler Inspection & Ins. Co. v. Cooper*,
   341 So. 2d 665 (Miss. 1977)........................................................................................ 23

*Hayes v. Charter Oak Fire Ins.*,
   145 P.2d 941 (Okla. 1944). ......................................................................................... 16

*Hope v. State Farm Fire & Cas. Co*.,
   No. CIV-25-323-D ................................................................................................... 8, 20

*Hosier v. State Farm,*
   No. CJ-2021-1741 .......................................................................................................... 8

*Joseph E. Seagram & Sons, Inc. v. Shaffer*,
   310 F.2d 668 (10th Cir. 1962) .................................................................................... 20

*Lillard v. Stockton*,
   267 F. Supp. 2d 1081 (N.D. Okla. 2003) ................................................................ 14, 20

*Long v. Halliday*,
   768 F. App'x 811 (10th Cir. 2019). .............................................................................. 13

*Manzella v. Gilbert-Magill Co.*,
   965 S.W.2d 221 (Mo. Ct. App. 1998) .......................................................................... 24

*Marino v. State Farm*,
   No. CIV-22-885-HE, 2023 WL 11915691 (W.D. Okla. Aug. 7, 2023) .... 4, 9, 12, 17, 23

*Martin v. Allstate Vehicle & Prop., Ins. Co.*,
   No. CIV-23-739-SLP, 2024 WL 3510301 (W.D. Okla. July 23, 2024) ................. 13, 14

*Mellon v. Int'l Grp. for Historic Aircraft Recovery*,
   612 F. App'x 936 (10th Cir. 2015) ............................................................................... 19

*Mid-Del Group Home, INc. v. Philadelphia Indem. Ins. Co.*,
   CJ-2025-1860 (Okla. Cnty) ........................................................................................... 7

*Newman ex rel. Poston v. Bankers Life & Cas. Co.*,
   No. 2:10-CV-02135-DCN, 2010 WL 4638566 (D.S.C. Nov. 8, 2010) ........................ 18

*Payne Expl. Co. v. Trident Steel Corp.*,
   No. CIV-15-818-D, 2016 WL 1530006 (W.D. Okla. Apr. 14, 2016) ........................... 15

*Peerless Ins. Co. v. M.A.S.S. Servs.*,
   No. 806-CV-250T-27TGW, 2007 WL 2916386 (M.D. Fla. Oct. 5, 2007) ................... 15

*Pfeiffer v. Hartford Five Ins. Co.*,
   929 F.2d 1484 (10th Cir. 1991) ................................................................................... 20

*Porter v. State Farm*,
   No. CIV-25-187-R (W.D. Okla.) ............................................................................ 1, 2, 3

*Pratt v. Safeco*,
   No. CIV-20-93-D, 2020 WL 4735350 .......................................................................... 15

*Pruitt v. State Farm*,
   No. CIV-25-187-R (W.D. Okla.) ..................................................................................... 2

v

*Rain Drop Found., Inc. v. State Farm*,
  No. 24-1101-D, 2025 WL 582562 (W.D. Okla. Feb. 21, 2025)..........................3, 10, 17

*Roberson v. State Farm Fire and Casualty Company, et al.*,
  No. CJ-2024-3950 (Okla. Cnty, Dec. 4, 2024) .........................................................3, 4, 8

*Rodriguez v. Casa Chapa S.A. de C.V.*,
  394 F. Supp. 2d 901 (W.D. Tex. 2005) .......................................................................... 12

*Rotan v. Farmers Ins. Grp. of Companies, Inc.*,
  83 P.3d 894 (Okla. Civ App. 2004) ................................................................................ 21

*Salopek, Tr. for Salopek Fam. Heritage Tr. v. Zurich Am. Life Ins. Co.*,
  428 F. Supp. 3d 609 (D. N.M. 2019) .............................................................................. 24

*Slover v. Equitable Variable Life Ins.*,
  443 F. Supp. 2d 1272 (N.D. Okla. 2006)........................................................................ 14

*Smoot v. Chicago, Rock Island & Pacific R.R.*,
  378 F.2d 879 (10th Cir. 1967) ........................................................................................ 11

*Stafford v. State Farm*,
  No. CIV-25-8-HE (W.D. Okla. May 25, 2025) ....................................................... 2, 3, 23

*Steinkamp v. State Farm*,
  No. CIV-22-00047-PRW, WL 11920886 (W.D. Okla. Sept. 29, 2023) ............. 3, 22, 23

*Strahan v. Allstate*,
  No. CIV-14-1392-C, 2005 WL 730055 ........................................................................... 23

*Swickey v. Silvey Cos.*,
  979 P.2d 266 (Okla. Civ. App. 1999). ............................................................................ 21

*The Referral Ctr. for Alcohol and Drug Servs. of Cent. Okla., Inc. v. Philadelphia
Indem. Ins. Co.*,
  No. CJ. 2025-3490 (Okla. Cnty)....................................................................................... 7

*Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*,
  341 P.3d 75 (Okla. 2014)................................................................................................ 22

*United Adjustment Services, Inc. v. Professional Insurors Agency, LLC*,
  2013 OK CIV APP 67, 307 P.3d 400 .............................................................................. 23

*Vance v. State Farm,*
    No. CIV-23-260-SLP (W.D. Okla. March 25, 2023) .............................................. 12, 13

*Walker v. Grp. Health Serv.,*
    37 P.3d 749 (Okla. 2001). ........................................................................................ 25

*Warren v. State Farm Fire & Cas. Co.,*
    No. CIV-25-85-JD ....................................................................................7, 10, 13, 20

*Wedin v. Allstate,*
    No. CJ-2023-181 (Rogers Cnty) ............................................................................... 7

*Williams Field Servs. Grp., LLC v. Gen. Elec. Int'l Inc.,*
    No. 06-CV-0530-CVE-FHM, 2009 WL 151723 (N.D. Okla. Jan. 22, 2009) .............. 19

*Woodward v. N.Y. Life Ins.,*
    No. CIV-07-1067-HE, 2008 WL 11337956 (W.D. Okla. Jan. 28, 2008) .................... 22

**Statutes**

36 O.S. § 3622 ........................................................................................................... 5

36 O.S. § 3622(B) ..................................................................................................... 16

36 O.S. § 1205 .......................................................................................................... 25

36 O.S. § 607(A) ....................................................................................................... 25

**Rules**

FED. R. CIV. P. 9(b)..................................................................................................... 20

FED. R. CIV. P. 11(b)..................................................................................................... 8

**Other**

*Britton Weimer*, Law of Commercial Agents § 1:5 (2023) ……………………………16

*Glossary of Insurance Terms*, NAIC,
    https://content.naic.org/glossary-insurance-terms............................................................5

*Our Story*, NAIC,
    https://content.naic.org/about............................................................................................5

4899-7406-3183, v. 1

## INTRODUCTION

This case is simply a claim dispute between Plaintiffs and Defendant State Farm Fire and Casualty Company ("State Farm") regarding the extent of storm damage to Plaintiffs' roof and whether the roof needs to be replaced. The merits of this dispute have nothing to do with Plaintiffs' agent Mark D. Welty and Mark D. Welty Insurance Agency, Inc. ("Agent"), who as agent, has no authority over claims decisions.

In three virtually identical cases brought by Plaintiffs' counsel, (1) *Barlow v. State Farm*, No. CIV-25-00044-R, 2025 WL 1139489 (W.D. Okla. Apr. 17, 2025), (2) *Cisneros v. State Farm*, No. CIV-25-42-R (W.D. Okla.), and (3) *Porter v. State Farm*, No. CIV-25-187-R (W.D. Okla.), Judge Russell denied the plaintiffs' motions to remand. Judge Russell observed the "Scheme" these plaintiffs all allege works as follows:

> [T]he agent sells an insurance policy to the customer and in doing so "expressly and/or impliedly represents" that the property meets State Farm's underwriting guidelines, the replacement cost value the agent calculated is accurate, and the policy covers wind and hail damage. State Farm issues the policy, the insured suffers a loss from wind or hail, and State Farm then denies the claim based on an undisclosed and narrow definition of hail damage and a variety of bad faith claims handling tactics.

*See, e.g.*, *Barlow*, 2025 WL 1139489, at *2 (citations omitted). Seeing past the facade, Judge Russell held—"**with complete certainty**"—"**Plaintiffs do not have a potentially viable claim for negligent procurement of insurance or negligent misrepresentation/constructive fraud against the [Agent]**." *Id.* at *2 (emphasis added).

Judge Russell distinguished Plaintiffs' counsel's earlier cases where remand was granted, observing the allegations of "affirmative statements" in those cases had been replaced here with new allegations of "implied" representations:

Plaintiffs [here] do not plead that the insurance agent made affirmative statements about the scope of coverage, the condition of the property, or the agent's underwriting duties. **Instead, they primarily rely on "inherent" or "implied" representations that insurance agents purportedly make every time they market, bind, and sell a policy**. *See, e.g.* Pls.' Br. at 1 ("In every instance of the Scheme, State Farm's captive agents inherently represent to the insured —by virtue of the act of marketing, selling, and binding State Farm replacement cost insurance coverage that the property at issue meets State Farm's underwriting guidelines, qualifies for the coverage stated in the policy, and is free from any defect that would negate that coverage.").

*Id.* at *3, n.5. [1] In denying a motion to remand in another case brought by Plaintiffs' counsel using the same petition, Judge Heaton observed that "[t]he fact that a claim under a policy is denied, or paid at a level less than that sought by the insured, does not, without more, render the policy illusory." Order at 5, *Stafford v. State Farm*, No. 5:25-cv-00008-HE (W.D. Okla. May 27, 2025), ECF No. 25, Ex. 1.

## ARGUMENT AND AUTHORITIES

Plaintiffs allege they obtained a State Farm replacement cost policy ("Policy") for their property through Welty. [Dkt. 1-4 at ¶ 25]. They allege their property was damaged by wind and hail on October 4, 2023. [Dkt. 1-4 at ¶ 40(a)]. State Farm had the property inspection on or about March 12, 2024. *Id.* at ¶ 40(c). They allege State Farm prepared an estimate of $1,446.87 for the cost to repair and/or replace the damage. *Id*. at ¶ 40(e). On March 12, 2024, State Farm sent a letter to Plaintiffs explaining damages resulting from wear and tear and deterioration were excluded under the policy. *Id.* at ¶ 40(f). Plaintiffs

---

[1] Judge Russell acknowledges in n.1 of the orders that Judge DeGiusti came to a different conclusion in *Pruitt v. State Farm*, No. CIV-25-187-R (W.D. Okla.); however, as Judge Russell observed, the "inherent" or "implied" representations alleged in these newer cases are materially different than the earlier cases and compel a different result, *i.e.*, denial of remand and dismissal of the agents.

allege their property was then damaged by another storm on May 21, 2024. *Id.* at ¶ 40(h). Plaintiffs' contractor inspected the property and recommended a full roof replacement. *Id.* at ¶ 40(j). State Farm again inspected the property and found additional storm damage. *Id.* at ¶ 40(k). On July 29, 2024, State Farm sent a letter to Plaintiffs explaining that the additional storm damage found fell below their deductible. *Id.* at ¶ 40(l). Plaintiffs allege State Farm manipulated its loss finding to avoid paying Plaintiffs all amounts owed under the policy, including a total roof replacement. *Id.* at ¶ 40(o).

Against this backdrop, Plaintiffs allege, on the one hand, Welty failed to procure full replacement cost coverage for wind and hail. *Id.* at ¶¶ 25-26. On the other hand, Plaintiffs admit (and their Policy shows) they had replacement cost coverage for wind and hail. *Id.* at ¶ 31 (alleging "State Farm's form policy affords coverage for . . . hail"), ¶ 56 (alleging Plaintiff is owed "replacement cost as per the Policy"). Reading between the lines, Plaintiffs' dispute is over State Farm's claims decisions and not any act or omission of Welty, who Plaintiffs sued merely to evade diversity jurisdiction.

Similar cases abound. Before Judge Russell denied in *Barlow*, *Cisneros*, *Porter*, and *Stafford*, Judge DeGiusti denied remand in *Rain Drop Found., Inc. v. State Farm*, No. 24-1101-D, 2025 WL 582562 (W.D. Okla. Feb. 21, 2025), citing Judge Wyrick's order denying remand in *Steinkamp v. State Farm*, No. CIV-22-00047-PRW, 2023 WL 11920886 (W.D. Okla. Sept. 29, 2023). Judge DeGiusti reasoned, in short:

> As requested, [the State Farm Agent] procured replacement cost insurance. **Plaintiff's alleged damages arose, not because of the type of insurance procured, but because State Farm refused to replace Plaintiff's roof**.

2025 WL 582562, at *4 (emphasis added); *see also Roberson v. State Farm Fire and*

*Casualty Company, et al*., No. CJ-2024-3950 (Okla. Cnty. Dec. 4, 2024) (granting agent motion for summary disposition of insured's "illusory coverage" and "pre-coverage inspection" claims), Ex. 2. Here, too, Plaintiffs received the insurance coverage they allegedly requested—replacement cost insurance for wind and hail. *See* [Dkt. 1-4 at ¶¶ 31, 56]; Policy at 12, 18, [Dkt. 1-2]. Here, too, remand should be denied.

In their Motion, Plaintiffs rely almost exclusively upon an earlier body of cases filed against State Farm by Plaintiffs' counsel and removed to federal court. Admittedly, most of those cases were remanded. But as Judge Russell observed, the new cases are different. Almost certainly in response to the few earlier cases where remand was denied, *Marino v. State Farm*, No. CIV-22-885-HE, 2023 WL 11915691 (W.D. Okla. Aug. 7, 2023); *Goebel v. State Farm*, No. CIV-22-0882-HE, 2023 WL 11883977 (W.D. Okla. Aug. 7, 2023); *Baltasar v. State Farm*, No. CIV-22-0928-HE, 2023 WL 11883978 (W.D. Okla. Aug. 8, 2023), Plaintiffs' counsel rewrote their form petition. They removed the **affirmative**, oral representations found fraudulent and now allege the agent representations were **implied** by the agent by "binding" coverage, and the agent omitted disclosure of State Farm's alleged claim handling practices. But in doing so, Plaintiffs stretch credulity too far.

Plaintiffs require the Court to accept a characterization of insurance agents that is false under all industry standards, and certainly not the role of State Farm Agents. An insurance agent is not an underwriter, home inspector, or claims adjuster. Plaintiffs' arguments assume otherwise and ask this Court to accept these false characterizations as true merely because they are pled. That is not the law, and the Court should not permit Plaintiffs to evade federal court by creating non-existent factual or legal duties.

The National Association of Insurance Commissioners ("NAIC") is an organization that provides "expertise, data, and analysis for insurance commissioners to effectively regulate the insurance industry and protect consumers" and defines agents, adjusters, and underwriters as follows:[2]

- An "agent" is "an individual who sells, services, or negotiates insurance policies either on behalf of a company or independently."
- An "underwriter," is a "person who identifies, examines and classifies the degree of risk represented by a proposed insured in order to determine whether or not coverage should be provided and, if so, at what rate."
- An "adjuster" is "a person who investigates claims and recommends settlement options based on estimates of damage and insurance policies held."

The NAIC does not define "binding," but Oklahoma law does. Binding is "temporary insurance" that becomes "invalid" when the policy issues, 36 O.S. § 3622, the entire point of which is to provide some coverage while the insurance company (and not the agent) performs the underwriting.

Nevertheless, Plaintiffs ask this Court to disregard these statutory and industry-defined roles, and instead accept, under the rubric that all pled facts are true, (1) insurance agents are required to inspect insured's house at policy inception and at each renewal, after which (2) the "binding" of coverage by the agent constitutes a representation that the house is in good condition and meets underwriting guidelines, and (3) if a State Farm adjuster determines claimed hail damage does not exist, then (4) the agent must have made a misrepresentation as to the condition of the house when he bound coverage. Further, by

---

[2] Our Story, NAIC, https://content.naic.org/about; Glossary of Insurance Terms, NAIC, https://content.naic.org/glossary-insurance-terms (both last visited April 19, 2025).

failing to tell the insured that State Farm might deny a claim in the future due to an alleged "Scheme" to deny claims, the agent omitted information he was obligated to tell the insured. Notably, Plaintiffs do not confront whether the failure to also tell the insured at policy inception and renewal that thousands upon thousands of claims are paid every year is also an actionable omission or how that fits into the Scheme. There is no basis in the law to support these theories. Simply put:

- Agents are not inspectors. Plaintiffs allege Agent never inspected the house, but Plaintiff was not owed an Agent inspection. In fact, the Policy provides there is no obligation to "make inspections and surveys of the insured location at any time." *See* Policy at 32, [Dkt. 1-2].

- Agents are not underwriters. Binding coverage is a placeholder based on information provided by the insureds for the period during which State Farm does the actual underwriting. Binding coverage makes no implied representations about the condition of the house.

- Agents are not adjusters. The agent has no duty to, is not authorized to, and is not alleged to have made any representations about claim handling.

The Policy State Farm issued has the replacement cost coverage Plaintiffs allegedly wanted, and it covers wind and hail damage. Plaintiffs had more than sufficient insurance coverage to replace their roof if replacement was required. State Farm merely disagrees with the conclusion of Plaintiffs' contractor, who stands to profit from a roof replacement.

## I.    PLAINTIFFS CANNOT AVOID FEDERAL JURISDICTION WITH FALSE  ALLEGATIONS.

The chart attached to Defendant's Notice of Removal [Dkt. 1-3] shows this is one of an implausible and increasing number of cases against not only State Farm but other insurers by the same group of attorneys alleging dozens of agents from different insurance companies made the same misrepresentations and committed identical underwriting

failures. Instead of alleging agents made all the same affirmative statements to all of the insureds in all the same words about inspections, property conditions, and policy terms, as alleged in counsel's earlier cases, the insureds now allege State Farm is involved in a "systematic and pervasive Scheme" to deny or underpay wind and hail claims, and its agents "anchor the Scheme" by selling and binding State Farm policies. *See* [Dkt. 1-4 at ¶¶ 13-24].

According to Plaintiffs' counsel, State Farm is not the only insurer operating this scheme. For example, they have also sued Allstate, contending it and its agents operate a "systematic and pervasive Scheme" to deny and underpay claims with its agents, who all reside in Oklahoma. [Dkt. 1-4 at ¶¶ 33–40], *Wedin v. Allstate*, No. CJ-2023-181 (Rogers Cnty.), Ex. 3; [Dkt. 1-4 at ¶¶ 18–21], *Austin v. Allstate*, No. CJ-2-24-524 (Cleveland Cnty.), Ex. 4. Additionally, Plaintiffs' counsel has also sued Philadelphia Indemnity Insurance Company and agents selling its policies contending Philadelphia engaged in "the pattern and practice of denying full roof replacement claims by asserting pre-existing damages and faulty installation without a pre-inception property inspection and/or without reasonably updated knowledge of the pre-loss condition of the subject property." Pet. ¶ 58(r), *Mid-Del Group Home, Inc. v. Philadelphia Indem. Ins. Co.*, No. CJ-2025-1860 (Okla. Cnty.), Ex. 5; Pet. ¶ 37(r), *The Referral Ctr. for Alcohol and Drug Servs. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co.*, No. CJ-2025-3490 (Okla. Cnty.), Ex. 6.

The "Scheme" is a fiction created to evade federal jurisdiction as demonstrated by the web of allegations in which Plaintiffs' counsel have been repeatedly caught. *See*, *e.g.*, *Warren v. State Farm Fire & Cas. Co.*, No. CIV-25-85-JD, ECF No. 22 (Plaintiff's counsel

claiming they accidentally pleaded specific allegations of fraud against a brand-new agent and an agency that did not exist when the policy was procured); *Hope v. State Farm Fire & Cas. Co*., No. CIV-25-323-D, ECF No. 18 (same). The claims against Welty are based on Plaintiffs' allegation that they did not receive the full replacement cost coverage they requested but instead received "illusory" coverage. *See* [Dkt. 1-4 at ¶¶ 63, 74].[3] But as Judge Heaton noted, "[n]o presumption against removal jurisdiction can or should insulate a plaintiff from misrepresentations like those involved here[.]" *Baltasar*, 2023 WL 11883978, at *2. Attorneys have a duty to ensure that, after reasonable inquiry, factual contentions have evidentiary support. FED. R. CIV. P. 11(b). And as Judge Heaton put it, courts should not "play plaintiff's—more accurately plaintiff's counsels—game." *Baltasar*, 2023 WL 11883978, at *2.

The Motion further attempts to attach "evidence" to support the viability of Plaintiffs' claims, but context must be provided in relation to these exhibits as none of them relate to the Agent in this matter and are completely irrelevant. [Dkt. 17 at 3]. First, Plaintiffs cite to deposition testimony of an adjuster in *Hosier*. [Dkt. 17-5 at 3]. The adjuster explained that she made the claim decision which is separate from selling insurance, underwriting, and renewals. [Dkt. 17-5 at 293:11-24]. Plaintiffs also cite to Ms. Lanier's testimony that she gave in the *Bates* case [Dkt. 17-7], but she had already left State Farm before the claim at issue in that case even arose. Moreover, Ms. Lanier admitted she could

---

[3] Plaintiffs' allegations of illusory coverage are refuted by the terms of their Policy, which is the legal instrument that governs the scope of their insurance coverage. Recognizing as much, Judge Dishman granted an agent's motion for summary disposition of an insured's similar "illusory coverage" and "pre-coverage inspection" claims. *See Roberson*, Ex. 2.

not recall any specifics about claims where she was supposedly told not to pay what she believed should have been paid. *See* Lanier Tr. at 30:21-25, Ex. 7. Finally, Plaintiffs cite to a Senate Homeland Security Committee hearing. Specifically, Plaintiffs attach what appears to be the testimony of "Shroeder," whom they represent as "former State Farm adjuster," but the testimony cited to and attached as Plaintiffs' exhibit 7 relates solely to claim handling for Allstate, not State Farm.

None of these exhibits show a possibility of recovery in this case against this Agent based on "implied" representations that Plaintiffs allege arose as a result of the Agent "binding" coverage, *which Plaintiffs then reply upon to allege the Agent had a duty to disclose State Farm's alleged claim handling practices*. What other individuals allegedly say about State Farm's claim handling practices in other cases and under different circumstances is not relevant to the existence of any duty imposed on Agent and, therefore, Plaintiffs' exhibits do nothing to cure the fatal flaws for recovery against the Agent.

Agents are individuals with employees and families whose livelihoods depend on their honesty and integrity, yet they are hauled into court and sued for fraud simply because they live in Oklahoma and Plaintiffs' counsel want to litigate in a more favorable forum. Judge Heaton allowed jurisdictional discovery in two cases that established, as he suspected, the allegations filed by Plaintiffs' counsel were manufactured in an attempt to state a claim against the agents and evade federal court; thus, the motions to remand were denied. *See Goebel*, 2023 WL 11883977 at *2, 3 (observing "petition filed by plaintiffs [wa]s replete with false statements" and "no good faith basis for a substantial portion of the facts alleged"); *Marino*, 2023 WL 11915691 at *3 ("There are, in short, multiple

allegations going to the potential liability of [the agent] for which there is zero evidence, indicating that those allegations were made without a valid, good faith basis.").

Discovery was not even necessary to identify the false allegations in *Baltasar*. There, the plaintiff signed an affidavit in support of her Motion to Remand contradicting allegations made by her counsel in her Petition. *Baltasar*, 2023 WL 11883978 at *1. Her counsel blamed the inconsistencies on a "scrivener's error." *Id.* at 2. Judge Heaton "decline[d] to play plaintiff's—more accurately plaintiff's counsel's—game":

> To suggest that factual discrepancies like those described above are "scrivener's errors" is ridiculous on its face. . . . Plainly, many of the central allegations here as to Kiburz not only lack evidentiary support—they are simply false. No presumption against removal jurisdiction can or should insulate a plaintiff from misrepresentations like those involved here, and the court declines to allow plaintiff to now attempt to create some new set of theories based on different facts from those initially alleged.

*Id.; see also Warren*, No. CIV-25-85-JD, ECF No. 22 (Plaintiff's counsel claiming they accidentally sued an agency for fraud that did not exist when the policy issued).

Judge DeGiusti acknowledged in *Rain Drop* "the cookie-cutter character of the allegations here is suspicious," and pointed out that plaintiff cited to and made allegations about terms that did not appear in the plaintiff's policy, "lending credence to the possibility that there is no good faith basis [for plaintiff's allegations]." 2025 WL 582562, at *3. This pattern shows Plaintiffs' counsel make the same cookie-cutter allegations in each case without investigating or verifying the veracity of those facts, hoping an "if we allege it, it is true" standard will prevail to defeat federal jurisdiction. *See, e.g., Warren, supra.*

The fraudulent nature of the Petition is clear from the limited record—which disproves Plaintiffs' allegations they received "illusory" coverage, Welty failed to procure

a replacement cost insurance coverage for hail (*see* further argument below, the Policy itself proves otherwise), Welty failed to calculate policy limits (Plaintiffs indisputably had sufficient coverage to replace their roof), the claim was denied due to a "pre-existing condition" that Welty missed during an inspection he had a duty to perform (*see* further argument below). <u>Remand cannot be based on a sham</u>. *Smoot v. Chicago, Rock Island & Pacific R.R.*, 378 F.2d 879, 881-82 (10th Cir. 1967). "The heavy burden placed upon Defendants to prove fraudulent joinder does not mean this Court must 'blindly accept' whatever Plaintiffs assert, 'no matter how incredible or how contrary to the overwhelming weight of the evidence.'" *Ferrell v. BGF Glob., LLC*, No. CIV-15-404-D, 2015 WL 6438988, at *3 (W.D. Okla. Oct. 21, 2015).

Plaintiffs argue State Farm has failed to satisfy the first ground articulated in *Dutcher v. Matheson* to establish fraudulent joinder—arguing that by "fraud in the pleading of jurisdictional facts," the court meant only fraud related to the "residency of its Oklahoma-based agent." [Dkt. 17 at 9]. In other words, Plaintiffs are telling this Court it is okay to include fraudulent allegations in a petition related to the substance of their claims to evade federal jurisdiction as long as those allegations do not speak to the diversity-destroying defendant's domicile.[4] Not so.

---

[4] The cases cited by Plaintiffs do not stand for the notion only fraud in the pleading of the non-diverse defendant's domicile is sufficient to establish fraudulent joinder. In *Earley v. Allstate Indem. Co.*, No. 6:13-CV-02203-JEO, 2014 WL 2214518, at *3 (N.D. Ala. May 28, 2014), the court in suggesting the only relevant facts in assessing the first *Dutcher* prong are "citizenship of the parties and the amount in controversy," cited to cases that focused on the second *Dutcher* prong. *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

In *Dutcher*, the Tenth Circuit observed fraudulent joinder could be established by a showing of (1) "actual fraud in the pleading of jurisdictional facts" or (2) "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." 733 F.3d 980, 988 (10th Cir. 2013). Both are satisfied here. In denying remand in *Goebel* and *Marino*, Judge Heaton found both avenues were met but focused on the first prong when discussing false allegations in the petitions. *See Goebel*, 2023 WL 11883977 at *2–3. This approach is consistent with that taken by other courts which have found, like Judge Heaton, that a plaintiff cannot "l[ie] to establish a putative party as a 'strawman' to defeat jurisdiction." *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F. Supp. 2d 901, 907-08 (W.D. Tex. 2005) (holding "actual fraud in the pleading of jurisdictional facts can encompass other facts proximately leading to jurisdictional concerns").[5]

Regardless of how it is analyzed, <u>courts agree plaintiffs cannot make up facts to state a claim against a non-diverse defendant</u> and deprive a foreign defendant of its right to litigate in federal court. Considering an attorney's obligations under Rule 11, "fraudulent joinder based on actual fraud in the pleading of jurisdictional facts" should never occur, and thus it makes sense why "[f]ew courts have addressed [it]." *Bass*, 2014 WL 12618687 at *3. Plaintiffs effectively admit their plan to evade federal court at all costs,[6] citing cases

---

[5] Others analyze fraud in the pleadings under prong 2. *See Bass v. Salco Prods.*, No. 1:14-CV-288, 2014 WL 12618687, at *4 (E.D. Tex. Sept. 19, 2014); *Crawford v. Charles Schwab*, No. 3:09-CV-0666-G, 2009 WL 3573658, at *2 n.2 (N.D. Tex. Oct. 30, 2009).

[6] The plan was apparent in *Vance v. State Farm*, when—after State Farm removed the case demonstrating the agent sued did not sell or renew the policy—Plaintiffs' counsel filed a Motion for Dismissal, claiming the petition was "mistakenly filed and served," and urging if the Court did not dismiss, they would be forced to do the unthinkable and pursue their claims against State Farm in this Court. *See* Mot. for Dismissal at 1-2, *Vance v. State Farm*,

against insurance companies based on the same allegations and theories where courts have granted motions to remand relying on the heavy burden the law imposes on non-forum defendants attempting to establish fraudulent joinder. Although courts in the Tenth Circuit have called the burden "heavy," they have not hesitated to recognize fraudulent joinder when it occurs. Thus, while the burden is heavy, it can be met and is met here. *See, e.g., Long v. Halliday*, 768 F. App'x 811, 814 (10th Cir. 2019).

## II.    PLAINTIFFS HAVE NO POSSIBLE CLAIM AGAINST THE AGENT.

### A.  Plaintiffs have no possible claim for negligent misrepresentation.

Plaintiffs' insistence that this case be remanded like certain other cases filed by Plaintiffs' counsel is wrong, particularly in light of Plaintiffs' counsel's revisions to their form petitions to avoid Judge Heaton's findings and State Farm's arguments of fraud in the pleadings. These changes amplify the flaws in Plaintiffs' legal theories.

In *Ervin* and *Martin*, for example, the Court observed the insured alleged their agent informed them "their roof met all underwriting requirements" and "there was nothing about the condition of the roof that would exclude coverage." *Ervin v. Herb Weaver Ins. Agency, Inc.*, No. CIV-22-935-SLP, 2022 WL 22839581, at *2 (W.D. Okla. Dec. 28, 2022); *Martin v. Allstate Vehicle & Prop., Ins. Co.*, No. CIV-23-739-SLP, 2024 WL 3510301, at *4 (W.D. Okla. July 23, 2024) (insured alleged agent told Plaintiffs that their roof met all underwriting requirements and there was nothing about the roof that would exclude coverage). These alleged statements are premised on a flawed conception of an agent's

---

No. CIV-23-260-SLP (W.D. Okla. March 25, 2023), ECF No. 5. Apparently, this happens often. *See, e.g., Warren*, No. CIV-25-85-JD, ECF No. 22 (same).

duty and, in any event, those allegations of ***affirmative*** representations do not exist here.

Plaintiffs must prove the following elements to recover for negligent misrepresentation/constructive fraud: (1) Agent owed a duty of full disclosure, (2) Agent misstated a fact or failed to disclose a fact to Plaintiffs, (3) Agent's misstatement or omission was material; (4) Plaintiffs relied on the misstatement or omission, and (5) Plaintiffs suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). For remand, "plaintiff[s] must make at least minimal factual allegations . . . as to every material element of the claim." *Slover v. Equitable Variable Life Ins.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). Plaintiffs have not and cannot do so.

1.     **Plaintiffs do not allege facts to establish a duty of disclosure.**  Unlike *Ervin* and *Martin*, Plaintiffs do not allege Welty made affirmative representations about inspections or the condition of their house. Rather, their allegation is that Welty implied their roof was in good condition simply by "binding" their policy. [Dkt. 1-4 at ¶¶ 21, 24 and 36]. Nor is there an allegation Welty made affirmative representations about claim handling and hail determination. To the contrary, they allege Welty did not disclose State Farm's alleged scheme to deny/underpay claims through a narrow hail definition.

Negligent misrepresentation cannot be based on silence or an implied representation alone. Plaintiffs must show Welty owed them "a duty of full disclosure." *Lillard*, 267 F. Supp. 2d at 1113. The allegations in the Petition and Motion do not establish that Welty owed Plaintiffs a duty to speak. "The duty to speak 'may arise if a party selectively discloses facts that create a false impression.' If a false impression is conveyed by disclosing some facts and concealing others, the concealment is in effect a false

representation." *Pratt v. Safeco*, 2020 WL 4735350 at \*2 (citations omitted). As in *Pratt*, Plaintiffs here "do not allege that [the agent] conveyed a false impression by disclosing certain material facts and concealing others." *Id.* Their allegation is that Welty said nothing at all about the condition of their house, how State Farm handles claims of property damage, hidden definitions and standards, or other facts about State Farm's "Scheme." [Dkt. 17 at 24]. Agent was "under no duty to speak," and Plaintiffs cannot possibly state a claim against their Agent for constructive fraud. *See id.*; *Payne Expl. Co. v. Trident Steel Corp.*, No. CIV-15-818-D, 2016 WL 1530006, at \*5 (W.D. Okla. Apr. 14, 2016) (facts failed to allege defendant "had a duty to disclose to [p]laintiff information relating to the allegedly defective casing" where complaint did "not identify any partial disclosure of facts").

    **2.**    **The element of reasonable reliance is missing.** Plaintiffs impermissibly conflate an agent's limited role in policy issuance ("binding") and the insurer's subsequent underwriting and carrying out of the policy terms. To the extent an agent's act of "binding" a policy could serve as a representation of the condition of Plaintiffs' house (it cannot), it would only be a representation to State Farm, not a representation to the insureds.

    As State Farm explained in its Notice of Removal, "binding authority" does not mean the agent had authority to "bind" (require) State Farm to issue a policy or carry out the Policy in any particular way. "'[B]inding authority' [] refer[s] to the insurance industry concept of an insurance agent's ability to temporarily 'bind' coverage, which occurs prior to the insurer's issuance of a policy." *Peerless Ins. Co. v. M.A.S.S. Servs.*, No. 806-CV-250T-27TGW, 2007 WL 2916386, at \*7 n. 11 (M.D. Fla. Oct. 5, 2007). The agent's

binding authority is limited to issuance of a binder, which is valid for a short period of time, known as a "look and see period" to give the insurance company time to perform underwriting and determine whether the property is an acceptable risk. 36 O.S. § 3622(B); *Hayes v. Charter Oak Fire Ins.*, 145 P.2d 941, 942 (Okla. 1944). See Britton Weimer, Law of Commercial Agents § 1:5 (2023) ("A binder is a temporary contract of insurance… it will temporarily protect the insured ... until a formal policy is issued").

Plaintiffs applied for a policy. After State Farm's underwriting department examined the risk and determined to provide coverage, State Farm issued the Policy on which Plaintiffs sue. Whatever binder existed expired the date the Policy issued. *See* 36 O.S. § 3622(B) ("No binder shall be valid beyond the issuance of the policy with respect to which it was given. . . ."). The "written policy supersedes the binder." *Weimer*, *supra*.

Thus, if issuance of the Policy constitutes a representation about the condition of Plaintiffs' house or satisfaction of underwriting requirements (as theorized by Plaintiffs), that can only be a representation by State Farm, not the Agent. And then, Plaintiffs' theory is squarely negated by the Policy, which expressly states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide insureds with "reports on conditions," or "recommend changes." *See* Policy at 32, [Dkt. 1-2].

**3.    Plaintiffs do not allege facts showing the alleged omission was material or they suffered damages as a result.** Further fatal to their claims are that any alleged misrepresentations about inspections and the condition of the house did not cause the damages for which Plaintiffs complain. Plaintiffs sue because State Farm found less

damage than Plaintiffs allege. It is clear from the Petition that State Farm did not deny Plaintiffs' claims at all.

The Petition alleges Plaintiffs' property was damaged by wind and hail. [Dkt. 1-4 at ¶ 40]. State Farm inspected the property during its handling of each claim, prepared repair estimates, and determined the payment would be less than Plaintiffs' deductible. *Id.*. However, Plaintiffs allege they should have been provided a full roof replacement. *Id.* Thus, the only dispute here is whether State Farm correctly determined the scope of damage caused by the storm and the cost to repair same. This dispute has nothing to do with Welty, who has no authority to adjust or pay claims.

Even accepting Plaintiffs' pleading as true and applying Plaintiffs' allegations to the elements of negligent procurement, the allegations cannot result in Plaintiffs' proposed damages because Plaintiffs' requested policy was procured. As argued above, Plaintiffs admitted they received the policy they wanted. Plaintiffs' alleged damages arose, not because of the type of insurance procured, but because State Farm allegedly failed to find sufficient storm damage warranting a total replacement of Plaintiff's roof. *See Rain Drop*; *Goebel*; and *Marino, supra*.

**4.     The alleged misrepresentations were indisputably true.** Any implied representations by Welty that the property "satisfied all underwriting guidelines" or was "eligible for [] full replacement coverage (rather than ACV)" or that the replacement cost value calculated would provide coverage for "the full amount needed to replace the Insured Property in the event of a loss" and the policy "covered all fortuitous losses" are not actionable misrepresentations because they were true. [Dkt. 17 at 23-24]. Plaintiffs'

17

property did satisfy underwriting and qualified for replacement cost coverage, so State Farm issued the Policy.

The Policy under which State Farm estimated to pay Plaintiffs for the damaged property, and under which Plaintiffs sue and seek benefits, is a policy with a replacement cost provision. [Dkt. 1-4 at ¶¶ 31-32]. Plaintiffs' Policy covers wind and hail damage. *Id.* Plaintiffs admit that in evaluating their claims, State Farm found hail damage and provided estimates for it, but Plaintiffs believed there was more damage than what State Farm found. *Id.* at ¶ 40; *see also Newman ex rel. Poston v. Bankers Life & Cas. Co.*, No. 2:10-CV-02135-DCN, 2010 WL 4638566, at *3 (D.S.C. Nov. 8, 2010) (agent fraudulently joined where plaintiff alleged she requested policy that covered dementia and defendants agreed the policy covered dementia, even though insurer denied claim for benefits). Plaintiffs all but concede the correctness of State Farm's position by suing State Farm for bad faith breach of their Policy. *See generally* Dkt. 1-4. Plaintiffs likewise concede they had enough coverage to replace their roof if it was totaled, negating all relevance of the theory the agent had a duty to calculate RCV coverage sufficient to restore Plaintiffs' property to its pre-loss condition. Plaintiffs admit "this isn't an underinsurance case." [Dkt. 17 at 19].

**5.      Any alleged misrepresentations regarding State Farm's claim handling and application of the policy were promises of future performance and not fraud.**  As to alleged schemes involving claim handling and application of policy terms in future claim handling, [Dkt. 17 at 23-24], Welty is not tasked with the duties of a claims adjuster, had no obligation to guess at future claims that Plaintiffs might bring, and then inform them of what State Farm might do with such a future claim. *See Goebel*, 2023 WL

11883977 at *4 (agent has no duty to advise the insured as to anything that might conceivably limit the payment of a future claim).  Thus, Welty cannot be liable for not having spoken about a future claim. "[F]or a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); *CMI Roadbuilding v. SpecSys*, No. CIV-18-1245-G, 2021 WL 2189190, at *3 (W.D. Okla. May 28, 2021) (same requirement for constructive fraud); *Briggs v. State Farm*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (finding no reasonable basis for success against agent on claim for negligent misrepresentation where agent allegedly promised the insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have . . . and pay to [] Plaintiffs the cost to repair or replace the Plaintiffs' home").

Moreover, the Oklahoma Supreme Court has long-held a representation about whether insurance coverage extends to a particular claim is merely an opinion—not a statement of fact—which is in no event a material misrepresentation. *Cupit v. Dancu Chem. Co.*, 1957 OK 193, ¶ 7, 316 P.2d 593, 596 (holding a statement about coverage is "not a misrepresentation . . . of facts but a mere statement of opinion"); *see also Mellon v. Int'l Grp. for Historic Aircraft Recovery*, 612 F. App'x 936, 938 (10th Cir. 2015) (only misrepresentations of facts are actionable); *Williams Field Servs. Grp., LLC v. Gen. Elec. Int'l Inc.*, No. 06-CV-0530-CVE-FHM, 2009 WL 151723, at *3 (N.D. Okla. Jan. 22, 2009) (same). Clearly, opinions about coverage for future claims are not actionable.

6. **Plaintiffs have not pled fraud with particularity.**   Though Plaintiffs go to great lengths to argue the Petition satisfies Rule 9(b), insisting they pled "when" and "where" the representations occurred and "what" was said, Plaintiffs' Motion points to only general representations their counsel claims every State Farm agent makes through the act of "binding" or renewing a policy (which has been separately demonstrated as untrue).[7]

Plaintiffs attempt to create a "catch all" fraud claim by alleging a scheme between State Farm and all its captive agents. But, even assuming specificity as to agent "scheming" was pled (and it is not) each element of the Scheme presumes an obligation by the agent that does not exist. It is furthermore based on failures to speak, or implied representations, that are not actionable. While Plaintiffs apparently had no qualms about accusing Welty of fraud by implication and omissions—simply because he is an Oklahoma agent—the law takes assertions of fraud and deceit much more seriously, imposing on Plaintiffs a duty to plead their claims with particularity to protect the reputation of the defendants. *Joseph E. Seagram & Sons, Inc. v. Shaffer*, 310 F.2d 668, 676 (10th Cir. 1962); *Gay v. Akin*, 766 P.2d

---

[7] This same argument by Plaintiffs' counsel backfired in *Warren, supra,* after it was revealed their who, what, when, and where allegations were lodged against a brand new agent and his agency that did not even exist when the policy was procured. The same thing happened in *Hope, supra.* And here, while the Petition alleges "Defendants" as a group— Agent and State Farm—made these representations, their Motion rewrites the Petition to claim they were made by Agent alone. *See Lillard*, 267 F. Supp. 2d at 1102 ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth."). It is not true and it is not permissible. *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) ("the propriety of removal is judged on the complaint as it stands at the time of the removal").

985, 993 (Okla. 1988). Plaintiffs completely fail that standard.

### B. Plaintiffs have no possible claim for negligent procurement.

While Oklahoma law recognizes a cause of action for negligent procurement against an insurance agent, the circumstances are limited. *Swickey v. Silvey Cos.*, 979 P.2d 266, 268 (Okla. Civ. App. 1999). "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Id.* at 269. Only if "by the agent's fault, insurance is not procured as promised and the insured suffers a loss" as a result can an agent be liable in tort for breaching this duty of care. *Id.* The scope of the agent's duty is limited to needs disclosed by the insured. *Rotan v. Farmers Ins. Grp. of Companies, Inc.,* 83 P.3d 894, 895 (Okla. Civ App. 2004). Agents "do not have a duty to advise an insured with respect to his insurance needs…a general request for adequate protection and the like does not change this duty." *Id*. at 895.

### 1. Plaintiffs received the policy allegedly requested.

Plaintiffs' negligent procurement claim is difficult to follow. The Petition alleges they contacted Welty to procure "full replacement cost homeowners insurance coverage from State Farm." [Dkt. 1-4 at ¶ 25(a)]. Critically, Plaintiffs do not then explain how the policy procured was different than what they requested. *Id*. at ¶¶ 31-32. Plaintiffs likewise acknowledge State Farm estimated to repair items of their property damaged by hail, *Id.* at ¶ 40(e), which proves the Policy covers wind and hail (and frankly, there is no colorable argument to the contrary).

Plaintiffs also suggest that, although Agent procured a policy with a replacement cost provision, Plaintiffs did not actually qualify for it because State Farm later "ambush[ed] [them] with purported pre-existing damage . . . that negate[d] full replacement

21

coverage of the [] roof." [Dkt. 17 at 15]. However, Plaintiffs' property clearly qualified for policy with a replacement cost provision—State Farm issued a policy and estimated for hail damage under it, and now Plaintiffs sue on that Policy. State Farm simply found less storm damage than what Plaintiffs claim. If it is later determined State Farm was wrong, more shingles or other property were damaged by the storm, or a total roof replacement was necessary, that may give rise to a claim for breach of contract against State Farm, but not a claim against Welty, because an agent has no duty to ensure State Farm pays a claim on the policy. "[A]n insurance agent who acts on behalf of a disclosed principal is not liable for the principal's breach of contract." *Woodward v. N.Y. Life Ins.*, No. CIV-07-1067-HE, 2008 WL 11337956, at *2 (W.D. Okla. Jan. 28, 2008).

2.    **The element of causation is absent.**    Plaintiffs accuse State Farm of "conflat[ing] its own unlawful claims handling with Welty's role in the overarching Scheme," [Dkt. 17 at 12-13], but do not explain Welty's role or how any act by Welty gives rise to a claim for negligent procurement. Nor do they explain how Welty caused any damages claimed by Plaintiffs. The only injury identified is State Farm's refusal to pay more to replace Plaintiffs' roof. That decision had nothing to do with Welty or the policy he procured. The decision was made by State Farm as part of its non-delegable duty to investigate and to evaluate Plaintiffs' claim. *Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*, 341 P.3d 75, 86 (Okla. 2014). Plaintiffs' alleged damages, therefore, flowed from State Farm's actions and not "from the breach of the agent's duty of care." *Castens v. Conseco Life Ins.*, No. 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012); *Steinkamp v. State Farm*, No. CIV-22-00047-PRW, 2023 WL

11920886, at *2 (W.D. Okla. Sept. 29, 2023) (finding plaintiff could not state a claim against agent, reasoning "State Farm denied the claim not because of the type of policy [the agent] procured, but because it determined that her roof did not sustain a covered loss. . . . Plaintiff's claim against State Farm depends upon what damage her roof sustained, not the terms of her policy."); *See Harris v. State Farm*, No. 5:13-CV-61-BO, 2013 WL 3356582, at *3 (E.D.N.C. July 3, 2013) (finding agent was fraudulently joined issue was not the adequacy of the policy's coverage, but how State Farm carried out its contractual duties to the policyholder).

The element of causation is absent here. Plaintiffs have no answer for it.[8] Plaintiffs' entire theory against Welty is a circuitous way of improperly alleging bad faith against an agent. *See, e.g., United Adjustment Services, Inc. v. Professional Insurors Agency, LLC*, 2013 OK CIV APP 67, ¶ 21, 307 P.3d 400, 404–405 (an insured cannot bring a bad faith claim against an insurance agency or its agent because they are not parties to the contract.).

**3.    The Agent had no duty to inspect.**  Plaintiffs try to expand the duty of an agent from one to procure insurance to one to inspect Plaintiffs' property. Plaintiffs cite no law for this duty. Courts are in agreement that an agent owes no underwriting duty, or a duty to inspect, to the insured. *Stafford, supra.*; *Marino*, 2023 WL 11915691 at *3; *Goebel*, 2023 WL 11883977 at *4; *Gray v. Derderian*, 464 F. Supp. 2d 105, 110 (D. R.I. 2006); *Hartford Steam Boiler Inspection & Ins. Co. v. Cooper*, 341 So. 2d 665, 668 (Miss. 1977);

---

[8] *Strahan v. Allstate* is inapposite. There, payment of the plaintiff's claim, was delayed for more than a year because of agent's failure to procure coverage and the insured may have suffered damages as a result of the delay. 2015 WL 730055, at *3.

*Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 229 (Mo. Ct. App. 1998) (refusing to find agent had legal duty to customers to abide by underwriting guidelines in placing coverage); *Salopek, Tr. for Salopek Fam. Heritage Tr. v. Zurich Am. Life Ins. Co.*, 428 F. Supp. 3d 609, 622 (D. N.M. 2019) (same). Insurers conduct underwriting to recognize and reduce their risk, and not as a service to inform prospective (or existing) insureds of the condition of their house. *Gray*, 464 F. Supp. 2d at 109. A business model that required an inspection of every house insured would be impossible. As stated above, the Policy tells the insureds State Farm has no obligation to inspect their property. *See* Policy at 32 [Dkt. 1-2].

4.     **Plaintiffs had sufficient coverage to replace their roof.**  Finally, in an effort to layer on allegations to create the appearance of a claim, Plaintiffs make multiple confusing and irrelevant allegations about Welty's alleged calculation of RCV. *See, e.g.*, [Dkt. 1-4 at ¶¶ 25, 62-63]. In their Motion, Plaintiffs agree they are not underinsured, and do not contend they are overinsured due to Welty's negligence. Rather, the argument is that by providing a replacement cost value calculation, Welty "doubled down on his representation that he had inspected the home, considered its condition, and calibrated the policy and its limits accordingly." [Dkt. 17 at 20]. The act of providing a replacement cost estimate cannot form the basis of a constructive fraud claim. As the Policy makes clear, to the extent an agent assists the with preparing a replacement cost estimate, it is based on information the insured provides. Policy at 1, [Dkt. 1-2] (State Farm "agree[d] to provide the insurance . . . based on the information [Plaintiffs gave it])."

5.     **Complaints about the sale of a "form" policy fall under the purview of**

**the Oklahoma Insurance Department ("OID"), not the court.** Contrary to Plaintiffs' argument, exercise of the OID's primary jurisdiction is not limited to disputes over premium rates or the lawfulness of a policy. The doctrine guides referral of issues to an administrative agency where "adjudication of the claims calls for resolution of issues which, under a regulatory scheme, are placed within the special competence of" that agency. *Walker v. Grp. Health Serv.*, 37 P.3d 749, 761 (Okla. 2001). The OID has special competence to address the form of a policy, which must be approved for sale via the Commissioner's issuance of a certificate of authority. 36 O.S. § 607(A). Additionally, the OID has special authority to regulate and investigate the very kind of complaint Plaintiffs allege here—misrepresentation and unfair practice in the sale of an insurance policy. [Dkt. 1-4 at ¶ 55]; *see* 36 O.S. § 1205. Plaintiffs allege State Farm and Agent use a "form insurance policy," which allegedly does not include "the criteria, limitations, exclusions, and other tactics" used in claim handling, to perpetuate a fraudulent "Scheme" to sell and deny claims for full roof replacement. [Dkt. 1-4 at ¶ 29]. This complaint is within the special province of the OID to address, and the Department should be allowed to do so in the first instance.

## CONCLUSION

The thrust of Plaintiffs' fraudulently asserted allegations – that every insurance agent in Oklahoma who procures coverage effectively warrants through "implied" representations that a future claim made by the insured will not be denied by the insurer – has no basis in the law. State Farm respectfully requests that Plaintiffs' Motion to Remand be denied.

Respectfully submitted,

s/Lacy B. Williamson
Lance E. Leffel, OBA No. 19511
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
lleffel@gablelaw.com
Telephone:  405.235.5500
Facsimile:   405.235.2875

-and-

Carrie B. McNeer, OBA No. 22235
Lacy B. Williamson, OBA No. 34004
GABLEGOTWALS
110 N. Elgin Avenue
Suite 200
Tulsa, OK 74120-1490
PH:  (918) 595-4800; Fax: (918) 595-4990
cmcneer@gablelaw.com
lwilliamson@gablelaw.com

*Attorneys for Defendants*
*State Farm Fire and Casualty Company,*
*Mark D. Welty, and Mark D. Welty*
*Insurance Agency, Inc.*

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Phone: 405-516-7800
Fax: 405-516-7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

Patrick F. Collogan, OBA No. 30529
BIBY LAW FIRM
6305 E. 120th Ct., Suite F
Tulsa, OK 74137
Phone: 918-874-8458
Fax: 888-572-8263
pat@bibylaw.com

***Attorneys for Plaintiffs***

s/Lacy B. Williamson
Lacy B. Williamson