**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| THE REFERRAL CENTER FOR ALCOHOL AND DRUG SERVICES OF CENTRAL OKLAHOMA, INC. | **FILED IN DISTRICT COURT**<br>**OKLAHOMA COUNTY** |
| Plaintiff, | **MAY 1 9 2025** |
| vs. | **RICK WARREN**<br>**COURT CLERK** |
| (1) PHILADELPHIA INDEMNITY INSURANCE COMPANY; and<br>(2) FINANCIAL RISK SOLUTIONS, L.L.C., | Case No. _____ 41_____ |
| Defendants. | **CJ-2025-3490** |

## PETITION

COMES NOW the Plaintiff The Referral Center for Alcohol and Drug Services of Central Oklahoma, Inc., and for its causes of action against Defendant Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") and Defendant Financial Risk Solutions, L.L.C. (collectively "Defendants"), hereby alleges and states as follows:

### JURISDICTION AND VENUE

1.    Plaintiff The Referral Center for Alcohol and Drug Services of Central Oklahoma, Inc. (referred to herein as the "Plaintiff", "The Recovery Center" or "TRC") is a domestic non-profit corporation organized and existing under the laws of the State of Oklahoma.

2.    Defendant Philadelphia Indemnity Insurance Company is a foreign insurer that is licensed and engaged in the business of insurance in the State of Oklahoma. Philadelphia Indemnity is a subsidiary of and/or operated under the umbrella of Philadelphia Insurance Companies, a national insurer headquartered in Bala Cynwyd, Pennsylvania. Philadelphia Indemnity may be served via the Oklahoma Insurance Commissioner, Glen Mulready, 400 N.E.

**EXHIBIT**
**6**

50th Street, Oklahoma City, OK 73105.

3.     Defendant Financial Risk Solutions L.L.C. is a domestic for-profit corporation organized and existing under the laws of the State of Oklahoma and doing business in Oklahoma City and Oklahoma County. Financial Risk Solutions may be served through its registered agent, Daniel Garcia, at 1001 NW 63rd St, Suite 310, Oklahoma City, OK, 73116.

4.     Financial Risk Solutions L.L.C. sells property and casualty insurance policies, including commercial property policies, as an independent insurance agency. Financial Risk Solutions L.L.C. was the insurance agent that sold Plaintiff the subject Policy at issue in this case.

5.     Insurance agents are properly joined defendants to this action. *See, e.g., Norman v. State Farm*, 2025 WL 342871 (W.D. Okla. Jan. 30, 2025) (Russell, D.J.); *Oliver v. State Farm*, Remand Order ECF No. 12, CIV-24-789-SLP (W.D. Okla. February 11, 2025) (Palk, D.J.); *Bartholomew v. State Farm Fire & Cas. Co.*, 2022 WL 22879674 (W.D. Okla. Dec. 16, 2022) (Jones, D.J.); *Nelson v. State Farm Fire & Cas. Co.*, 647 F. Supp. 3d 1189 (W.D. Okla. 2022) (DeGiusti, C.D.J.); *McDow v. State Farm Fire & Cas. Co.*, 2022 WL 17960457 (W.D. Okla. Dec. 27, 2022) (Friot, D.J.); *Ervin v. Herb Weaver Ins. Agency, Inc.*, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) (Palk, D.J.); *Kyger v. State Farm Fire & Cas. Co.*, 649 F. Supp. 3d 1200 (W.D. Okla. 2022) (DeGiusti, C.D.J.); *Sexton v. State Farm Fire & Cas. Co.*, 2023 WL 11917022 (W.D. Okla. Jan. 5, 2023) (Jones, D.J.); *Phillips v. State Farm Fire & Cas. Co.*, 2023 WL 336142 (W.D. Okla. Jan. 20, 2023) (DeGiusti, C.D.J); *Christy v. State Farm Fire & Cas. Co.*, 2023 WL 2933312 (W.D. Okla. Apr. 13, 2023) (Russell, D.J.); *Shira v. State Farm Fire & Cas. Co.*, 2023 WL 4624701 (W.D. Okla. July 19, 2023) (Russell, D.J.); *Whitby v. State Farm Fire & Cas. Co.*, 2023 WL 11763365 (N.D. Okla. Aug. 21, 2023) (Frizzell, D.J.); *Stacy v. State Farm Fire & Cas. Co.*, 2023 WL 11915451 (W.D. Okla. Dec. 29, 2023) (Wyrick, D.J.); *Champion v. State Farm Fire &*

2

*Cas. Co.*, 2023 WL 11944492 (W.D. Okla. Dec. 29, 2023) (Wyrick, D.J.); *Ross v. State Farm Fire & Cas. Co.*, 2024 WL 1092540 (W.D. Okla. Mar. 13, 2024) (Dishman, D.J.); *Jessop v. State Farm Fire & Cas. Co.*, 2024 WL 3400543 (E.D. Okla. July 12, 2024) (Melgren, D.J.); *Stayton v. State Farm Fire & Cas. Co.*, (N.D. Okla. April 20, 2023) (Kern, D.J.); *Killingsworth v. State Farm Fire & Cas. Co.*, (N.D. Okla. April 21, 2023) (Kern, D.J.); *Bean v. State Farm Fire & Cas. Co.*, (N.D. Okla. June 26, 2024) (Cartwright, D.J.); *Martin v. Allstate Vehicle & Prop., Ins. Co.*, No. CIV-23-739-SLP, 2024 WL 3510301 (W.D. Okla. July 23, 2024) (Palk, D.J.); *Wedin v. Allstate Vehicle & Prop., Ins. Co.*, 2023 WL 6806995 (N.D. Okla. Oct. 16, 2023) (Eagan, D.J.). As Financial Risk Solutions LLC are citizens of the forum-state, removal of this action by any Defendant would be improper, unreasonable, and frivolous under 28 U.S.C. § 1447.

6.      Venue is proper pursuant to 12 O.S. § 137.

### FACTUAL BACKGROUND

7.      Plaintiff owns commercial property which operates as a detoxification facility for patients suffering from alcohol and drug abuse. The Recovery Center provides "*a Comprehensive Community Addiction Recovery Center in Oklahoma City, Oklahoma, offering individuals and families a wide array of services to treat substance abuse disorders, ... TRC is one of only two detox facilities in Oklahoma. We are under contract with the Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS) to provide care to those who financially qualify.*"[1] Plaintiff's commercial property at issue in this case is located at 1215 NW 25th St, Oklahoma City, OK 73106 (referred to as the "Insured Property").

8.      Financial Risk Solutions L.L.C. represents and markets itself as an independent insurance agency that is friendly, experienced, and can get affordable insurance tailored to a

---

[1] *See* https://www.trcok.com/about-us/ (last visited April 1, 2025).

client's specific needs:

## Welcome to Financial Risk Solutions LLC

FRS is an Independent Insurance Agency, which means we have made available some of our best companies for your online quick quotes.



We service the **Oklahoma City** area and throughout the state of **Oklahoma**. At Financial Risk Solutions LLC, each one of our clients is given a dedicated team that work together to proficiently address all your concerns.

We offer all types of Personal Insurance coverages to our clients in **Oklahoma** including Auto Insurance, Homeowners Insurance, Boat & Watercraft, Condo Insurance, and Earthquake.

Give one of our agents a call to save money on your Business Insurance. Some of our Commercial Insurance coverages include Business Owners Policy (BOP), Commercial Property, General Liability, Workers Compensation, and Bonds.

9.      With respect to commercial property insurance, Financial Risk Solutions L.L.C. represents that *"Commercial Property insurance is one of the most important types of insurance to better protect your business. Call one of our professional agents for more about commercial property insurance in Oklahoma City, Oklahoma including the Bethany, Edmond, Moore, Nichols Hills, and Yukon areas."*[2] Additionally, Financial Risk Solutions L.L.C. states the following with respect to the commercial property insurance coverage it can procure: "Commercial Property Insurance covers the building that your business owns or rents. A Oklahoma commercial property insurance poloicy would also cover equipment, computers, tools and furniture … Our goal is to design a package to fit your specific risks and get your business up and running if disaster strikes."

---

[2] https://thefrsgroup.com/business-insurance/commercial-property-insurance (last visited April 1, 2025).

Commercial Property Insurance covers the building that your business owns or rents. A Oklahoma commercial property insurance policy would also cover equipment, computers, tools and furniture. Let the agents at Financial Risk Solutions LLC help you evaluate your commercial property insurance needs to find a plan for your liabilities and risks.



We can also tailor a broad protection policy to fit your commercial property needs. Our goal is to design a package to fit your specific risks and get your business up and running if disaster strikes. We can then provide you with a customized plan that takes into consideration your needs, past loss history, prevention efforts and precautions you have taken for safety control.

[3]

10.     In this regard, Financial Risk Solutions L.L.C. advised Plaintiff that the Insured Property met all underwriting requirements and that any risk assessment was performed to meet Plaintiff's specific commercial property insurance needs, which specifically included full replacement cost coverage for the building and especially the roof. At no time did Financial Risk Solutions L.L.C. inform Plaintiff as to any inspection of the Insured Property and/or any concerns or issues with the installation/faulty workmanship of the Insured Property's roof or any pre-existing damage that would alter or negate the full replacement cost coverage requested for the roof on the Insured Property. Thereafter, Financial Risk Solutions L.L.C. sold Plaintiff a commercial lines policy through Philadelphia Indemnity. Financial Risk Solutions L.L.C. sold this Policy to Plaintiff through its Account Executive Daniel Garcia and its Account Representative Barbara Story.

11.     Defendant Philadelphia Indemnity insures the Insured Property owned by Plaintiff pursuant to a Replacement Cost Commercial Lines Policy No. PHPK2629151 (the "Policy"). Under the Policy, Plaintiff secured Policy Limits for its Insured Property of $1,760,000 with a $10,000 wind/hail deductible.

12.     Throughout the life of the Policy, Plaintiff has faithfully paid premiums for its

---

[3] *See* Note 3.

coverage through Philadelphia Indemnity.

13.    Despite Financial Risk Solutions LLC's representations and promises made regarding Defendant's ability to procure a commercial lines policy that would provide full replacement cost coverage and protect Plaintiff's Insured Property from Oklahoma severe weather losses, such as tornadoes, wind, and hailstorms, the Policy procured by Financial Risk Solutions L.L.C. through Philadelphia Indemnity did not provide the full replacement cost coverage that Plaintiff requested and understood it had received.

14.    On or about May 19, 2024, the Insured Property was severely damaged by a powerful wind and hailstorm that impacted numerous homes and properties in the Oklahoma City area. As a result of this storm, the Insured Property sustained comprehensive and widespread wind and hail damage to the roof, including large hail impacts all over the roof shingles, soft metals, gutters, downspouts, etc. The extensive damage to the Insured Property was well-documented, with detailed estimates/reports and quality photographs showing the overwhelming amount of hail impacts identified and marked by chalk on each roof for the Insured Property.

15.    Plaintiff timely reported the claim for the storm damage to Philadelphia Indemnity and was assigned Claim No. 1690309 (the "Claim").

16.    On January 14, 2025, Donna Geissler of Signature Adjustment Group and Michael Pruitt, P.E. of Ezra Engineering inspected the Insured Property for storm damage. Ms. Geissler and Mr. Pruitt conducted an inadequate inspection and failed to recognize the vast majority of damages to the Insured Property. They estimated damage to Insured Property to be in the amount of $8,936.49.

17.    Philadelphia Indemnity attempted to shirk its duties owed to Plaintiff (including but not limited to failing to evaluate the Claim in good faith and in a full, fair, thorough and timely

manner) by deploying Donna Geissler of Signature Adjustment Group and Michael Pruitt, P.E. of Ezra Engineering to investigate the Claim. Plaintiff believes that Signature Adjustment Group and Ezra Engineering are some of Philadelphia Indemnity's "hired-gun" third-party adjusting companies/engineers that engage in biased claims handling on behalf of Philadelphia Indemnity in order to support denials in its favor. Signature Adjustment Group and Ezra Engineering stand to benefit financially from handling claims like that of Plaintiff in bad faith. Here, Plaintiff alleges that Donna Geissler of Signature Adjustment Group and Michael Pruitt, P.E. of Ezra Engineering were dispatched to rubber-stamp a denial on behalf of Philadelphia Indemnity.

18.    On January 23, 2025, Philadelphia Indemnity informed Plaintiff by letter that Donna Geissler of Signature Adjustment Group and Michael Pruitt, P.E. of Ezra Engineering had completed an inspection of Insured Property. Philadelphia Indemnity wrote "*It was determined that there was minor hail damage to the soft metal components of the roof, including the cap flashing, exhaust caps, and the roof ventilators. There was no other wind or hail damages observed by the adjuster or the engineer on any other elevations or on the roof. Additionally, it was determined that the interior damage by water was due to ponded water on the roof from rainfall and condensate from the rooftop heating, venting, and air conditioning equipment, not from an opening due to the direct force of wind or hail*". Philadelphia Indemnity explained that since the "minor hail damage" was under the $10,000 policy deductible, that no payment would be forthcoming to Plaintiff.

19.    Subsequently, Plaintiff hired a reputable roofing contractor, Dream Team Roofing & Construction, to assess the damage to the Insured Property. Plaintiff's roofing contractor marked extensive hail damage with chalk all over the Insured Property's roof, took a wealth of high-quality photographs of the damage, and prepared estimates of the severe wind and hail damage to the

7

Insured Property. Plaintiff's roofing contractor advised Plaintiff that the Insured Property required a full roof replacement and provided estimates for the damage in the amount of $283,909.98.

20.     In this claim, every admission of damage sustained is followed by some type of excuse/coverage limitation/misattribution of damage to non-covered causes of loss (*i.e.*, ponded water, condensation, granule loss, distress, cosmetic distress, hail-related distress, function of the shingle, reduce the service life, etc.) that enabled Philadelphia Indemnity to avoid paying Plaintiff its full replacement cost benefits.

21.     Plaintiff was unaware that these coverage limitations and damage definitions would operate to negate its full replacement cost coverage upon the filing of the Claim.

22.     The pre-existing damage noted in Donna Geissler of Signature Adjustment Group and Michael Pruitt, P.E. of Ezra Engineering's summary (ponded water, condensation, etc.) are the type of pre-existing damage/conditions that would have affected Plaintiff's Insured Property's eligibility for coverage both at Policy inception and upon each subsequent annual renewal of coverage. Thus, both Financial Risk Solutions L.L.C. and Philadelphia Indemnity were required to verify the condition of the Insured Property prior to the Claim and disclose to Plaintiff any issues with the condition or other defects that would negate Plaintiff's full replacement cost coverage, which was specifically sought and requested by Plaintiff in order to obtain full replacement costs benefits via the premiums it paid. Instead, Financial Risk Solutions L.L.C. and Philadelphia Indemnity failed to verify the condition of the Insured Property, never reported any pre-existing damage or other defects to Plaintiff, and then weaponized pre-existing damage and other non-covered causes of loss against Plaintiff in the form of a denial on the Claim. Such action constitutes negligent procurement, bad faith, breach of contract, and constructive fraud as outlined herein.

23.     The excuses, pre-existing damage, and non-covered causes of loss further noted

allowed Philadelphia Indemnity to disregard wind and hail damage through the use of Signature Adjustment Group and Ezra Engineering, its hired-gun companies.

24.    Signature Adjustment Group and Ezra Engineering manufactured sham reports, estimates, and damage findings on Philadelphia Indemnity's behalf in order to support a denial and help it avoid providing Plaintiff with its full replacement cost benefits pursuant to the Policy.

25.    Both Signature Adjustment Group and Ezra Engineering helped Philadelphia Indemnity completely walk-back its coverage representation that it would assist Plaintiff.

26.    Signature Adjustment Group and Ezra Engineering were hired by Philadelphia Indemnity with a pre-determined goal of denying the Claim as opposed to conducting a full, fair, thorough and timely investigation in accordance with Philadelphia Indemnity's duty of good faith and fair dealing.

27.    Philadelphia Indemnity, through Signature Adjustment Group and Ezra Engineering, intentionally ignored blatant wind and hail damage warranting a full roof replacement at the Insured Property, which was clear from the wealth of evidence provided by Plaintiff's roofing contractor.

28.    Without the full replacement cost benefits rightfully owed under the Policy, Plaintiff cannot guarantee the safety of its patients because of Philadelphia Indemnity's refusal to restore the Insured Property to its pre-loss condition. Philadelphia Indemnity has left Plaintiff's business with a storm-damaged roof (thereby threatening the safety, security, and peace of mind of Plaintiff and its patients) and additional damage to the Insured Property continues to accrue as more severe weather passes through Oklahoma.

## COUNT I: BREACH OF CONTRACT
### *Against Defendant Philadelphia Indemnity*

29.    All allegations in the preceding paragraphs of this Petition are fully incorporated as

9

if each were fully set forth herein.

30.     Plaintiff entered into a contract of insurance with Philadelphia Indemnity to provide coverage for the Insured Property located at 1215 NW 25th St, Oklahoma City, Oklahoma 73106. The Policy was in full force and effect at all material times hereto.

31.     Plaintiff provided proper and timely notice to Philadelphia Indemnity of its claim arising from a wind and hailstorm that occurred on or about May 19, 2024, which caused significant damage to the Insured Property.

32.     Plaintiff complied in all material ways with the terms and conditions of the Policy.

33.     Philadelphia Indemnity breached its contractual obligations under the terms and conditions of the Policy by failing to pay Plaintiff all benefits owed under the terms and conditions of the Policy and for wrongfully underpaying and denying portions of the Claim.

34.     As a result of Philadelphia Indemnity's breach of contract and other wrongful conduct, Plaintiff incurred damages.

### COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
**("Bad Faith")**
*Against Defendant Philadelphia Indemnity*

35.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

36.     At all relevant times hereto, Philadelphia Indemnity owed Plaintiff a duty of good faith and fair dealing.

37.     Philadelphia Indemnity knowingly, intentionally, purposefully, wrongfully, and repeatedly breached its duty to deal fairly and in good faith by engaging in the following acts and omissions:

        a.     Failing to perform a proper investigation regarding Plaintiff's Claim made

10

pursuant to the Policy, including but not limited to a fair and objective investigation of Plaintiff's damages sustained;

b.    Unreasonably using and relying on a hired-gun adjusting company and engineer to support its refusal to pay for full roof replacements;

c.    Failing to pay Plaintiff the full and fair amount for the property damage sustained to Plaintiff's Insured Property in accordance with the terms and conditions of the Policy;

d.    Knowingly engaging in a pattern and practice of denial-oriented investigations and claims-handling practices;

e.    Purposefully engaging in arbitrary and capricious claims handling practices;

f.    Denying and or underpaying indemnity payments owed to its first-party insureds on valid property damage claims that require full roof replacements;

g.    Withholding pertinent benefits, coverages, and other provisions due to Plaintiff under the terms and conditions of the Policy in violation of the Unfair Claims Settlement Practices Act, 36 O.S. §§1250.1-1250.16;

h.    Limiting and/or denying rights inherent to Plaintiff;

i.    Recklessly disregarding said rights;

j.    Forcing Plaintiff to retain counsel to recover insurance benefits owed under the terms and conditions of the Policy;

k.    Knowingly and purposely failing to inspect the Insured Property prior to inception of the coverage and/or maintain current information as to the condition of the Insured Property prior to the loss;

11

l.      Failing to notify Plaintiff both prior to and at the inception and renewal of the Policy, of any pre-existing damage and other conditions that, if a claim were made, would limit coverage;

m.      Failing to communicate all coverages and benefits, as well as coverage negating defects, applicable to the Claim;

n.      Failing to perform a proper, timely, fair, and objective investigation of the Claim;

o.      Failing to pay the full and fair amount for the wind and hail damage sustained to the Insured Properties in accordance with the Policy's terms and conditions;

p.      Failing to base its denial of the Claim on valid, accurate, and reasonable grounds;

q.      Failing to disclose Philadelphia Indemnity's lack of compliance with its own underwriting guidelines, policies, and procedures in denying coverage to Plaintiff;

r.      Engaging in the pattern and practice of denying full roof replacement claims by asserting pre-existing damages and faulty installation without a pre-inception property inspection and/or without reasonably updated knowledge of the pre-loss condition of the subject property; and

s.      Engaging in the pattern and practice of utilizing third-party hired-gun adjusting companies (like Signature Adjustment Group) and engineers (like Michael Pruitt of Ezra Engineering) to support underpaying and denying claims.

38.     The conduct of Philadelphia Indemnity, as described above, constitutes bad faith and is a material breach of the terms and conditions of the Policy and its underlying insurance contract between the parties. Philadelphia Indemnity had no reasonable basis in its refusal to

12

recognize and pay Plaintiff the full amount of benefits owed pursuant to the Policy for the wind and hail damage to the Insured Property.

39.     As a consequence of Philadelphia Indemnity's breach of the duty of good faith and fair dealing, Plaintiff has sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering that naturally results from an insurance failure in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interests.

40.     Philadelphia Indemnity's conduct was intentional, willful, malicious, and/or in reckless disregard of the rights of others. Philadelphia Indemnity's actions during the handling of Plaintiff's Claim demonstrate it acted intentionally, and with malice (without justification or excuse) and breached its duty to deal fairly and in good faith. Philadelphia Indemnity's actions were consistent with an overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims and is sufficiently egregious in nature so as to warrant the imposition of punitive damages. Philadelphia Indemnity's conduct demonstrates a "pattern" theory of bad-faith conduct, liability for which is cognizable under Oklahoma law. *See* 12 Okla. Stat. § 2406; *Vining v. Enter. Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998) (where plaintiff sought to prove insured's pattern and practice of bad faith conduct, evidence regarding other insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)"); *see also Metzger v. Am. Fid. Assur. Co.*, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007); *Markham v. National States Ins. Co.*, 122 Fed. Appx. 392 (10th Cir. 2004) (evidence of nation-wide rescission practice supported bad faith); *Barnes v. Okla. Farm Bur. Mut. Ins. Co.*, 2000 OK 55, 11 P.3d 162, 170 ("*insurer's unreasonable treatment of Barnes was not an isolated incident, but the same or similar tactic was used by insurer repeatedly with other insureds*";

13

awarding actual and punitive damages); *Copeland v. Tela Corp.*, 2003 OK CIV APP 98, ¶ 3, 79 P.3d 1128 (confirming no abuse of discretion in allowing evidence of habit evidence under 12 O.S. § 2406 to show pattern and practice conduct.); *Jones v. Farmers Ins. Co., Inc.,* 2012 WL 12863976 (W.D. Okla) (court holds that similar claims are relevant to Plaintiff's contract claim and the claim of bad faith in that they may show a pattern and practice).

41.     Philadelphia Indemnity enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to Plaintiff. Philadelphia Indemnity's conduct was intentional, willful, malicious and in reckless disregard of the rights of others and is sufficiently egregious in nature to warrant the imposition of punitive damages. Philadelphia Indemnity acted intentionally, and with malice and breached duties owed to Plaintiff. Philadelphia Indemnity's actions were consistent with Philadelphia Indemnity's overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims.

### COUNT III: NEGLIGENT PROCUREMENT OF INSURANCE
### *Against Financial Risk Solutions L.L.C.*

42.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

43.     Financial Risk Solutions L.L.C. solicits and markets itself as an independent insurance agency that works for the customer. Philadelphia Indemnity uses a form insurance policy to issue property coverage in Oklahoma—while the amount of coverage (and premiums charged therefor) differ from insured to insured, the scope of coverage is in large part materially the same for all insureds.

44.     Although Financial Risk Solutions L.L.C. markets itself as an independent insurance agency, Financial Risk Solutions L.L.C. plays a crucial role in the sale, binding, and

renewal of the Philadelphia Indemnity commercial property insurance policy to the insured. This role creates key legal duties, which Financial Risk Solutions L.L.C. and Philadelphia Indemnity owes to the insured:[4]

    a.    Financial Risk Solutions L.L.C. must use reasonable care, skill, and diligence to procure coverage as the insured requested that meets the insured's stated needs;

    b.    Financial Risk Solutions L.L.C. agents who undertake the calculation of replacement cost for the insured must use reasonable care, skill, and diligence to do so; and

    c.    When Financial Risk Solutions L.L.C. speaks, it owes a duty to do so accurately and truthfully.

45.    Financial Risk Solutions L.L.C. has a duty to speak and to fully disclose all material information to an insured about Philadelphia Indemnity's bad faith claims handling tactics, its reliance on biased hired-gun adjusters and engineers, its pattern and practice to avoid paying for full roof replacements, and other material information any insured would deem reasonable in making a purchasing decision.

46.    Industry standards, as well as Financial Risk Solutions L.L.C.'s legal duty of reasonable skill, care, and diligence in the procurement of insurance, require Financial Risk Solutions L.L.C. to act in accordance with the training and contractual requirements Philadelphia Indemnity imposes upon them. These requirements and training exist to ensure policyholders

---

[4] Under Oklahoma law, a duty to speak may arise from a partial disclosure. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (the law imposes a duty to speak from a partial disclosure because "the speaker is under a duty to say nothing or to tell the whole truth" (citation and internal quotation marks omitted)); *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350,1353-54 (Okla. 1988) ("Although a party may keep absolute silence and violate no rule of equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth."); *see also Ervin v. Herb Weaver Ins. Agency, Inc.*, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) (Palk, D.J.).

receive the coverage they request and Financial Risk Solutions L.L.C. binds coverage in accordance with its representations to the insured and Philadelphia Indemnity's internal guidelines.

47.    Financial Risk Solutions L.L.C. should meet these duties by inter alia performing an in-person inspection of the Insured Property prior to the inception of coverage and routinely thereafter verifying the condition and attributes of the Insured Property for the purposes of (a) the agent's accurate calculation of replacement cost and (b) the agent's accurate representation that the Insured Property qualify for coverage under Philadelphia Indemnity's guidelines. Indeed, not all properties automatically qualify for Philadelphia Indemnity commercial property policies— only those which meet its internal guidelines and thus constitute a good risk for Philadelphia Indemnity to insure.

48.    The policy is a contract—one that obligates Philadelphia Indemnity to indemnify its insured upon the occurrence of a covered loss. Philadelphia Indemnity's issuance of an insurance policy to an insured contains certain critical representations: namely, that the property identified in the policy declarations meets the criteria for the coverage prescribed at the time of inception or renewal.[5] Financial Risk Solutions L.L.C. further expressly and/or inherently represents that no condition, pre-existing damage, deterioration, wear-and-tear, or other defect negates the property's eligibility for full coverage under the policy.

49.    Financial Risk Solutions L.L.C. should inspect the Insured Property to determine its eligibility for coverage under Philadelphia Indemnity's internal underwriting requirements. There is no other way for Financial Risk Solutions L.L.C. to gather the information it needs to accurately relay to Philadelphia Indemnity (and the insured) whether the property rightfully meets

---

[5] This must be true, for the issuance of coverage upon a property that does not qualify at the time would constitute an illusory coverage violation.

the criteria for coverage.

50.     Financial Risk Solutions L.L.C. represented expressly and/or impliedly to both Philadelphia Indemnity and the insured that the Insured Property met certain criteria and is eligible for coverage. This representation is repeated each time the policy renews, such that Financial Risk Solutions L.L.C. represents the Insured Property's eligibility (and, thereby, the absence of any condition that would negate that eligibility), each policy year upon renewal.

51.     In the event Financial Risk Solutions L.L.C. finds the property fails to qualify for replacement cost coverage (e.g., the roof is too old, too worn, in poor condition, was improperly installed, or otherwise affected by pre-existing conditions), Financial Risk Solutions L.L.C. owes an independent duty to report the same to both the insured and to Philadelphia Indemnity. This should result in reduction, denial, or cancellation of coverage. Of course, this determination would first require a physical inspection of the Insured Property's roof.

52.     Ultimately, Financial Risk Solutions L.L.C. binds coverage for the property on behalf of Philadelphia Indemnity. Philadelphia Indemnity then issues a resultant commercial property insurance policy only when all binding criteria are met. Upon information and belief, Financial Risk Solutions L.L.C. did not perform or acquire an in-person inspection of the Insured Property and its roof to be insured at the inception and/or renewal of the Policy. This means Financial Risk Solutions L.L.C. represented the Insured Property's eligibility to both Philadelphia Indemnity and the insured recklessly and blindly, without ever verifying whether that representation is true.

53.     Plaintiff contacted Financial Risk Solutions L.L.C. to procure full replacement cost commercial insurance coverage from Philadelphia Indemnity for Plaintiff. Financial Risk Solutions L.L.C. stated to Plaintiff that it had obtained a replacement cost policy that would

17

provide full replacement cost coverage for the Insured Property in the event of a loss. Replacement cost coverage or RCV, is a specific type of property insurance that can provide the highest level of insurance coverage on property like the Insured Property owned by the Plaintiff. Moreover, Plaintiff specficallty requested and secured a 100% RCV Policy based on the representations to Financial Risk Solutions, Inc.

54.     To that end, Plaintiff expressly and/or inherently disclosed concerns and insurance needs to Financial Risk Solutions L.L.C. Above all, given Oklahoma's extreme weather, Financial Risk Solutions L.L.C. was aware that the Plaintiff needed and requested replacement cost coverage under a policy that would fully replace the Insured Property's roof in the event of a loss, without exclusion of any weather-related losses.

55.     By virtue of the act of procuring the Policy and binding coverage (without limitation), Financial Risk Solutions L.L.C. independently established, calculated, and set the Policy's replacement cost value and resultant policy coverage limits. Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity required or otherwise asked Plaintiff to calculate or request a specific amount of coverage for the Insured Property.

56.     By virtue of the act of procuring the Policy and binding coverage (without limitation), Financial Risk Solutions L.L.C. independently selected and calculated coverage and expressly and/or inherently conveyed that such coverage limit was accurate, correct, commensurate with actual reconstruction costs, and represented 100% of the Insured Property's insurance to value, thus ensuring that there were no pre-existing damages or issues with the Insured Property or roof.

57.     Here, Financial Risk Solutions L.L.C. committed the following strategic and material omissions:

18

a.   Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity ever inspected the roof on the Insured Property or procured such an inspection from a third party.

b.   Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity ever verified the Insured Property's condition, characteristics, attributes, etc.—whether at Policy inception or upon each subsequent annual renewal of the Policy.

c.   Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity ever disclosed to Plaintiff that the Insured Property were ineligible for the requested replacement cost coverage for any reason.

d.   Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity ever advised Plaintiff that the Insured Property's roof had any defect, pre-existing damage, faulty installation or other conditions that would exclude them from replacement cost coverage.[6]

e.   Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity ever advised Plaintiff of any condition that would exclude the Insured Property's roof from full replacement cost coverage.

f.   Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity ever advised Plaintiff of Philadelphia Indemnity's internal coverage limitations and clandestine definitions of "hail damage," "ponded water," "condensation," "faulty or inadequate installation/workmanship," "functional damage," "distress," "cosmetic distress," "hail-related distress," etc. with respect to the roofs at Plaintiff' Insured Property. Instead, Financial Risk Solutions L.L.C. by virtue of the act of procuring the Policy and binding coverage (without limitation), acts to ensure coverage for

---

[6] As explained above, had Financial Risk Solutions L.L.C. identified any such condition, Financial Risk Solutions L.L.C. would have been required to report the same to both Plaintiff and Philadelphia Indemnity.

the Plaintiff under the Policy for all fortuitous losses and that all weather-related damages—be it big or small, functional or cosmetic—regardless of the severity, nature or type was covered.

g.  Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity required or otherwise asked Plaintiff to calculate or request a specific amount of coverage for the Insured Property.

h.  Neither Financial Risk Solutions L.L.C. nor Philadelphia Indemnity disclosed to Plaintiff that the value Financial Risk Solutions L.L.C. calculated for the Insured Properties and resultant coverage limits did not in fact represent 100% insurance to value.

i.  Nevertheless, and under the cover of Financial Risk Solutions L.L.C. 's strategic and material omissions, Financial Risk Solutions L.L.C. procured and Philadelphia Indemnity issued the Policy.

58.  In procuring the Policy, Financial Risk Solutions L.L.C. had a duty to:

a.  use reasonable care, skill, and diligence to procure coverage as the insured requested that meets the insured's stated needs;

b.  use reasonable care, skill, and diligence in undertaking the calculation of replacement cost for the insured;

c.  speak accurately and truthfully by informing Plaintiff of all coverages, advising Plaintiff of the benefits, risks, limitations and exclusions thereof, and perform a reasonable inspection of the Insured Property prior to procuring the replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required; and

    d.  disclose all material facts with respect to Philadelphia Indemnity's claim handling outlined within this Petition.

59.    Financial Risk Solutions L.L.C. breached its duty owed to Plaintiff by knowingly and purposefully procuring and renewing:

    a.  illusory coverage (in that all fortuitous losses are not covered under the Policy);

    b.  coverage deviating substantially and materially from that which Plaintiff requested;

    c.  a Policy that did not work as a 100% RCV Policy as promised nor did the Policy accurately reflect the replacement cost of the Insured Property (*i.e.*, an amount that was 100% insurance to value as represented);

    d.  a Policy that, as written, did not provide full replacement cost coverage to fully restore the Insured Property as requested and promised;

60.    Financial Risk Solutions L.L.C. further breached its duty owed to Plaintiff by failing to:

    a.  follow and abide by Philadelphia Indemnity's underwriting policies/guidelines;

    b.  perform all necessary inspections of the Insured Property;

    c.  disclose pre-existing damage to the Insured Property;

    d.  verify whether its inherent representation to Philadelphia Indemnity and Plaintiff that the Insured Property (including its roof) is in good condition was accurate;

    e.  procure and renew a policy that provided the requested full replacement cost coverage for all fortuitous losses; and

    f.  disclose all material facts as outlined within this Petition.

61.    Plaintiff relied on Financial Risk Solutions L.L.C.'s representations and/or omissions to substantial detriment.

62.     As a result of Financial Risk Solutions L.L.C.'s conduct, Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

63.     Financial Risk Solutions L.L.C.'s conduct was intentional, willful, malicious and in reckless disregard of the rights of others and is sufficiently egregious in nature so as to warrant the imposition of punitive damages. Financial Risk Solutions L.L.C. acted intentionally, and with malice and breached duties owed to Plaintiff. Financial Risk Solutions L.L.C.'s actions were consistent with Philadelphia Indemnity's overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims.

## COUNT IV: CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION
### *Against All Defendants*

64.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

65.     Defendants owed a legal and/or equitable duty to disclose all material facts that may arise out of their relationship as insurer and insured. *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 17, 308 P.3d 1041. Oklahoma law specifically recognizes such duties by insurers and agents as outlined within this Petition.  *McDow v. State Farm*, CIV-22-927-F, 2022 WL 17960457 (W.D. Okla. Dec. 27, 2022); *Adair v. State Farm*, CIV-23-1056-JD (W.D. Okla. May 1, 2025) (relying on *McDow* and finding viability of fraud claims).

66.     The concealment of a material fact which substantially affects another person constitutes fraud. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 34; *Sutton v. David Stanley Chevrolet*, 2020 OK 87, 475 P.3d 847. Fraudulent representations may consist of half-truths calculated to deceive, and a representation literally true is actionable if used to create an impression substantially false. *Sutton*, 475 P.3d at 15. Where the peculiar circumstances give rise to a duty on

22

the part of one of the parties to a contract **to disclose material facts and the party remains silent to his or her benefit and to the other party's detriment**, the failure to speak constitutes fraud. *Id.* (citing *Croslin*, ¶ 17) (emphasis added).

67.    "[A] variety of facts and circumstances [] will give rise to a duty to disclose material facts." The *Sutton* Court reiterated that it has "consistently found the existence of the requisite circumstances, i.e., that which is necessary to create a duty to disclose, when the offending party created a false impression concerning material facts that was relied upon by the other party to his detriment and to the benefit of the offending party." *Id.* at 15.

68.    A negligent or innocent misrepresentation or concealment for constructive fraud occurs when one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Negligent misrepresentation can also be based on a material omission. *See Lopez v. Rollins*, 2013 OK CIV APP 43, 303 P.3d 911; *Sutton v. David Stanley Chevrolet*, 2020 OK 87; *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 37 P.3d 783; *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 992 (10th Cir. 1994) (applying Oklahoma law).

69.    Defendants owed specific duties to the Plaintiff.  These duties are encompassed in Philadelphia Indemnity's duty of good faith and fair dealing owed to its insureds, as well as specific duties owed by Financial Risk Solutions L.L.C. to Plaintiff—a duty to exercise reasonable diligence and skill in obtaining and accurately notifying of the nature and character of the insurance procured, the duty in undertaking the calculation of replacement cost for the insured to use reasonable care, skill, and diligence to do so, the duty to speak accurately and truthfully, and the

duty to disclose all material facts relating to the Policy as outlined within this Petition.

70.    Defendants breached this duty by misrepresenting, concealing, or omitting pertinent material facts from Plaintiff, including (but not limited to) the following:

a.    Defendants misrepresented the Insured Property met all underwriting requirements, that all property inspections had occurred, and that the replacement cost values it calculated were accurate and commensurate with reconstruction costs such that the coverage would fully restore, replace and/or repair the Insured Property (including its roof) in the event of a loss by a covered event;

b.    Defendants misrepresented that the Insured Property (and, specifically, its roof) was eligible for the comprehensive[7] full replacement coverage (rather than ACV);

c.    Defendants failed to disclose that pre-existing issues with the Insured Property would either prevent issuance of the replacement cost coverage or limit coverage for any damage during the Policy period;

d.    Financial Risk Solutions L.L.C. misrepresented the procurement of the comprehensive replacement cost coverage Plaintiff requested;

e.    Defendants misrepresented that the Policy covered all fortuitous losses and that weather-related damage (even cosmetic)—big or small—was fully covered under the Policy under full RCV;

f.    Defendants failed to disclose all material information to an insured about Philadelphia Indemnity's bad faith claims handling tactics, its reliance on undisclosed definitions and standards outside of the Policy, its pattern and practice of relying on pre-existing damages to a property without consistent inspections and knowledge of the

---

[7] *See e.g.* ¶ 11, *supra.*

condition of such property prior to the loss in question, utilizing third-party hired guns to further its scheme/bad faith pattern and practice of intentionally avoiding full roof replacements on weather related roof claims, and other material information any insured would deem reasonable in making a purchasing decision; and

g.    Defendants failed to disclose to Plaintiff any of the above misrepresentations and/or omissions, any facts underlying these misrepresentations, or any material facts regarding this scheme/bad faith pattern and practices.

71.    Nevertheless, Defendants sold and renewed illusory replacement cost insurance coverage to Plaintiff knowing such statements were untrue and/or misleading.

72.    As a result of both Defendants' breaches of duties, each gained an advantage by misleading Plaintiff to substantial detriment and prejudice. These breaches of duties induced Plaintiff to accept, purchase, and renew the Philadelphia Indemnity replacement cost policy.

73.    Defendants' conduct constitutes constructive fraud.

74.    As a result of the Defendants' constructive fraud, Plaintiff sustained damages, including deprivation of monies rightfully belonging to Plaintiff, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

75.    Defendants' conduct was intentional, willful, malicious, and in reckless disregard of the rights of others, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

### **PRAYER FOR RELIEF**

**WHEREFORE**, this Court should enter judgment on behalf of Plaintiff against all Defendants for:

(a)    Actual damages in an amount in excess of $75,000.00;

25

(b)     Punitive damages under Oklahoma law;

(c)     Disgorgement of the increased financial benefits derived by any and/or all of the

Defendants as a direct result of the Defendants' wrongful conduct; and

(d)     Prejudgment interest, costs, and attorneys' fees.

Respectfully submitted,

*Blake Sonne*
Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK  73102
Office:          405.516.7800
Facsimile:    405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com
**ATTORNEYS FOR PLAINTIFF**

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**

26