UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) BILLY HURSH**,<br>  and<br>**(2) LACY HURSH**,<br><br>  *Plaintiffs*,<br><br>v.<br><br>**(1) STATE FARM FIRE AND CASUALTY COMPANY**;<br>**(2) MARK D. WELTY**;<br>  and<br>**(3) MARK D. WELTY INSURANCE AGENCY, INC.**,<br><br>  *Defendants*. | CIV-25-529-SLP<br><br>Hon. Scott L. Palk<br><br>***On removal from the<br>District Court of Oklahoma County<br>CJ-2025-2626*** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REMAND**

Plaintiffs Billy and Lacy Hursh ("Plaintiffs") respectfully submit this Reply in Support of their pending Motion to Remand. State Farm provides ***no evidence*** whatsoever to justify removal and has failed to meet its heavy burden.

**I.      The Decisions State Farm Relied Upon Are Distinguishable; The Court Should Follow Those Decisions More Analogous to this Petition's Allegations.**

State Farm cites Judge Russell's rulings in *Barlow*, *Cisneros*, and *Porter*, as well as Judge Heaton's holding in *Stafford*, in an attempt to reduce Plaintiffs' claims to mere implied or inherent misrepresentations against Defendants Mark D. Welty and Mark D. Welty Insurance Agency, Inc. ("Welty"). ECF No. 20 at 1-4, 23. While Plaintiffs respectfully acknowledge those decisions, the same should not control here due to distinguishing circumstances and the application of cases analogous to Plaintiffs'. The Petition details Welty's failures through **_both omissions and misrepresentations_**. Petition ("Pet.") ¶¶ 4(b), 26-28, 34-36, 40(c) & (f), 42, 63(b)(iv) & (b)(vii), 73(c) & (f)-(g) (omissions); Pet. ¶ 73(a)-(b) & (d)-(e) (misrepresentations). Welty's failures advanced State Farm's typical denial based on pre-existing damage. *See* Pet. ¶¶ 22-28, 36, 40(c)-(f); *see, e.g.*, *Barlow v. State Farm Fire & Cas. Co.*, 2025 WL 1139489, at *4 (W.D. Okla. Apr. 17, 2025). Cases with similar allegations to that of Plaintiffs' Petition include this Court's holding in *Oliver*, Judge Russell's decision in *Norman*, Chief Judge DeGiusti's holding in *Pruitt*, as well as Judge Dishman's recent order in *Adair* (to name a few of the several cases remanding similar allegations).[1] The wealth of State Farm's failed removals

---

[1] *See* ECF No. 17-1, *Oliver* Remand Order; ECF No. 17-2, *Norman* Remand Order; ECF No. 17-3, *Pruitt* Remand Order; ECF No. 17-4, *Adair* Remand Order.

continually grows.

Plaintiffs allege State Farm and Welty harmed them through the Scheme, which is a product of State Farm's **_Hail Focus Initiative_**. Pet. ¶¶ 4(f), 10, 34. Specifically, Welty knew about the Hail Focus Initiative (and that State Farm would use it against Plaintiffs), but failed to disclose the same. *See* Pet. ¶¶ 4, 10, 34, 40(c) & (f), 55(xi), 63, 73(g), 74-75. Welty knew the Hail Focus Initiative rendered worthless the "full replacement cost policy" he sold and renewed through State Farm's intentional reduction of indemnity payments on wind and hail roof claims. *See* Pet. ¶¶ 3-4, 10-11, 22-28, 34-39, 40, 42-43, 55-59, 62-64, 72-75. Welty played a significant role in allowing State Farm's ambush denial to be carried forward undetected. Pet. ¶¶ 4, 13-28, 34-36, 39, 40(c) & (f), 63-64, 73-75.[2]

In remanding a similar case, this Honorable Court recently addressed State Farm's Scheme and Hail Focus Initiative:

> [u]pon review of the totality of Plaintiffs' allegations, the Court cannot say with complete certainty that Plaintiffs have failed to state a claim against the [Agent]. Plaintiffs have sufficiently alleged a breach of the [Agent's] duty. Plaintiffs allege State Farm's denial was contrary to the [Agent's] representations that all underwriting requirements had been met and that there were no preexisting issues with the roof that would limit or restrict coverage. Additionally, Plaintiffs have sufficiently alleged they suffered damages as a result of the breach as Plaintiffs purchased the policy from the [Agent], but the policy did not provide the coverage as expected or requested.

---

[2] State Farm's insistence that Welty has no underwriting duties (and attempt to shift those duties on Plaintiffs) completely ignores well-established Oklahoma law. ECF No. 20 at 4-6, 15-16, 23-24; *see* ECF No. 17 (Mot. to Remand) at 12-17. Welty withheld knowledge of the Scheme intentionally, failed to verify the condition of the property, and failed to disclose any roof defects that would negate the full replacement cost coverage requested and purportedly procured. Pet. ¶¶ 4, 10, 25-28, 34-36, 40(c) & (f), 42-43, 62-64, 72-75. State Farm improperly invades the merits of Plaintiffs' viable claims.

*Oliver v. State Farm*, 765 F. Supp. 3d 1244, 1249-50 (W.D. Okla. 2025) (Palk, D.J.). ECF No. 17-1.

Plaintiffs do not attempt to plead around unfavorable rulings or to avoid federal court. ECF No. 20 at 4, 6-13, 20. Rather, the Petition accurately depicts State Farm and Welty's egregious conduct, including the Scheme and Hail Focus Initiative weaponized to defraud insureds (including Plaintiffs) across the country. This has garnered national scrutiny at the highest levels: recently, the **Senate Homeland Security Committee** held a hearing on the Insurance Industry's Natural Disaster Practices.[3] Nick Schroeder, a former licensed adjuster for State Farm and Allstate, testified that he was instructed to deny shingle damage as wear and tear despite visible hail damage he had identified, and he was reassigned after refusing to amend his estimate to exclude hail damage.[4] *See* ECF No. 17-7, Schroeder Testimony. State Farm is carrying out the same practices. *See* ECF No. 17-5, Depo. of Kelly Wienstroer at 1; 70: 12-22; 292: 12-16, 19-25; 293: 1-24; ECF No. 17-6, Depo. of Amy Lynne Lanier (former State Farm adjuster) at 1; 44: 22-24; 46: 17-19; 47: 2-5; *see also* **Exhibit 1**, Vertel Testimony; **Exhibit 2**, Quinn Testimony.

Here, Plaintiffs allege strikingly similar conduct by State Farm that was enabled by Welty. *See* Pet. ¶¶ 4, 10, 25-28, 34-36, 39, 40(c)-(f), 42, 63-64, 73-75. As State Farm's insurance fraud continues to be exposed nationally, State Farm captive agents like Welty

---

[3] *Available at* https://www.youtube.com/watch?v=Qs2VKoQPvxY (last visited June 30, 2025).
[4] *Available at* https://www.hsgac.senate.gov/subcommittees/dmdcc/hearings/examining-the-insurance-industrys-claims-practices-following-recent-natural-disasters/ (last visited June 30, 2025).

3

intentionally disguise it by selling and/or renewing "replacement cost coverage" while knowing the same fails to actually provide replacement cost coverage due to the hidden Scheme and Hail Focus Initiative. *See* Pet. ¶¶ 4, 10-11, 13-28, 34-36, 39, 40(c) & (f), 42-43, 55-59, 62-65, 72-75. Despite his knowledge, Welty sold and/or renewed a policy for Plaintiffs that deviated substantially and materially from what Plaintiffs requested: full replacement cost coverage. Pet. ¶¶ 25-28, 40, 63-64, 73-75.[5]

State Farm's cries that the Scheme (and Welty's clearly defined role therein) does not exist fall on deaf ears considering the wealth of evidence in the public record showing State Farm adjusters and captive agents are well aware of the Scheme and Hail Focus Initiative. As noted, the Court may take judicial notice of documents in the public record, such as Exhibits 5 and 6 attached to the plaintiffs' Response to Motion to Quash (filed August 14, 2023) in *Hosier v. State Farm Fire & Cas. Co.*, No. CJ-2021-1741 (Okla. Cnty. Dist. Ct.),[6] which evidences the Scheme in action.[7] Each of these adjusters testified (Schroeder, Lanier, and Wienstroer) to **the same conduct** as that in Plaintiffs' case. *See* Pet.

---

[5] State Farm's argument that Plaintiffs effectively admit they had replacement cost coverage (ECF No. 20 at 3) does not comport with Plaintiffs' allegations.

[6] *Available at* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2021-1741&cmid=3968060 (last visited June 30, 2025).

[7] *See* ECF No. 17 at 3. For example, State Farm adjuster Kelly Wienstroer testified as follows: "What I recall in my personnel file is [Team Manager Jacqueline Draper] had some concerns about review of some claims that I had identified damage as - - as hail, and [Ms. Draper] felt they were - - it was not hail damage, it was wear/tear." *See* ECF No. 17-5, Depo. of Kelly Wienstroer at 292: 19-23, *Hosier v. State Farm* (cited as Exhibit 5 to Plaintiffs' Response to State Farm's Motion to Quash in *Hosier*); *see also* ECF No. 17-6, Depo. of Amy Lynne Lanier (former State Farm adjuster) at 44: 22-24; 46: 17-19; 47: 2-5, *Bates v. State Farm* (cited as Exhibit 6 to Plaintiffs' Response to State Farm's Motion to Quash in *Hosier*).

¶¶ 34-36, 39, 40.

For further example, in an exhibit attached to the *Hosier* plaintiffs' Third Motion to Compel (filed June 14, 2023) (*see* n.6), State Farm captive agent David Hoffhines sent the following email *to State Farm*:

> I understand that you are not able to find hail on the date my insured has cell phone pics on? Can we discuss this please?? How do I tell my client that the hail damage marks that were uploaded to the file from contractor are invisible to claims reps and supervisors?? **I know the growing trend is for SF to deny hail claims**, I'm just curious how do I word this??

**Exhibit 3**, July 9, 2020 Email from David Hoffhines to Jacqueline Draper (emphasis added). In another case against State Farm, State Farm Agent Mike Muecke displayed his knowledge of the Scheme and sent the following email:

> They did change the claim guidelines a couple years ago because they were replacing so many that did have hail damage but also had extreme wear and tear from aging. I know they look at a lot of different factors. I wish they would go back to roof inspections when we write a new policy. I think that would help.[8]

Similarly, Plaintiffs allege Welty knew of the Scheme, including the Hail Focus Initiative, and failed to disclose it to Plaintiffs. *See* Pet. ¶¶ 4, 10, 34-36, 40(c) & (f), 42, 63(b)(vii), 73(f)-(g). Plaintiffs are entitled to a presumption of truth in the adjudication of their Motion. *Mitchell v. Ford Motor Co*, 2005 WL 1657069, at *2 (W.D. Okla. July 5, 2005).

Despite attempts to downplay the evidence provided,[9] evidence from other cases involving other insureds, as well as testimony and documents from other State Farm agents

---

[8] **Exhibit 4**, March 22, 2023 Email from Mike Muecke Agency.
[9] ECF No. 20 at 8-9.

5

and adjusters provide strong support establishing a pattern and practice by State Farm of intentionally and wrongfully denying storm damage roof claims on an institutional and nationwide scale. ECF No. 17 at 3, 11 n.9 (citing cases). The documents and testimony provided both here and in the Motion to Remand demonstrate the existence of State Farm's Hail Focus Initiative that agents like Welty enable and have knowledge of. Pet. ¶¶ 4, 10, 13-28, 34-36, 39, 40(c)-(f), 42, 63-64, 73-75.

## II.     Plaintiffs Have Pled Legally Cognizable Claims Against Welty.

Plaintiffs' claims against Welty are legally cognizable. Under Oklahoma law, "[i]f the agent, acting within the scope of his authority, in the pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another, the agent becomes liable for the injury done." *Bane v. Anderson, Bryant & Co.*, 1989 OK 140, ¶ 15, 786 P.2d 1230, 1234. The vast majority of Oklahoma federal courts have followed *Bane* and its progeny by rejecting State Farm's removal arguments of nearly identical claims. Indeed, these courts have remanded cases addressing State Farm's Scheme in at least ***twenty-four*** instances. ECF No. 17 at 3-7.

State Farm's reliance on *Marino*, *Goebel*, and *Baltasar* is wholly misplaced, as this Court previously deemed these holdings "***not persuasive***" for establishing fraudulent joinder of a captive agent on similar claims.[10] State Farm's attacks on a purported "form petition" have been repeatedly rejected by judges in the Western District.[11] Plaintiffs'

---

[10] ECF No. 17 at 12 (quoting *Martin v. Allstate*, 2024 WL 3510301, at *2 (W.D. Okla. July 23, 2024)).
[11] *See Pruitt*, 2025 WL 1030353, at *4 (W.D. Okla. April 7, 2025) (DeGiusti, C.D.J.) ("As State Farm is likely aware, several judges in this district have found that allegations of

Petition alleges State Farm and its Agents' (including Welty) pattern and practice of bad faith conduct—the Scheme, results in liability that is cognizable under Oklahoma law. *See, e.g.*, *Jones v. Farmers Ins. Co., Inc.*, 2012 WL 12863976 (W.D. Okla. 2012) (Russell, D.J.). Moreover, the Petition specifically details how ***Welty*** subjected Plaintiffs to the Scheme. *See* ECF No. 17 at 1-2, 9, 12-17; Pet. ¶¶ 4, 7, 17, 20-28, 34-36, 39, 40(c) & (f), 42, 63-64, 73-75. Welty represented (1) Plaintiffs' property met State Farm's underwriting requirements; (2) Plaintiffs' property was in good, insurable condition (and exhibited no replacement cost coverage-precluding defects), because State Farm would not issue the policy otherwise; and (3) the policy procured and renewed would meet Plaintiffs' needs. *See* Pet. at ¶¶ 4, 19, 21-28, 36, 40(c) & (f), 63-64, 73-74. Welty's conduct allowed State Farm to ambush Plaintiffs with the Hail Focus Initiative. Pet. at ¶¶ 4, 10, 34-36, 39, 40(c)-(f). State Farm adjuster J.R. Phillips' own writing proves the Hail Focus Initiative and its biased reliance on a narrow and limited definition of hail damage that is absent from the Policy and is used to disclaim blatant hail damage. Pet. ¶¶ 34-35, 40(c).

Welty negligently performed his underwriting duties by failing to inspect or maintain current and accurate information as to the Insured Property's condition and satisfaction of State Farm's underwriting guidelines, rules, and criteria. ECF No. 17 at 1-2; Pet. ¶¶ 23-28, 34-36, 40(c) & (f). If, before binding coverage, Welty had actually inspected the property and discovered any full replacement cost coverage negating defect(s) to the roof (such as ***wear and tear, deterioration, age and condition, improper ventilation***), he was required

---

cookie-cutter complaints are, alone, insufficient to establish fraudulent joinder.") (citing *Norman*, 764 F. Supp. 3d 1100, 1104-05) (W.D. Okla. Jan. 30, 2025) (Russell, D.J.).

7

to disclose such pre-existing damage to both Plaintiffs and State Farm. Pet. ¶¶ 21-22, 36, 40(c) & (f). However, Welty failed in his underwriting duties because he never disclosed to Plaintiffs that their home had some defect or pre-existing damage that would negate the full replacement cost coverage Plaintiffs requested and which Welty promised. Pet. ¶¶ 25-28, 36, 40(c) & (f), 63(b), 73-75.

Because Plaintiffs made a specific request for full replacement cost coverage, the following analysis by the Northern District of Oklahoma in *Rains* is instructive:

> Several considerations bar the court from finding this claim would be dismissed with complete certainty. The most fundamental issue is that this case centers on an agent's involvement procuring "replacement coverage." Unlike requests for "full" or "adequate" coverage, a specific request for "replacement" coverage, could qualify as a "need[ ] ... disclosed by the insureds" that would trigger an agent's duty to provide such coverage if promised. *Rotan*, 83 P.3d at 895. The term "replacement coverage" is a term that connotes a specific type of coverage. The term is unlike "full coverage," which could be interpreted to mean the replacement value of the property insured, the value of the insureds' property at the time of loss, or some other amount (*id*.); and it is nothing like "adequate" coverage, which is essentially a meaningless request (*Cosper*, 309 P.3d at 149). **Plaintiffs' request for "replacement coverage," which is arguably a specific request, distinguishes this case from *Rotan* and *Cosper*.**

*See Rains v. CSAA Fire & Cas. Ins. Co.*, 2020 WL 6729085, at *6 (N.D. Okla. Nov. 16, 2020) (emphasis added). The *Rains* court distinguished a specific request for *replacement cost* coverage. *See id*. Here, Plaintiffs specifically requested Welty procure "full replacement cost homeowners insurance coverage." Pet. ¶ 25(a). Thus, any assertion that Plaintiffs did not identify any specific coverage needs is false, and Welty was aware of Plaintiffs' full replacement cost coverage needs. Pet. ¶ 25(a)-(f).[12] Welty, by virtue of

---

[12] The *Rotan* case is inapplicable. *See* ECF No. 20 at 21.

8

procuring/renewing the Policy and failing to depreciate due to pre-existing damage, represented 100% of the Insured Property's insurance to value. Pet. ¶¶ 21-24, 25(c)-(f), 26-28. Plaintiffs then incurred devastating roof damage from the significant October 4, 2023 wind and hailstorm that occurred in the Tulsa area, followed by the infamous May 21, 2024 storm that caused additional damage to the property and also produced the Claremore tornado. Pet. ¶ 40. Instead of *replacing* the roof, State Farm denied the claim by attributing the damage to pre-existing damage. Pet. ¶¶ 35-36, 40(c) & (f), 40(h)-(l). Plaintiffs pled they were induced into purchasing a policy that did not provide the full replacement cost coverage expected or requested. *See* Pet. ¶¶ 4, 17, 22-28, 34-36, 40, 63-64, 73-75. Pre-existing damage (wear and tear, deterioration, age and condition, improper ventilation) was the basis for State Farm's denial, which implicates Welty's underwriting duties.[13] Pet. ¶¶ 4, 22-28, 34-36, 39, 40(c) & (f).

This Court's prior rulings in *Ervin*, *Martin*, and *Oliver* (as well as other authorities identified herein) are directly on point.[14] Plaintiffs have sufficiently alleged viable claims against Welty for his misrepresentations and omissions about the Insured Property's coverage under the policy, which induced Plaintiffs to purchase full replacement cost

---

[13] *See Kyger*, 649 F. Supp. 3d at 1206.
[14] Plaintiffs need not distinguish their case from *Rain Drop*, as Chief Judge DeGiusti has already done so in *Pruitt*—a case involving **nearly identical** claims. *See* ECF No. 17-3, *Pruitt* Remand Order at 7-8 (distinguishing *Rain Drop Found., Inc. v. State Farm Fire & Cas. Co.*, 2025 WL 582562 (W.D. Okla. Feb. 21, 2025)). Similar to *Pruitt*, Plaintiffs' claims here are more analogous to *Kyger* and *Oliver* due to State Farm's reliance on pre-existing damage, and Welty was negligent in the performance of underwriting duties. *See* ECF No. 17-3, *Pruitt* Remand Order at 7-8 (citing *Kyger*, 649 F. Supp. 3d at 1206; *Oliver*, 2025 WL 457112, at *2-3); Pet. ¶¶ 4, 7, 10, 13-28, 34-36, 40(c) & (f), 42, 61-66, 68-79.

coverage that was not as expected or requested. ECF No. 17 at 1-2, 9, 12-17 (citing cases); *see Ervin*, 2022 WL 22839581, at 2-3; *Martin*, 2024 WL 3510301, at 4-5; *Oliver*, *supra* at 2-3.[15] Welty sold, bound, and renewed the policy when his specialized knowledge meant he knew or should have known Plaintiffs did not qualify for replacement cost coverage for the Insured Property. Pet. ¶¶ 15-16, 22-28, 40(c) & (f); *see Neff v. Westchester Sur. Lls. Ins. Co.*, 2023 WL 6065842, at *2 (N.D. Okla. Sept. 14, 2023); *Ross*, 2024 WL 1092540, at *2-3. Welty's specialized knowledge of the terms and conditions of State Farm's policies gives rise to the duties owed to Plaintiffs. *See* Pet. ¶¶ 4, 16-17, 25-28, 34-36, 40, 62, 72; *see also Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶ 9, 979 P.2d 266, 269. State Farm and Welty subjected Plaintiffs to the same bad faith and fraudulent conduct occurring throughout the country by way of the Scheme and Hail Focus Initiative.[16]

**WHEREFORE**, Plaintiffs respectfully request the Court remand this case to the District Court of Oklahoma County. State Farm's removal is unreasonable, as demonstrated by the litany of cases rejecting State Farm's basis for removal in this very Court and its sister courts.

---

[15] *See also Pruitt v. State Farm*, 2025 WL 1030353, at *2-4 (W.D. Okla. Apr. 7, 2025); *Norman v. State Farm*, 764 F. Supp. 3d 1100, 1104-05 (W.D. Okla. Jan. 30, 2025); *Adair*, 2025 WL 1263128; *Nelson v. State Farm Fire & Cas. Co.*, 647 F. Supp. 3d 1189, 1192-95 (W.D. Okla. 2022).

[16] State Farm's resort to other cases against it to discredit the allegations pled here falls short. ECF No. 20 at 6-13. State Farm does not accuse Plaintiffs of misnaming Welty as the proper agent defendant in this case or any of the other loosely referenced innuendos it claims as part of some so-called "web of allegations in which Plaintiffs' counsel have been repeatedly caught." *See id.*

Respectfully submitted,

/s/ *John Sanders*
Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097

**Whitten Burrage**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Office:       405.516.7800
Facsimile:   405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically transmitted the above document to the Clerk of the Court and all parties of record using the Court's ECF filing System.

/s/ <i>John Sanders</i>